**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 206
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON JONES, on behalf of himself, all others similarly situated, and the general public,<br><br>    Plaintiff,<br><br>    v.<br><br>NUTIVA, INC.,<br><br>    Defendant. | Case No: 3:16-cv-00711-HSG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:   April 21, 2016<br>Time:   2:00 p.m.<br>Place:   Courtroom 10<br>Judge:  Hon. Haywood S. Gilliam, Jr. |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................... iii

STATEMENT OF ISSUES TO BE DECIDED ................................................... 1

MEMORANDUM OF POINTS & AUTHORITIES........................................... 2

    I.     INTRODUCTION ................................................................................ 2

    II.    FACTS................................................................................................... 4

    III.   LEGAL STANDARDS ........................................................................ 6

    IV.   ARGUMENT......................................................................................... 7

          A.    Plaintiff Plausibly Alleges Nutiva's Coconut Oil Labeling
               Claims Deceive Reasonable Consumers................................. 7

               1.    Nutiva's "100% less cholesterol," "0g trans fat," "non-
                      hydrogenated," and "62% medium chain triglycerides,"
                      claims plausibly mislead consumers to believe the
                      coconut oils are healthy ............................................... 8

               2.    Nutiva's remaining claims do not warrant dismissal as
                      mere puffery, when properly analyzed in context of the
                      advertising as a whole................................................. 10

          B.    Plaintiff Need Not Plead Reliance For His UCL "Unlawful"
               Claim Based on Nutiva's Misbranding; but if Reliance is
               Required, Plaintiff Pleads It ................................................. 13

          C.    Plaintiff States Claims for Breach of Express and Implied
                Warranties .................................................................................. 16

          D.    Plaintiff May Assert Claims on Behalf of the Class Concerning
                Substantially Similar Products that He did Not Purchase, but
                this Determination is Made at Class Certification ................ 18

i

E.   Plaintiff Has Standing to Pursue Injunctive Relief to Prevent Nutiva's Ongoing Infringement of His Substantive Right to Freedom From Exposure to Fraud, or as a Matter of Class Standing; Or the Court Should Treat Them as State Law Claims and Exercise Supplemental Jurisdiction .............................................. 22

V.   CONCLUSION ......................................................................................... 25

CERTIFICATE OF SERVICE ........................................................................... 26

# **TABLE OF AUTHORITIES**

**Cases**

*Adkins v. Nestle Purina Petcare Co.*,
    973 F. Supp. 2d 905 (N.D. Ill. 2013) ...........................................................................11

*Aho v. Americredit Fin. Servs.*,
    2011 U.S. Dist. LEXIS 80426 (S.D. Cal. July 25, 2011) ............................................14

*Allen v. ConAgra Foods, Inc.*,
    2013 U.S. Dist. LEXIS 125607 (N.D. Cal. 2013) .......................................................16

*Allen v. Hylands, Inc.*,
    2012 U.S. Dist. LEXIS 61606 (C.D. Cal. May 2, 2012) ........................................16, 17

*Anderson v. Jamba Juice Co.*,
    888 F.Supp.2d 1000 (N.D. Cal. Aug. 25, 2012) .........................................................20

*Ang v. Bimbo Bakeries USA, Inc.*,
    2013 U.S. Dist. LEXIS 138897 (N.D. Cal. Sept. 25, 2013) .......................................22

*Ang v. Bimbo Bakeries USA, Inc.*,
    2014 U.S. Dist. LEXIS 34443 (N.D. Cal. Mar. 13, 2014).....................................19, 22

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ...................................................................................................7

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
    2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012)..........................................22

*Backus v. General Mills, Inc.*,
    2015 U.S. Dist. LEXIS 109839 (N.D. Cal. Aug. 18, 2015) ........................................17

*Baltazar v. Apple, Inc.*,
    2011 U.S. Dist. LEXIS 13187 (N.D. Cal. Feb. 10, 2011) ...........................................16

*Bohac v. Gen. Mills, Inc.*,
    2014 U.S. Dist. LEXIS 41454 (N.D. Cal. Mar. 26, 2014)...........................................17

*Brazil v. Dole Food Co.*,
    2013 U.S. Dist. LEXIS 136921 (N.D. Cal. Sept. 23, 2013) ........................................19

iii

*Bronson v. Johnson & Johnson, Inc.*,
   2013 U.S. Dist. LEXIS 54029 (N.D. Cal. Apr. 16, 2013) ................................................. 17

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011) ................................................................................. 18, 19

*Cal. Dep't of Health Servs. v. B & R Davis Fertilizers*,
   1994 U.S. App. LEXIS 18013 (9th Cir. July 19, 1994) ...................................................... 25

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ....................................................................................................... 13

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) .......................................................................... 9, 12

*Cook, Perkiss, & Liehe, Inc., v. N. Cal. Collection Serv.*,
   911 F.2d 242 (9th Cir. 1990) .............................................................................................. 11

*Cortina v. Goya Foods, Inc.*,
   94 F. Supp. 3d 1174 (S.D. Cal. 2015) ................................................................................ 22

*Delacruz v. Cytosport, Inc.*,
   2012 U.S. Dist. LEXIS 51094 (N.D. Cal. Apr. 11, 2012) .................................................. 11

*Delarosa v. Boiron, Inc.*,
   2012 U.S. Dist. LEXIS 188828 (C.D. Cal. Dec. 28, 2012) ............................................... 24

*Dorsey v. Rockhard Labs., LLC*,
   2014 U.S. Dist. LEXIS 132161 (C.D. Cal. Sept. 19, 2014) .............................................. 16

*Doyle v. Ill. Cent. R.R. Co.*,
   2009 U.S. Dist. LEXIS 8852 (E.D. Cal. Jan. 29, 2009) ...................................................... 6

*Fitzpatrick v. Gen. Mills, Inc.*,
   263 F.R.D. 687 (S.D. Fla. 2010) ........................................................................................ 21

*Forcellati v. Hyland's, Inc.*,
   876 F. Supp. 2d 1155 (C.D. Cal. 2012) .............................................................................. 18

*Franklin Fueling Sys. v. Veeder-Root Co.*,
   2009 U.S. Dist. LEXIS 72953 (E.D. Cal. 2009) ................................................................ 13

iv

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ............................................................................7

*Gallagher v. Chipotle Mexican Grill, Inc.*,
    2016 U.S. Dist. LEXIS 14479 (N.D. Cal. Feb. 5, 2016) ...........................23, 24

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997) ........................................................................6

*Gold v. Lumber Liquidators, Inc.*,
    2015 U.S. Dist. LEXIS 165264 (N.D. Cal. Nov. 30, 2015) ...........................12

*Hale v. Sharp Healthcare*,
    183 Cal. App. 4th 1373 (2010) ....................................................................14

*Ham v. Hain Celestial Group, Inc.*,
    70 F. Supp. 3d 1188 (N.D. Cal. 2014) ..........................................................18

*Harris v. Las Vegas Sands L.L.C.*,
    2013 U.S. Dist. LEXIS 185587 (C.D. Cal. Aug. 16, 2013)............................24

*Haskell v. Time, Inc.*,
    857 F. Supp. 1392 (E.D. Cal. 1994).............................................................8

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ....................................................................10

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011)...........................................8, 12, 13, 17

*In re Milo's Kitchen Dog Treats*,
    9 F. Supp. 3d 523 (W.D. Pa. 2014) ..............................................................12

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2008)............................................14, 23

*Ivie v. Kraft Foods Global, Inc.*,
    961 F. Supp. 2d 1033 (N.D. Cal. 2013) ........................................................15

*Janney v. Gen. Mills*,
    2014 U.S. Dist. LEXIS 41452 (N.D. Cal. Mar. 26, 2014)...............................6

*Kanfer v. Pharmacare US, Inc.*,
   2015 U.S. Dist. LEXIS 150105 (S.D. Cal. Nov. 4, 2015) ....................................................2

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ......................................................................................13

*Keith v. Buchanan*,
   173 Cal. App. 3d 13 (1985) .........................................................................................16

*Lanovaz v. Twinings Inc.*,
   2013 U.S. Dist. LEXIS 25612 (N.D. Cal. Feb. 25, 2013) ...............................................15

*Lewis v. Robinson Ford Sales, Inc.*,
   156 Cal. App. 4th 359 (2007) ......................................................................................14

*Lilly v. Jamba Juice Co.*,
   2015 U.S. Dist. LEXIS 34498 (N.D. Cal. Mar. 18, 2015)........................................23, 24

*McKinniss v. General Mills*,
   2007 U.S. Dist. LEXIS 96107 (C.D. Cal. Sept. 18, 2007) .............................................20

*Mohamed v. Jeppesen Dataplan, Inc.*,
   579 F.3d 943 (9th Cir. 2009) .........................................................................................7

*Morales v. Unilever U.S., Inc.*,
   2014 U.S. Dist. LEXIS 49336 (E.D. Cal. Apr. 9, 2014) ...............................................19

*Morgan v. Wallaby Yogurt Co.*,
   2014 U.S. Dist. LEXIS 34548 (N.D. Cal. Mar. 13, 2014).............................................18

*Morris v. BMW of N. Am., LLC*,
   2007 U.S. Dist. LEXIS 85513 (N.D. Cal. Nov. 7, 2007) ...............................................13

*Musgrave v. ICC/Marie Callender's*,
   2015 U.S. Dist. LEXIS 14674 (N.D. Cal. Feb. 5, 2015) .................................................2

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012)........................................................................................24

*Ogden v. Bumble Bee Foods, LLC*,
   292 F.R.D. 620 (N.D. Cal. 2013)............................................................................19, 21

vi

*Olivera v. Am. Home Mortg. Servicing, Inc.*,
689 F. Supp. 2d 1218 (N.D. Cal. 2010) ............................................................14

*Pradhan v. Citibank, N.A.*,
2011 U.S. Dist. LEXIS 2350 (N.D. Cal. Jan. 10, 2011) ..................................19

*Reed Elsevier v. Who's Who Worldwide Registry*,
1994 U.S. Dist. LEXIS 4439 (E.D.N.Y. Mar. 8, 1994)....................................25

*Reid v. Johnson & Johnson*,
780 F.3d 952 (9th Cir. 2015) .............................................................................9

*Ries v. Ariz. Beverages*,
287 F.R.D. 523 (N.D. Cal. 2012)......................................................................23

*Rojas v. Gen. Mills, Inc.*,
2014 U.S. Dist. LEXIS 41315 (N.D. Cal. Mar. 26, 2014)...............................21

*Samet v. P&G*,
2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013)...........................9, 15

*See In re Actimmune Mktg. Litig.*,
2010 U.S. Dist. LEXIS 90480 (N.D. Cal. Aug. 31, 2010) ..............................14

*Siracusano v. Matrixx Initiatives, Inc.*,
585 F.3d 1167 (9th Cir. 2009) ...........................................................................7

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ..........................................................................12

*State Farm Fire & Cas. Co. v. Super. Ct.*,
45 Cal. App. 4th 1093 (1996) ...........................................................................13

*Tsan v. Seventh Generation, Inc*,
2015 U.S. Dist. LEXIS 149042 (N.D. Cal. Nov. 3, 2015) ..............................18

*Tylka v. Gerber Prods Co.*,
1999 U.S. Dist. LEXIS 10718 (N.D. Ill. July 1, 1999)....................................11

*United States v. Dotterweich*,
320 U.S. 277 (1943)..........................................................................................14

vii

*Jones v. Nutiva, Inc.*, No. 16-cv-711-HSG
OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

*United States v. Redwood City*,
  640 F.2d 963 (9th Cir. 1981) ...............................................................6

*United States v. Watkins*,
  278 F.3d 961 (9th Cir. 2002) ..............................................................13

*Victor v. R.C. Bigelow, Inc.*,
  2014 U.S. Dist. LEXIS 34550 (N.D. Cal. Mar. 14, 2014)........................9, 20

*Werdebaugh v. Blue Diamond Growers*,
  2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013) ..........................18

*Williams v. Beechnut Nutrition Corp.*,
  185 Cal. App. 3d 135 (1986) ...............................................................16

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) .................................................7, 8, 9, 12

*Wilson v. Frito-Lay N. Am.*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) ................................................15

*Wilson v. Frito-Lay N. Am., Inc.*,
  2013 U.S. Dist. LEXIS 47126 (N.D. Cal. Apr. 1, 2014) ...........................10

*Yeksigian v. Nappi*,
  900 F.2d 101 (7th Cir. 1990) .................................................................7

*Yumul v. Smart Balance, Inc*.,
  733 F. Supp. 2d 1117 (C.D. Cal. 2010) ........................................8, 9, 10


**Statutes**

21 U.S.C. § 331 ...................................................................................13

21 U.S.C. § 333(a)(1)..........................................................................13

28 U.S.C. § 1367(a)............................................................................25

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ..............................................6

Cal. Bus. & Prof. Code §§ 17500 *et seq.* .................................................................. 6

Cal. Civ. Code §§ 1750 *et seq.* .................................................................................. 6

Cal. Com. Code § 2314(2)(f) ...................................................................................... 17

**Regulations**

21 C.F.R. § 101.13(h)(1) ............................................................................................. 10

21 C.F.R. § 101.62(d)(4)(ii) ....................................................................................... 10

*Jones v. Nutiva, Inc.*, No. 16-cv-711-HSG
OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

## STATEMENT OF ISSUES TO BE DECIDED

1.  ***False or Misleading Product Claims.*** Plaintiff Preston Jones alleges that (a) consuming Nutiva's coconut oil increases the risk of coronary heart disease, stroke, and other serious illnesses, (b) therefore Nutiva's claims that its coconut oil, *inter alia*, is "nutritious," "nourishing," and has "100% less cholesterol than butter," "0g trans fat," and "62% medium chain triglycerides" are false or tend to mislead reasonable consumers, and (c) reasonable consumers rely on these material claims in purchasing the product. Does Jones plausibly allege that Nutiva's product claims are possibly false or misleading to a reasonable consumer?

2.  ***Misbranding.*** Jones alleges that (a) Nutiva's product claims "100% less cholesterol than butter," "non-hydrogenated," and "0g trans fat" constitute misbranding under food labeling laws because they are misleading and violate specific implementing regulations, (b) he relied on these claims in deciding to purchase Nutiva's coconut oil, and (c) he lost money buying something different than what was promised. Does Jones plausibly allege injury from misbranding sufficient to state a claim under the "unlawful" prong of California's Unfair Competition Law?

3.  ***Breach of Warranty.*** Jones alleges Nutiva warranted its coconut oil as a "nourishing" "superfood" and "nutritious substitute" that is "better than butter," but that consuming Nutiva's coconut oil increases the risk of coronary heart disease, stroke, and other serious illnesses. Does Jones adequately state a claim for breach of warranty?

4.  ***Adequacy and Typicality for Claims Relating to Identical Products and Product Claims.*** Jones alleges that (a) he purchased Nutiva Virgin Coconut Oil, (b) Nutiva's Extra Virgin and Refined Coconut Oils are identical in composition to the Virgin coconut oil, and (c) all oils bear the same misleading product claims, including several in identical wording and phraseology. Jones therefore seeks to represent purchasers of Nutiva Virgin Coconut Oil as well as the identically composed and advertised Extra Virgin and Refined Coconut Oils. Does Jones plausibly allege that the Extra Virgin and Refined Coconut Oils, and their product claims, are sufficiently similar to Virgin Coconut Oil to enable Jones to represent at the pleading stage purchasers of these products, and reserve issues of adequacy

1

and typicality for determination at class certification?

**5.** ***Standing for Injunctive Relief.*** Where, as here—(a) California consumer protection statutes grant consumers the broad right to be free not just from actual deception, but from exposure to fraud in the marketplace, regardless of whether consumers rely on the fraudulent product claims, purchase the product, or are even aware of the product, (b) class standing for injunctive relief in a representative action under Rule 23 is not inconsistent with Article III, and (c) this Court has supplemental jurisdiction over the request for injunctive relief pled in the state court Complaint prior to removal—does Jones plausibly allege the ongoing nature of Nutiva's violations and the existence of redressability by the Court for standing for injunctive relief.[1]

## MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION

Unlike most plant-derived oils, coconut oil is composed almost entirely of saturated fat. Studies show that as a result, coconut oil consumption has a pronounced negative impact on blood cholesterol levels, increasing risk of cardiovascular disease, stroke, and other morbidity. Nevertheless, Nutiva has consistently advertised and labeled its coconut oil products with claims carefully designed to convince consumers that its products are

---

[1] Nutiva misunderstands the nature of Jones' references to Nutiva's website. (Mot. at 5, 9-10.) Jones is not stating a claim for relief as to the falsity of representations on Nutiva's website, but instead refers to the website simply because those representations are highly relevant to various issues in the case. *See Musgrave v. ICC/Marie Callender's*, 2015 U.S. Dist. LEXIS 14674, at *34-35 (N.D. Cal. Feb. 5, 2015) ("even though Plaintiff has not alleged that he personally relied on Defendant's website and advertising materials, these materials may be relevant to class certification and absent class members' reliance on Defendant's promotional materials"); *c.f. Kanfer v. Pharmacare US, Inc.*, 2015 U.S. Dist. LEXIS 150105 (S.D. Cal. Nov. 4, 2015) (denying motion to strike "allegations regarding punitive damages and the statements on the [challenged product's] website," because "Defendant has not shown that the Rule 12(f) standards are met"). Similarly, Jones is not stating a claim for conduct outside the applicable statutes of limitation (*see id.* at 18-19); the reference in the Complaint to January 7, 2011 is a typographical error (as happens frequently at the turn of a new year), and the correct date is January 7, 2012. Jones regrets any inconvenience that may have resulted from this typo.

inherently healthy, and healthier than alternative oils and fats. Nutiva does so by highlighting the *absence* of "unhealthy" substances with claims like "100% less cholesterol than butter," "0g trans fat," and "non-hydrogenated," while highlighting the *presence* of supposedly "good" medium chain triglycerides (MCTs), in conjunction with claims that its products are "healthy," "nutritious," "nourishing," "superfoods." Despite the misleading nature of these claims, Nutiva raises a number challenges to the Complaint.

First, Nutiva takes the untenable position that reasonable consumers cannot possibly be misled by the health and wellness claims it carefully crafted to induce their purchases. (Mot. at 11-15.) Contrary to Nutiva's assertion, this is not one of those "rare" cases that the Court can decide as a matter of law that the advertising is not misleading. Rather, properly analyzed in context of the labels as a whole, Nutiva's claims convey a concrete health message that plausibly misleads consumers. Point IV.A.

Second, Nutiva similarly challenges Jones's breach of warranty claims (*id.* at 17-18), but this is equally unavailing as it simply regurgitates the same arguments without properly taking into account the context of the labels as a whole. Point IV.C.

Third, Nutiva asserts Jones has not properly alleged reliance on its violations of food labeling laws that render the products misbranded. (*Id.* at 16-17.) This misapprehends the injury and standing requirements for Jones' UCL "unlawful" prong claim, in which the concept of reliance is not applicable. Nevertheless, Jones specifically alleges he relied on the claims unauthorized claims, "100% less cholesterol than butter," "0g trans fat," and "non-hydrogenated" in making his purchase, which is sufficient if allegations of reliance are required to sustain a misbranding claim under the UCL's unlawful prong. Point IV.B.

Fourth, Nutiva asserts that Jones cannot represent consumers of products he did not purchase. (*Id.* at 6-9.) This issue, however, should be addressed at class certification since it turns on matters of adequacy and typicality under Rule 23, rather than standing, and Jones has made the prima facie showing that the products are substantially similar in kind, composition, misrepresentations, manner of deception, and economic injury. Point IV.D.

Finally, Nutiva asserts Jones lacks standing to seek prospective injunctive relief since

3

he is aware of the fraud. (*Id.*at 10-11.) However, since California provides consumers a substantive right to be free from even exposure to deception (regardless of whether the exposure causes injury by inducing reliance), even aware of the deception, Jones is in imminent danger of having his rights violated if Nutiva is not enjoined. This is sufficient Article III standing to proceed with his injunctive relief claims.[2] In addition, Jones has "class standing" in this representative action. Finally, the Court can treat Jones' injunctive relief claims as claims arising solely under state law, where Article III is not a bar, and exercise supplemental jurisdiction over the claims. Point IV.E.

## II.    FACTS

Nutiva touts its coconut oils, including Extra Virgin (later renamed just "Virgin") and Refined varieties, "as both inherently healthy, and as a healthy alternative to butter" (Dkt. No. 2-1, Compl. ¶¶ 1, 50). Nutiva's health-marketing strategy focuses on highlighting that its coconut oils have "0g trans fat," are "non-hydrogenated," and contain "100% less cholesterol than butter," and "medium chain triglycerides" (*id.* ¶¶ 55, 90). In conjunction with these claims highlighting the absence of "unhealthy" substances and the presence of supposedly "good fats" (*id.* ¶ 67[3]), Nutiva claims its products are "healthy," "nutritious," "nourishing," "'SUPERFOOD[S],'"[4] (*id.* ¶¶ 49, 57). In short, the "totality of the Nutiva coconut oil product labels . . . conveys the concrete message to a reasonable consumer that the products are healthy, and a more healthful alternative to butter." (*Id.* ¶ 63.)

Nutiva does not stop there, however, but goes to great lengths to convince consumers that coconut oil "is quite beneficial to your body's health," such that "[h]ealth practitioners suggest three tablespoons . . . per day" (*id.* ¶¶ 67-68). On its website, Nutiva claims the

---

[2] Plaintiff has requested that, if the Court holds Jones' injunctive relief claims cannot proceed here, it remand them to state court where they were originally asserted, rather than dismiss them. (*See* Dkt. No. 19.)

[3] The citation here and all other citations in the Complaint's allegations are omitted.

[4] The term "superfood" is a marketing term for 'food[s] considered to be especially beneficial for health and well-being.'" (*Id.* ¶ 57 (citing Oxford Online American English Dictionary).)

4

proposition that "coconut oil is not good for you" is unequivocally "not true." (*Id.* ¶ 70.)

Nutiva employs this "strategic marketing campaign intended to convince consumers that its coconut oil products are 'healthy,' despite that [the coconut oils] are almost entirely composed of saturated fat." (*Id.* ¶ 54.) In fact, each 14-gram serving "of Nutiva coconut oil (whether 'Extra Virgin,' 'Virgin,' or 'Refined') contains . . . 14 grams of fat . . . [and] 13 grams of saturated fat." (*Id.* ¶ 52 (each coconut oil is "93 percent" saturated fat).)

Studies show "saturated fat consumption causes coronary heart disease by, among other things, 'increas[ing] total cholesterol and low density lipoprotein (LDL) cholesterol.'" (*Id.* ¶ 20.) The "relationship between saturated fat intake and risk of coronary heart disease is well established and accepted in the scientific community." (*Id.* ¶ 22.) In fact, there is "no safe level" of saturated fat intake because "any incremental increase in saturated fatty acid intake increases CHD [coronary heart disease] risk." (*Id.* ¶ 25.) "[S]everal studies have specifically shown that consuming coconut oil . . . increases the risk of CHD and stroke" (*id.* ¶ 36), and "the USDA and DHHS specifically recommend replacing "tropical oils (e.g., palm, palm kernel, and coconut oils)" with "vegetable oils that are high in unsaturated fats and relatively low in SFA (e.g., soybean, corn, olive, and canola oils)" (*id.* ¶ 35). Further, "[t]here is no evidence to indicate that saturated fatty acids are essential in the diet or have a beneficial role in the prevention of chronic diseases." (*Id.* ¶ 27.) Thus, Jones alleges scientific evidence demonstrates coconut oil is the antithesis of a healthy, nutritious, nourishing, superfood, instead "increase[ing] the risk of CHD, stroke, and other morbidity. (*See id.* ¶¶ 11-46, 97.)

Jones the Nutiva coconut oil labels bear (1) affirmative representations that are verifiably misleading based on the composition of the coconut oils (*see id.* ¶¶ 56-63); (2) material omissions of information required by law (*id.* ¶¶ 85, 87, 91, 120); and (3) statements in violation of federal and California food labeling regulations designed to prevent consumers from being misled (*id.* ¶¶ 73-107).

The food labeling laws specifically prohibit Nutiva's "less cholesterol" claim because the coconut oils contain more than 2 grams of saturated fat per serving. (*Id.* ¶¶ 78-86.) Nutiva's "No trans fat," "0g trans fat," and "non-hydrogenated" claims also render the

products misbranded because they do not bear a mandatory special disclosure, "See nutrition information for total fat and saturated fat content," required when a product contains more than 13 grams of total fat or 4 grams of saturated fat per serving. (*Id.* ¶¶ 79-92.)

In deciding to purchase Nutiva Virgin Coconut Oil, Jones read and relied upon Nutiva's misleading labeling claims that it is "one of the world's most nourishing foods," and "a nutritious substitute" that is "non-hydrogenated," and "better than butter," with "100% less cholesterol than butter," and "0g trans fat," while also "[c]ontain[ing] 62% medium chain triglycerides," making it a "Superfood" that will "Nurture Vitality." (*Id.* ¶ 94.) "Based on these representations, plaintiff believed the Virgin Oil was healthy, healthier than butter, and would not . . . detriment his blood cholesterol levels." (*Id.* ¶ 95.) However, Nutiva's carefully-crafted message is false and misleading, and Jones lost money as a result, because he purchased a product he would not otherwise have purchased. (*Id.* ¶¶ 96-106.)

Accordingly, Jones brings this class action on behalf of a nationwide class, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), and False Advertising Law, *id.* §§ 17500 *et seq.* ("FAL"), as well as breaches of express and implied warranties under state law.

## III.   LEGAL STANDARDS

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) utilizes the same standard as motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Janney v. Gen. Mills*, 2014 U.S. Dist. LEXIS 41452, at *5-6 (N.D. Cal. Mar. 26, 2014). Dismissal is proper under Rule 12(b)(6) only in "extraordinary" cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). Federal pleading requirements are "extremely liberal," requiring only "a short and plain statement of the claim," so as to "minimize disputes over pleading technicalities." *Doyle v. Ill. Cent. R.R. Co.*, 2009 U.S. Dist. LEXIS 8852, at *9-10 (E.D. Cal. Jan. 29, 2009). Courts hear such motions with "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997).

1    "[D]efendants have the burden on a motion to dismiss to establish the legal

2    insufficiency of the complaint."[5] *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990). A

3    plaintiff's claim should not be dismissed where "the plaintiff pleads factual content that

4    allows the court to draw the reasonable inference that the defendant is liable for the

5    misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hen

6    there are well-pleaded allegations, a court should assume their veracity and then determine

7    whether they plausibly give rise to an entitlement for relief." *Id*. at 1950. In deciding a motion

8    to dismiss, courts should draw "all reasonable inferences from the complaint in [Plaintiffs']

9    favor," *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009), and "accept

10   the plaintiffs' allegations as true and construe them in the light most favorable to the

11   plaintiffs." *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009).

12   **IV.   ARGUMENT**

13       **A.   Plaintiff Plausibly Alleges Nutiva's Coconut Oil Labeling Claims Deceive**

14             **Reasonable Consumers**

15       The UCL, FAL, and CLRA "prohibit not only advertising which is false, but also

16   advertising which although true, is either actually misleading or which has a capacity,

17   likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552

18   F.3d 934, 938 (9th Cir. 2008) (alterations omitted). This objective, "reasonable consumer"

19   test requires only that a plaintiff "show that 'members of the public are likely to be deceived.'"

20   *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quotation omitted). At the pleading

21   stage, the focus is on whether a plaintiff alleging deceptive advertising might *possibly* show

22   a reasonable consumer is likely to be deceived. *See Williams*, 552 F.3d at 939 (even just

23   "potential deception" defeats a motion to dismiss). Challenged representations should be

24   considered not only on their own, but also in the "context of the packaging as a whole." *In re*

25

26   _____

     [5] Nutiva does not challenge plaintiff's theory that it violated the UCL, FAL, or CLRA through

27   material omissions that were required by food labeling laws (Compl. ¶¶ 56, 77, 92, 120, 137),
     nor does it challenge plaintiff's claims under the UCL's "unfair" prong (*id.* ¶¶ 124-131).

28   Thus, none of plaintiff's UCL, FAL, or CLRA claims can be dismissed in their entirety.

1    *Ferrero Litig.*, 794 F. Supp. 2d 1107, 1116 (S.D. Cal. 2011). Thus, where a series of

2    statements "contribute to the deceptive context of the packaging as a whole" the court should

3    not dismiss them as puffery. *See Williams*, 552 F.3d at 939 n.3. "California courts . . . have

4    recognized that whether a business practice is deceptive will usually be a question of fact not

5    appropriate for decision on a motion to dismiss." *Yumul v. Smart Balance, Inc*., 733 F. Supp.

6    2d 1117, 1125 (C.D. Cal. 2010) (quoting *Williams*, 552 F.3d at 938). Only where an "alleged

7    misrepresentation, in context, is such that no reasonable consumer could be misled," may the

8    allegation be dismissed. *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).

9        Jones alleges in detail how each challenged claim is misleading, both individually and

10   taken together. (Compl. ¶¶ 56-63.) In sum, Nutiva claims its coconut oil is a "nourishing,"

11   "nutritious," "superfood" that is "better than butter" because it has "100% less cholesterol

12   than butter," "0g trans fat," is "non-hydrogenated," and "Contains 62% medium chain

13   triglycerides" (*id.* ¶ 94). Nutiva carefully crafted these claims to convince consumers that the

14   oil is "healthy, healthier than butter, and w[ill] not raise or otherwise detriment . . . blood

15   cholesterol levels" (*id.* ¶ 95), when in fact its "consumption increases the risk of CHD, stroke,

16   and other morbidity" (*id.* ¶ 97). Because these representations, properly analyzed in context,

17   could plausibly mislead reasonable consumers, plaintiff's claims should not be dismissed.

18       **1.**    **Nutiva's "100% less cholesterol," "0g trans fat," "non-**

19       **hydrogenated," and "62% medium chain triglycerides," claims**

20       **plausibly mislead consumers to believe the coconut oils are healthy**

21       Nutiva's labeling claims "100% less cholesterol than butter," "0g trans fat," "non-

22   hydrogenated," and "62% medium chain triglycerides"[6] (Compl. ¶ 94), highlight the absence

23   of substances commonly perceived to be unhealthy, and the presence of supposedly "good

24

25   ――――――――――

26   [6] Nutiva's assertion that Jones "never alleges any facts concerning the health effects of
     MCTs" (Mot. at 16), is both incorrect and irrelevant. Jones cites numerous studies

27   demonstrating that saturated fats, which by definition include MCTs, are unhealthy. (*See*
     Compl. ¶¶ 20-35.) Moreover, whether MCTs are unhealthy is irrelevant because Jones alleges

28   that coconut oil as a whole—including its MTCs—is unhealthy. (*Id.* ¶¶ 36-46.)

fats" (*id.* ¶ 67). These claims, along with the claims "nutritious," "nourishing," and "superfood," plausibly mislead reasonable consumers to believe that Nutiva Virgin Coconut Oil is "healthy, healthier than butter, and does not negatively affect blood cholesterol levels." (*Id.* ¶ 136.[7]) It is precisely because such statements can mislead that FDA regulations:

> provide[] for this precise scenario: that is, it categorizes as misleading and therefore prohibited even true nutrient content claims if the presence of another "disqualifying" nutrient exceeds an amount established by regulation. . . . If this level is exceeded, a food purveyor is prohibited from making an unqualified claim touting the health benefits of another nutrient in the food. This is because the Agency has reasoned that the beneficent claim, standing alone, would be misleading.

*Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010); *see also Samet v. P&G*, 2013 U.S. Dist. LEXIS 86432, at *30 (N.D. Cal. June 18, 2013) ("[A] label could disclose all truthful information, but hide the most relevant information . . . and thus as a whole be misleading to the reader. The FDA regulations in question were created to address such concerns."). Nutiva's contention that it is "implausible" that a consumer would be deceived because the Nutrition Facts Box discloses the product's total and saturated fat content (Mot. at 15), has been expressly rejected by the Ninth Circuit, which:

> disagree[s] . . . that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield for liability for the deception.

*Williams*, 552 F.3d at 939; *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958-59 (9th Cir. 2015) (same); *Yumul*, 733 F. Supp. 2d at 1129 ("where product packaging contains an affirmative misrepresentation, the manufacturer cannot rely on the small-print nutritional

---

[7] Plaintiff's detailed allegations of how each statement is misleading (*id.* ¶¶ 56-63), render Nutiva's reliance on *Victor v. R.C. Bigelow, Inc.* inapposite (*see* Mot. at 15), because *Victor* did "not explain how the statement is either false or misleading," 2014 U.S. Dist. LEXIS 34550, at *57 (N.D. Cal. Mar. 14, 2014).

1  label to contradict and cure that misrepresentation").

2       It is precisely because a nutrient content claim can be misleading in isolation that the

3  FDA prohibits labeling foods with "less cholesterol" clams unless they contain less than 2

4  grams of saturated fat (*see* Compl. ¶¶ 81-87 (citing 21 C.F.R. § 101.62(d)(4)(ii))), and

5  mandate special, additional disclosure statements regarding total and saturated fat when foods

6  contain more than 13 grams of fat, or 4 grams of saturated fat (*id.* ¶ 88-92 (citing 21 C.F.R. §

7  101.13(h)(1))). *C.f. Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("the

8  legislature's decision to prohibit a particular misleading advertising practice is evidence that

9  the legislature has deemed that the practice constitutes a 'material' misrepresentation, and

10  courts must defer to that determination").

11       Courts therefore have recognized that these statements may plausibly be misleading

12  when other harmful ingredients are present; accordingly, plaintiff's claims should not be

13  dismissed at this stage. *See Yumul*, 733 F. Supp. 2d at 1129 n.13 (Plaintiff could "show that

14  a reasonable consumer would have read the reference to 'cholesterol free' . . . and have

15  concluded that the product would not raise cholesterol levels. The court cannot conclude

16  based on the packaging alone that the latter reading is so unreasonable that the case can be

17  resolved on a motion to dismiss."); *Wilson v. Frito-Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS

18  47126, at *38 (N.D. Cal. Apr. 1, 2014) ("the Court cannot conclude as a matter of law that

19  Plaintiffs' '0 Grams Trans Fat' claims would not be misleading or deceptive to a reasonable

20  consumer"). Therefore, as alleged these statements, in context, could plausibly mislead

21  consumers.

22       **2.    Nutiva's remaining claims do not warrant dismissal as mere puffery,**

23            **when properly analyzed in context of the advertising as a whole**

24       Nutiva contends its labeling claims "a nutritious substitute," "Superfood," and

25  "Coconut is one of the world's most nourishing foods," are all puffery. Not so. In the context

26  of food, the terms "nutritious," "superfood," and "nourishing" all essentially mean containing

27  substances necessary for growth and health or beneficial to health. None of these terms are

28  "outrageous" or "so exaggerated as to preclude reliance by consumers." *Cook, Perkiss, &*

*Liehe, Inc., v. N. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990). Rather, a reasonable consumer could plausibly rely these statements to mean that the product either is healthy or, at least would not harm their health.[8] *See Adkins v. Nestle Purina Petcare Co.*, 973 F. Supp. 2d 905, 919 (N.D. Ill. 2013) ("Plaintiffs are correct that 'wholesome' at the very least conveys the safety of the treats to the consumer, and therefore cannot be puffery.").

Contrary to Nutiva's assertion (Mot. at 13:5, 13:27), the claims are not so vague or unmeasured that they cannot be proven false. Whether a food is nutritious or harms health can be proven based on the food's composition. Jones alleges coconut oil is "almost entirely composed of saturated fat," "there is 'no safe level' of saturated fat intake," and "[t]here is no evidence to indicate that saturated fatty acids are essential in the diet or have a beneficial role in the prevention of chronic diseases" (Compl. ¶¶ 12, 25, 27). Thus, Jones has alleged and can prove that Nutiva's coconut oil is not nutritious, nourishing, or a superfood, but rather harms health with no countervailing benefit. *See Delacruz v. Cytosport, Inc.*, 2012 U.S. Dist. LEXIS 51094, at *19 (N.D. Cal. Apr. 11, 2012) ("healthy fat" representation actionable because it could deceive reasonable consumer into believing product had unsaturated, rather than saturated fat). Nutiva's assertion that the health or nutrition quality of a food is purely subjective is betrayed by its own unequivocal denial that the statement "coconut oil is not good for you" is "not true." (*Id.* ¶ 70.)

Nutiva's reliance on *Tylka v. Gerber Prods Co.* to argue its use of "nutritious" is puffery (Mot. at 13-14), is misplaced, because the claim at issue there boasted that Gerber's products were unequivocally the "*most* wholesome nutritious safe foods you can buy *anywhere in the world*," 1999 U.S. Dist. LEXIS 10718, at *7 (N.D. Ill. July 1, 1999) (emphasis added). In contrast, Nutiva does not claim to be the *absolute* most nutritious food,

---

[8] *See* Merriam-Webster Online Dictionary (Nourishing: "providing the things that are needed for health, growth, etc."; Nutritious: "having substances that a person or animal needs to be healthy and grow properly"), *at* http://www.merriam-webster.com/dictionary; Compl. ¶ 57 ("superfoods" is a marketing term for "food[s] considered to be especially beneficial for health and well-being").

but rather that "Coconut is *one* of the world's most nourishing foods." This could reasonably be relied upon to mean "highly nutritious," a fact Jones alleges is false (Compl. ¶¶ 58, 63, 95, 96). As the Honorable Richard Seeborg explained, distinguishing *Tylka*:

> It was surely the idea that there were no more nutritious, safe, or wholesome products available *anywhere* else around the globe that rose to the level of unbelievable exaggeration. The insistence that a product with (allegedly) dangerous additives is nonetheless "wholesome," by contrast, arguably could mislead a reasonable consumer. Accordingly, at this juncture, the term "wholesome" cannot be deemed to constitute non-actionable puffery.

*Chacanaca*, 752 F. Supp. 2d at 1125-26. In sum, whether it is misleading for Nutiva to represent that its coconut oil is one of the most nourishing foods, despite being composed almost entirely of saturated fat, is "a question of fact not appropriate for decision on [a motion to dismiss]." *Williams*, 552 F.3d at 938.

Nutiva's contention that "better than butter" is mere puffery (Mot. at 13), also fails because "the deceptive context of the packaging as a whole," *In re Ferrero Litig.*, 794 F. Supp. 2d at 1116, suggests the coconut oil is "better" because it is "a nutritious substitute" and contains "100% less cholesterol than butter." Properly understood in context, Nutiva's statement is not a vague product superiority claim like in *Pizza Hut* or *Cook*, but rather based on measurable characteristics and thus actionable. *See Gold v. Lumber Liquidators, Inc.*, 2015 U.S. Dist. LEXIS 165264, at *19-20 (N.D. Cal. Nov. 30, 2015) ("While vague 'product superiority claims' typically amount to nonactionable puffery, 'misdescriptions of specific or absolute characteristics of a product are actionable,' as are any 'specific and measurable advertisement claim of product superiority based on product testing.'" (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)).

Thus, Nutiva's claim, "Nurture Vitality" also should not be dismissed because it is part and parcel of the deceptive labeling and tied to descriptions of absolute characteristics of the product, such as "100% less cholesterol than butter," and "0g trans fat." *See In re Milo's Kitchen Dog Treats*, 9 F. Supp. 3d 523, 541 (W.D. Pa. 2014) ("even if Defendants' statements that the jerky treats are made with love and care constitute puffery standing alone, those

12

1    statements contribute 'to the deceptive context of the packaging as a whole'").

2          In sum, Jones alleges numerous statements that plausibly might mislead reasonable

3    consumers and "even if some of the statements relied on by Plaintiff standing on their own

4    may constitute puffery, those statements contribute 'to the deceptive context of the packaging

5    as a whole,'" and the court should "decline to dismiss these statements as well." *In re Ferrero

6    Litig.*, 794 F. Supp. 2d at 1116; *see also Franklin Fueling Sys. v. Veeder-Root Co.*, 2009 U.S.

7    Dist. LEXIS 72953, at *22 (E.D. Cal. 2009).

8          **B.    Plaintiff Need Not Plead Reliance For His UCL "Unlawful" Claim Based**

9                  **on Nutiva's Misbranding; but if Reliance is Required, Plaintiff Pleads It**

10         Nutiva does not contest that Jones states UCL "unlawful" prong claims based on

11   violations of the CLRA or FAL, nor does it contest the allegations that the coconut oil labels

12   violate federal and state food labeling regulations, and are thus misbranded. (Compl. ¶¶ 73-

13   92.) Instead, Nutiva characterizes its misbranding as a mere "technical" violation upon which

14   plaintiff did not rely. (Mot. at 16.) This argument is both misplaced and factually incorrect.

15         "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations

16   of other laws and treats them as unlawful practices that the [UCL] makes independently

17   actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180

18   (1999) (internal quotations omitted) (citing *State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal.

19   App. 4th 1093, 1103 (1996) (citation omitted)). While allegations of fraud are subject to Rule

20   9(b)'s heightened pleading standard, "[f]raud is not an essential element of a UCL claim,"

21   *Morris v. BMW of N. Am., LLC*, 2007 U.S. Dist. LEXIS 85513, at *14 (N.D. Cal. Nov. 7,

22   2007) (citation omitted).

23         In California, the elements of fraud are (1) misrepresentation, (2) knowledge of falsity,

24   (3) intent to defraud (4) justifiable reliance, and (5) damage. *See Kearns v. Ford Motor Co.*,

25   567 F.3d 1120, 1126 (9th Cir. 2009). Under the FDCA, a person found to have violated 21

26   U.S.C. § 331 by selling misbranded food is guilty of a misdemeanor. *See* 21 U.S.C. §

27   333(a)(1). "An article may be misbranded pursuant to the misdemeanor provision 'without

28   any conscious fraud at all,'" *United States v. Watkins*, 278 F.3d 961, 964 (9th Cir. 2002)

                                                     13

1   (quoting *United States v. Dotterweich*, 320 U.S. 277, 281 (1943)). Thus, to establish Nutiva's

2   misbranding, "plaintiff[] would be absolved from having to establish scienter and an intent to

3   defraud, the two pivotal elements of fraud. Accordingly, plaintiff['s] [misbranding] claims

4   do not 'sound in fraud,' and plaintiff['s] averments that rely on the FDCA and Sherman Laws

5   need only satisfy Rule 8(a), not Rule 9(b)." *See In re Actimmune Mktg. Litig.*, 2010 U.S. Dist.

6   LEXIS 90480, at *28 (N.D. Cal. Aug. 31, 2010).

7        Just as Jones's "unlawful" prong claim predicated on FDCA and Sherman Law

8   violations does not require heightened pleading, "[t]he claim . . . that Defendant has engaged

9   in unlawful conduct under the UCL, does not *require* reliance." *Aho v. Americredit Fin.*

10  *Servs.*, 2011 U.S. Dist. LEXIS 80426, at *25-26 (S.D. Cal. July 25, 2011) (emphasis added)

11  (citing *Lewis v. Robinson Ford Sales, Inc.*, 156 Cal. App. 4th 359, 371 (2007); *In re Tobacco*

12  *II Cases*, 46 Cal. 4th 298, 325 n.17 (2008) ("There are doubtless many types of unfair business

13  practices in which the concept of reliance, as discussed here, has no application.")). Rather,

14  "[f]or claims based on the 'unfair' or 'unlawful' prong of the UCL . . . courts have held that

15  the plaintiff need not allege reliance on misrepresentations, and may allege 'causation more

16  generally.'" *Olivera v. Am. Home Mortg. Servicing, Inc.*, 689 F. Supp. 2d 1218, 1224 (N.D.

17  Cal. 2010). Jones has done that. (Compl. ¶¶ 94, 104.)[9]

18       Nutiva's assertion that Jones did not rely on the misbranded labels, in any event, is

19  incorrect. Jones specifically alleges reliance upon the exact statements that violate federal

20  regulations (*id.* ¶ 94), which courts have found to be sufficient under similar circumstances.

21  In *Samet*, for example, plaintiffs alleged Pringles labels were unlawful because they were

22

23  _____

24  [9] That Jones alleges violations of the FDCA and Sherman Law as predicates for his

25  "unlawful" UCL claim (*see* Compl. ¶¶ 73-92, 123), distinguishes his case from decisions

26  holding that *Tobacco II's* actual reliance requirement applies to claims where the predicate

27  unlawful conduct is misrepresentation, as where a plaintiff alleges a violation of California's

28  FAL or CLRA as a predicate "unlawful" act. *See, e.g., Hale v. Sharp Healthcare*, 183 Cal.

App. 4th 1373, 1383-85 (2010) ("[t]he SAC's predicate for the claim of unlawfulness is

Sharp's alleged violation of Civil Code section 1770 subdivision (a)(5), (9) and (16),

provisions of the CLRA that pertain to misrepresentations and deceptive advertising").

1   marked "0g Trans Fat" but "fail[ed] to bear the mandatory [fat content] disclosure statement."
2   2013 U.S. Dist. LEXIS 173522, at *16. Plaintiffs also alleged they read the "0g Trans Fat
3   representation" and "relied on that representation in believing that Pringles was a healthier
4   choice," *id.* at *17. The Court found "these allegations themselves are sufficient." *Id. See also*
5   *Lanovaz v. Twinings Inc.*, 2013 U.S. Dist. LEXIS 25612, at *15-16 (N.D. Cal. Feb. 25, 2013)
6   (allegations that defendant "made an unlawful claim on its product label, which misled
7   Lanovaz into buying Twinings tea that she otherwise would not have purchased" were
8   "sufficient to establish an economic injury-in-fact").

9         As in *Samet*, Jones alleges he relied on the phrases "100% less cholesterol than butter,"
10  "0g trans fat," and "non-hydrogenated" (Compl. ¶ 94), which both misbrand the product (*id.*
11  ¶¶ 78-92), and led him to believe that it "was healthy, healthier than butter, and would not
12  raise or otherwise detriment his blood cholesterol levels" (*id. ¶* 95). Further, he would not
13  have purchased it, "if he knew the product was misbranded." (*Id.* ¶ 104.) Thus, in contrast to
14  *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013), where the "Plaintiffs
15  fail[ed] to allege reliance," *id.* at 1145, Jones has alleged reliance upon the unlawful act. *See*
16  *Lanovaz*, 2013 U.S. Dist. LEXIS 25612, at *16 ("The alleged purchase of a product that
17  plaintiff would not otherwise have purchased but for the alleged unlawful label is sufficient
18  to establish an economic injury-in-fact.").

19        Courts have also rejected Nutiva's assertion that a plaintiff must know "the branding
20  standards." (Mot. at 16.) In *Ivie v. Kraft Foods Global, Inc.*, the court:

21        disagree[d] with defendants that a plaintiff would be required to know of the
22        particular FDA or state law regulations in order for violations thereof to cause
          an economic injury. Plaintiff's claim is essentially that, because defendants'
23        labels did not comply with state and federal requirements . . . she could not
24        see . . . the disclosures, and therefore was misled by the unlawful packaging
25        and purchased the product based thereon.

26  961 F. Supp. 2d 1033, 1043 (N.D. Cal. 2013). Here too, Jones alleges the unauthorized "100%
27  less cholesterol" claim and Nutiva's material omission of the mandatory fat disclosure
28  statement misled him into purchasing a product he would not otherwise have purchased. (*See*

1    Compl. ¶¶ 94-97.)

2         **C.    Plaintiff States Claims for Breach of Express and Implied Warranties**

3         To plead a cause of action for breach of express warranty, a plaintiff must allege (1)

4    the exact terms of the warranty, (2) reasonable reliance thereon, and (3) proximate injury.

5    *Baltazar v. Apple, Inc.*, 2011 U.S. Dist. LEXIS 13187, at *5 (N.D. Cal. Feb. 10, 2011) (citing

6    *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)). Jones alleges

7    Nutiva expressly warranted, *inter alia*, that its coconut oil is a "Superfood," "one of the

8    world's most nourishing foods," and a "nutritious substitute" that is "better than butter"; that

9    he relied upon these representations in purchasing the product (Compl. ¶ 150); and that

10   "Nutiva breached its express warranties by selling products that are not healthy, not healthier

11   than butter, and that negatively affect[] cholesterol levels increasing risk of CHD and stroke"

12   (*id.* ¶ 151). Thus, Jones has sufficiently alleged a breach of express warranty. *See Allen v.*

13   *ConAgra Foods, Inc.*, 2013 U.S. Dist. LEXIS 125607, at *37-38 (N.D. Cal. 2013) ("Courts

14   in this district have previously found that plaintiffs stated express warranty claims based on

15   allegedly misleading food labeling.").

16        Nutiva's only challenge is to regurgitate its puffery argument (Mot. at 17), but Nutiva

17   still fails to "consider the packaging as a whole in evaluating whether the advertisement can

18   be read as implying specific facts about the product." *Dorsey v. Rockhard Labs., LLC*, 2014

19   U.S. Dist. LEXIS 132161, at *14 (C.D. Cal. Sept. 19, 2014). "The determination as to whether

20   a particular statement is an expression of opinion or an affirmation of fact is often difficult,

21   and frequently is dependent upon the facts and circumstances existing at the time the

22   statement is made." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (1985). Therefore, "[c]ourts

23   liberally construe sellers' affirmations of quality in favor of injured consumers." *Allen v.*

24   *Hylands, Inc.*, 2012 U.S. Dist. LEXIS 61606, at *8 (C.D. Cal. May 2, 2012).

25        Jones alleges Nutiva coconut oil is *not* a "nourishing," "superfood," nor is it a

26   "nutritious substitute" that is "better than butter," because coconut oil is "almost entirely

27   composed of saturated fat," "there is 'no safe level' of saturated fat intake," and "[t]here is

28   no evidence to indicate that saturated fatty acids are essential in the diet or have a beneficial

                                                16

role in the prevention of chronic diseases" (Compl. ¶¶ 12, 25, 27). Nutiva is simply wrong that terms "nourishing," "superfood," and "nutritious" are so vague they can only be puffery. Rather, while they "require a certain amount of contextualization to evaluate . . . this does not render them insusceptible to verification." *Allen*, 2012 U.S. Dist. LEXIS 61606, at *10-11. Indeed, the accused Nutiva claims are no vaguer than the terms "nutritious," and "healthy and balanced breakfast," which were "sufficiently specific and unequivocal to constitute an affirmative of fact or promise." *In re Ferrero Litig.*, 794 F. Supp. 2d at 1117-18.

Finally, contrary to its assertion (Mot. at 18), Nutiva "may not rely on the ingredients list 'to correct those misinterpretations,'" *Bohac v. Gen. Mills, Inc.*, 2014 U.S. Dist. LEXIS 41454, *24, 29-30 (N.D. Cal. Mar. 26, 2014) (quotation omitted) (denying motion to dismiss express warranty claims). Nutiva's reliance on *Backus v. General Mills, Inc.*, is misplaced since it was only because "Backus [was] not bringing a misrepresentation claim, that the disclosure of the alleged harmful ingredient was relevant." 2015 U.S. Dist. LEXIS 109839, at *25 (N.D. Cal. Aug. 18, 2015). In contrast to *Backus*, where the plaintiff's implied warranty claim alleged the product was not "fit for the ordinary purposes," *id.* at *44, Jones' implied warranty claim alleges Nutiva's coconut oil did "not conform to promises and affirmations made on the container or label" (Compl. ¶ 157). *See In re Ferrero Litig.*, 794 F. Supp. 2d at 1118 ("Although Ferrero argues that Nutella is fit for its ordinary purpose of consumption, Plaintiffs are bringing their claim under a different definition of merchantability, whether the product conforms with 'the promises or affirmations of fact made on the container or label.' Cal. Com. Code § 2314(2)(f)."). Because Nutiva has presented no valid challenge to Jones' implied warranty claim, it has not shown the claim should be dismissed. *Bronson v. Johnson & Johnson, Inc.*, 2013 U.S. Dist. LEXIS 54029, at *35 (N.D. Cal. Apr. 16, 2013) ("Where plaintiffs challenge food labels that are not preempted by Federal law and are otherwise allowed, courts refrain from dismissing implied warranty claims.").

In sum, Nutiva's motion to dismiss plaintiff's claims for breach of express and implied warranties should be "denied for the same reasons as the consumer protection and misrepresentation-based claims addressed above." *Ham v. Hain Celestial Group, Inc.*, 70 F.

17

Supp. 3d 1188, 1195 (N.D. Cal. 2014); *see also Tsan v. Seventh Generation, Inc*, 2015 U.S. Dist. LEXIS 149042, *18-19 (N.D. Cal. Nov. 3, 2015) (denying motion to dismiss breach of warranty claims because "[t]he Court has already rejected the contention that Plaintiffs' allegations do not plausibly meet the reasonable consumer standard as a matter of law").

### D. Plaintiff May Assert Claims on Behalf of the Class Concerning Substantially Similar Products that He did Not Purchase, but this Determination is Made at Class Certification

Nutiva contends "Jones has no standing to challenge products he did not purchase" (Mot. at 6). But:

> the vast majority of persuasive authority indicate that Defendant['s] legal argument is flawed. District courts in California routinely hold that the issue of whether a class representative "may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) (citations omitted). While Nutiva cites the minority position:

> Other judges in this district have observed that "standing is merely a threshold inquiry that requires the class action plaintiff to demonstrate she suffered economic injury by virtue of the purchases she herself made, not for the other transactions that she seeks to represent," and questions of substantial similarity are more appropriately deferred until the class certification stage.

*Morgan v. Wallaby Yogurt Co.*, 2014 U.S. Dist. LEXIS 34548, at *23 (N.D. Cal. Mar. 13, 2014) (quotation omitted); *see also Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012) ("we agree with the numerous recent decisions that have concluded that Defendants' argument is better taken under the lens of typicality or adequacy of representation"). Thus, "Defendant's argument is at odds with the prevailing view within this district (and elsewhere in the Ninth Circuit)," *Werdebaugh v. Blue Diamond Growers*, 2013 U.S. Dist. LEXIS 144178, at *44-45 (N.D. Cal. Oct. 2, 2013).

Further, because the relevant inquiry involves "typicality and adequacy" under Rule 23, rather than standing, courts have recognized a challenge is premature and have "decline[d]

18

to address whether a plaintiff may assert claims based on products he did not purchase until ruling on a motion for class certification." *Brazil v. Dole Food Co.*, 2013 U.S. Dist. LEXIS 136921, at \*23 (N.D. Cal. Sept. 23, 2013); *see also Pradhan v. Citibank, N.A.*, 2011 U.S. Dist. LEXIS 2350, at \*13 (N.D. Cal. Jan. 10, 2011) ("Any dispute as to whether Plaintiff[] ha[s] standing to pursue the claims of the putative class is properly addressed at a later time, not on a motion to dismiss."); *Bruno*, 280 F.R.D. at 530.

Jones respectfully submits that deciding whether he can represent purchasers of the Extra Virgin and Refined Coconut Oil products is best made at the class certification stage; plaintiff nevertheless recognizes that some courts have applied the substantially similar test at the pleading stage. "Factors that . . . courts have considered include [(1)] whether the challenged products are of the same kind, [(2)] whether they are comprised of largely the same ingredients, and [(3)] whether each of the challenged products bears the same alleged mislabeling." *Morales v. Unilever U.S., Inc.*, 2014 U.S. Dist. LEXIS 49336, \*12-13 (E.D. Cal. Apr. 9, 2014). In addition, courts consider whether (4) "the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products," *Ang v. Bimbo Bakeries USA, Inc.*, 2014 U.S. Dist. LEXIS 34443, at \*28 (N.D. Cal. Mar. 13, 2014).

Here, all three challenged products are not only of the same kind (coconut oil), all three contain the *same single ingredient* (coconut oil), and "Each 1 tablespoon (or 15mL) serving of Nutiva coconut oil (*whether "Extra Virgin," "Virgin," or "Refined"*) contains 130 calories . . . 14 grams of fat . . . [and] 13 grams of saturated fat." (Compl. ¶ 52 (emphasis added).) This alone demonstrates the products are sufficiently similar. *See Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 626 (N.D. Cal. 2013) (Plaintiff "has established a prima facie showing of typicality for products with essentially the same ingredients as the products she purchased, as those also fall within sufficient similarity test.").

However, not only are the products identical in kind, and not only do they contain identical ingredients, but Nutiva's representations are misleading in the same manner because the coconut oils are all "unhealthy . . . due to their high saturated fat content" (Compl. ¶ 72). Where, as here, "all the products are the same and *deceive in the same manner*, [] the

19

1  Complaint sufficiently pleads substantial similarity." *Victor*, 2014 U.S. Dist. LEXIS 34550,

2  at *30-31 (emphasis added); *see also Anderson v. Jamba Juice Co.*, 888 F.Supp.2d 1000,

3  1005-1006 (N.D. Cal. Aug. 25, 2012) (plaintiff had standing to assert claims on behalf of

4  purchasers of smoothies he did not buy because they involved similar misrepresentations

5  about identical ingredients).

6      Defendant's analysis ignores that the products are of the same type, contain the same

7  single ingredient, deceive consumers in the same manner, and all cause economic injury.

8  Instead, Nutiva asserts the labeling claims are "*markedly* different" (Mot. at 9 (emphasis in

9  original)). But contrary to Nutiva's self-serving reading of the Complaint, as shown in the

10  chart below, the challenged representations on each product *are* similar.[10]

| Extra Virgin | Virgin | Refined |
|---|---|---|
| "Zero trans fats" | "0g trans fat" | "0g trans fats" |
| "Non-Hydrogenated" | "Non-Hydrogenated." | "Non-Hydrogenated" |
| "100% less cholesterol than butter," "nutritious substitute," and "Better than butter" | "100% less cholesterol than butter," "nutritious substitute," and "better than butter'" | --- |
| "nature's ideal all-purpose oil" | "Contains 62% medium chain triglycerides (MCTs) along with lauric and caprylic acids" | "Contains 62% medium chain triglycerides along with lauric and caprylic acids" |
| "healthy cooking oil" | "Superfood" | "Superfood" |
| "one of world's most nourishing foods" | "one of world's most nourishing foods" | --- |
| "Nourishing people & planet" | "Nurture Vitality" | "Nurture vitality" |

23  As this chart shows, the Extra Virgin and Refined products bear substantially the same

24  claims as the Virgin product. All three bear the labeling claims "0g trans fat" or "Zero trans

_____

[10] *See* Plaintiff's Request for Judicial Notice, Exs. 1-3, filed concurrently herein; *McKinniss v. General Mills*, 2007 U.S. Dist. LEXIS 96107, at *10 (C.D. Cal. Sept. 18, 2007) (court can take judicial notice of packaging that portrays challenged images and words better than examples attached to complaint).

fats" as well as the claim "non-hydrogenated." (Compl. ¶ 90.) The front of the label of the Virgin and Refined Coconut Oils bear the term "superfood" (*id.* ¶ 49 (picture)), which is a "term for 'food[s] considered to be especially beneficial for health'" (*id.* ¶ 57), and is substantially similar the extra virgin coconut oil's claim "healthy cooking oil" (*id.* ¶ 49 (picture)). Further, the phrase "nourishing people and planet," found on the Extra Virgin label, is similar to the phrase "Nurture Vitality" found on both the Virgin and Refined labels. (*See id.* ¶ 49 (picture).)

That the Refined label does not contain the phrase "100% less cholesterol than butter," or the Extra Virgin label does not claim to "Contain[] 62% medium chain triglycerides," does not change the fact that each label "conveys the concrete message to a reasonable consumer that the products are healthy" (Compl. ¶ 63), and misleads consumers in the same way. *See Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687, 693-94 (S.D. Fla. 2010) (defendant "employed a number of devices, jingles, and turns of phrase to convey the common message that eating Yo-Plus aids in the promotion of digestive health in ways that eating normal yogurt does not. . . . It is that precise claim—communicated in one way or another to every purchaser of Yo-Plus . . . that Plaintiff alleges is deceptive"), *vacated on other grounds*, 635 F.3d 1279 (8th Cir. 2011); *Ogden*, 292 F.R.D. at 626 (plaintiff could assert claims for unpurchased products after making "a prima facie showing" of similarity between products where they had "similar or identical claims about Omega–3 content, as those labels may have misled class members in the same way that they allegedly misled [Plaintiff]" and, alternately, because they contained "essentially the same ingredients").

Moreover, Nutiva "does not argue that the differences affect the nature of or harm from the alleged misrepresentation, so any such differences are insufficient to defeat substantial similarity for purposes of standing." *Rojas v. Gen. Mills, Inc.*, 2014 U.S. Dist. LEXIS 41315, *34 (N.D. Cal. Mar. 26, 2014). For example, Plaintiff alleges that all three products are unlawfully misbranded because they contain the claims "0g Trans Fat" and "non-hydrogenated," but fail to bear the mandatory disclosure, "See nutrition information for total fat and saturated fat content," which is required for foods making nutrient content claims that

21

contain more than 13 grams of fat or 4 grams of saturated fat. *See Ang*, 2014 U.S. Dist. LEXIS 34443 at *28 ("a claim that products are illegally mislabeled as a matter of law because the labels fail to disclose something required by a statute or regulation can be resolved without a context-specific analysis of each product's label . . . that the labels themselves are different in other respects - is immaterial to the determination of whether the label is in fact illegal").

Ultimately, all three products: (1) are coconut oils from the same product line, (2) contain the same ingredient and nutritional composition, (3) share most of the same or similar misleading claims, (4) mislead consumers in the same manner regarding the healthfulness of the products, (5) omit the same required disclosure statement, and (5) cause economic injury to consumers. Therefore, the court should find that plaintiff has "alleged sufficient similarity between products they did purchase and those that they did not," with "any concerns . . . about material differences . . . better addressed at the class certification stage rather than at the 12(b)(6) stage." *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 U.S. Dist. LEXIS 101371, *37 (N.D. Cal. July 20, 2012); *see also Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1194, 1197-98 (S.D. Cal. 2015) (finding products appeared to be substantially similar because "all three beverages 'contain an amount of . . . 4-MeI[], a carcinogen, sufficient to exposure consumers to substantial health risks," and "all [were] improperly promoted, labeled, and advertised"); *c.f. Ang v. Bimbo Bakeries USA, Inc.*, 2013 U.S. Dist. LEXIS 138897, at *35 (N.D. Cal. Sept. 25, 2013) ("if a particular label for a Substantially Similar Product differs materially from one on a Purchased Product, that issue is more appropriately addressed on class certification").

**E.     Plaintiff Has Standing to Pursue Injunctive Relief to Prevent Nutiva's Ongoing Infringement of His Substantive Right to Freedom From Exposure to Fraud, or as a Matter of Class Standing; Or the Court Should Treat Them as State Law Claims and Exercise Supplemental Jurisdiction**

Nutiva argues Jones lacks standing to pursue injunctive relief because he is aware of the deception. (Mot. at 10.) This Court recently acknowledged a split of authority on this issue. *See Gallagher v. Chipotle Mexican Grill, Inc.*, 2016 U.S. Dist. LEXIS 14479, at *8

1  (N.D. Cal. Feb. 5, 2016) (Gilliam, J.). While Jones recognizes the Court has adopted the

2  position that a plaintiff that is aware of false advertising or without an intent to repurchase

3  the product lacks Article III standing to pursue injunctive relief, *id.* at *3, he respectfully

4  contends this "misapprehend[s] the nature of the injury suffered by the consumer," *Lilly v.*

5  *Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 34498, at *9 (N.D. Cal. Mar. 18, 2015).

6          California's consumer protection statutes offer protection broader than just freedom

7  from actual deception. "The substantive right extended to the public by the UCL is the right

8  to protection from fraud, deceit and unlawful conduct[.]" *In re Tobacco II Cases*, 46 Cal. 4th

9  at 324 (internal quotation marks and citation omitted). This means California consumers are

10  injured when they are merely *exposed* to deception in the marketplace, even if they do not

11  "bite" on the fraud. *Lilly*, 2015 U.S. Dist. LEXIS 34498, at *9 ("injunctive relief enables the

12  Plaintiffs and other consumers to have confidence that the information they receive about the

13  challenged products at the time of purchase is accurate"). Moreover, the injury here is not

14  just dignitary, but also economic in nature:

15          When a consumer discovers that a representation about a product is false, she
16          doesn't know that another, later representation by the same manufacturer is
           also false. * * * But the manufacturer may change or reconstitute its product
17          in the future to conform to the representations on the label. In fact, the
           manufacturer has every reason to do this . . . In that event, the product would
18          actually become the product that our hypothetical consumer values most
           highly, and it would be labeled as such. But unless the manufacturer or seller
19          has been enjoined from making the same misrepresentation, our hypothetical
           consumer won't know whether the label is accurate. A rule that prevents this
20          consumer from seeking an injunction doesn't comport with traditional notions
           of standing; it prevents the person most likely to be injured in the future from
21          seeking redress.

22

23

24  *Id.* at *9-12. *C.f. Ries v. Ariz. Beverages*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) ("Should

25  plaintiffs encounter the denomination 'All Natural' on an Arizona beverage at the grocery

26  store today, they could not rely on that representation with any confidence. This is the harm

27  California's consumer protection statutes are designed to redress.")

28          Because Nutiva's fraud is ongoing, plaintiff continues to be exposed to the fraud in the

marketplace and his substantive rights continue to be violated, giving him standing to seek to enjoin the violation. Therefore, the Court need not "create a public-policy exception to the standing requirement . . . [that is inconsistent] with Article III's mandate," *Gallagher*, 2016 U.S. Dist. LEXIS 14479, at *8 n.3 (quoting *Delarosa v. Boiron, Inc.*, 2012 U.S. Dist. LEXIS 188828 (C.D. Cal. Dec. 28, 2012)), to allow plaintiff's injunctive relief claims to proceed and thereby enforce his substantive right to a marketplace free from fraud.

Rather, "a real and immediate threat of repeated injury" of a consumer's very broad right to be free from a marketplace full of deception, exists regardless of whether a plaintiff is now aware of the deception or intends to purchase the product in the future. *See Lilly*, 2015 U.S. Dist. LEXIS 34498, at *16 ("Defendants' alleged mislabeling harms consumers by providing them with misleading information and depriving them of their ability to make an informed decision about how to best spend their money."). In sum, because the substantive right conferred by the statute includes freedom from exposure to fraud in the marketplace, Nutiva's ongoing false advertising campaign is sufficient injury—even for plaintiffs aware of the fraud—to satisfy the redressability aspect of Article III.

In addition, as a putative class representative, plaintiff has class standing to seek injunctive relief. Absent class members, unaware though they are—because of their unawareness—have standing to seek injunctive relief, which is imparted on plaintiffs as their representatives. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 1624 (2013); *Harris v. Las Vegas Sands L.L.C.*, 2013 U.S. Dist. LEXIS 185587, at *11-12 (C.D. Cal. Aug. 16, 2013) (

> [I]n class actions, . . . plaintiffs seek "to represent broader interests than [their] own." . . . . The very existence of class actions creates a certain "tension" with the standing doctrine. . . . between adequacy of representation and standing . . . [and] between standing and mootness[]. The same type of tension exists in consumer class actions seeking prospective relief. While a consumer must have been injured to have standing to bring a claim under a consumer protection statute in the first instance, a lead plaintiff need not allege that he will willingly subject himself to future misconduct, or that he will be fooled by false advertising he now knows to be false, in order to seek injunctive relief

24

on behalf of a class. Because some members of the class do not have the same knowledge as Plaintiff now does, there is a likelihood of repeat injury for the class as a whole, and on the basis of "class standing," the claims may proceed. (internal citations omitted)).

Finally, supplemental jurisdiction over Jones's claims for injunctive relief under state law "is appropriate pursuant to 28 U.S.C. § 1367(a)," *see Cal. Dep't of Health Servs. v. B & R Davis Fertilizers*, 1994 U.S. App. LEXIS 18013, at *8 (9th Cir. July 19, 1994). Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

Here, there is no dispute that the court has original jurisdiction over Jones's claims for restitution and damages (*see* Dkt. No. 1, Notice of Removal), or that his claims for injunctive relief "form part of the same case or controversy," as they clearly "derive from a common nucleus of operative fact." Thus, the court can and should exercise its supplemental jurisdiction over plaintiff's claims for injunctive relief. *See Cal. Dep't of Health Servs.*, 1994 U.S. App. LEXIS 18013 at *10; *Reed Elsevier v. Who's Who Worldwide Registry*, 1994 U.S. Dist. LEXIS 4439, at *3 (E.D.N.Y. Mar. 8, 1994) ("Federal courts are given supplemental jurisdiction over" state law claim for injunctive relief). This is especially sensible compared to the alternative of plaintiff's monetary and injunctive relief claims being split between federal and state court.

If the Court nevertheless finds plaintiff lacks standing to pursue injunctive relief, he respectfully asks that the Court remand his injunctive relief claims, rather than dismiss them. (*See* Pl.'s Mot. for Remand, Dkt. No. 19.)

## V.   CONCLUSION

For the foregoing reasons, Jones respectfully requests that the Court deny Nutiva's Motion for Judgment on the Pleadings in full.

Dated: March 22, 2016                    Respectfully submitted,

                                         /s/ Jack Fitzgerald

                                         **THE LAW OFFICE OF JACK FITZGERALD, PC**
                                         JACK FITZGERALD
                                         *jack@jackfitzgeraldlaw.com*
                                         TREVOR M. FLYNN
                                         *trevor@jackfitzgeraldlaw.com*
                                         MELANIE PERSINGER
                                         *melanie@jackfitzgeraldlaw.com*
                                         Hillcrest Professional Building
                                         3636 Fourth Avenue, Suite 202
                                         San Diego, California 92103
                                         Phone: (619) 692-3840
                                         Fax: (619) 362-9555

                                         **THE LAW OFFICE OF PAUL K. JOSEPH, PC**
                                         PAUL K. JOSEPH
                                         *paul@pauljosephlaw.com*
                                         4125 W. Point Loma Blvd. No. 206
                                         San Diego, California 92110
                                         Phone: (619) 767-0356
                                         Fax: (619) 331-2943

                                         ***Attorneys for Plaintiff and the Proposed Class***

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2016, I served the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** on counsel of record for all parties in this action, by notice of electronic filing, which was automatically generated by the Court's CM/ECF system at the time the document was filed with the Court.

Dated: March 22, 2016                              /s/ Jack Fitzgerald
                                                   Jack Fitzgerald

*Jones v. Nutiva, Inc.*, No. 16-cv-711-HSG
OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS