UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON JONES,<br><br>    Plaintiff,<br><br>v.<br><br>NUTIVA, INC.,<br><br>    Defendant. | Case No. 16-cv-00711-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS, DENYING MOTION TO REMAND, AND DENYING MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 18, 19, 28 |

Pending before the Court are three motions: (1) Defendant's motion for judgment on the pleadings, Dkt. No. 18; (2) Plaintiff's motion to remand its claim for injunctive relief if not permitted to proceed before this Court, Dkt. No. 19; and (3) Plaintiff's motion to strike affirmative defenses, or in the alternative for judgment on the pleadings, and for order directing Defendant to answer the complaint's specific allegations, Dkt. No. 28. Having considered the parties' motions and all related papers, the Court finds the matter appropriate for decision without oral argument. *See* Civil L.R. 7-1(b). For the reasons articulated below, Defendant's motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART; Plaintiff's motion to remand is DENIED; and Plaintiff's motion to strike is DENIED.

**I.    BACKGROUND**

On January 7, 2016, Plaintiff Preston Jones filed a class action complaint on behalf of a putative nationwide class, alleging violations of California's Unfair Competition Law ("UCL"), Consumers Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"), as well as breach of express warranty and breach of implied warranty. Dkt. No. 2-1 ("Compl."). On February 11, 2016, Defendant removed the action to this Court under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) and 1453(b) ("CAFA"). Dkt. No. 1. Plaintiff's claims are

based on Defendant's advertising representations regarding its Extra Virgin Coconut Oil, Organic Virgin Coconut Oil, and Refined Coconut Oil (together, the "Products"). Compl. ¶ 49.

For purposes of the motions, the Court accepts the following as true: In or around January 2013 and again in or around February 2014, Plaintiff purchased a fifteen-ounce jar of Defendant's Organic Virgin Coconut Oil. *Id.* ¶ 93. Plaintiff was seeking "a nourishing, nutritious superfood that was better than butter, the consumption of which would not increase his risk of CHD, stroke, or other morbidity." *Id.* ¶ 96. In purchasing Defendant's Organic Virgin Coconut Oil, Plaintiff read the product's label and relied upon the following statements: (1) "Nurture Vitality"; (2) "Organic Superfood"; (3) "100% less cholesterol than butter"; (4) "Coconut is one of the world's most nourishing foods"; (5) "Contains 62% medium chain triglycerides (MCTs) along with lauric and caprylic acids"; (6) "is 'better than butter'"; (7) "A nutritious substitute in baking"; (8) "0g trans fat"; and (9) "non-hydrogenated." *Id.* ¶ 94. Based on those statements, Plaintiff "believed Nutiva [Organic] Virgin Coconut Oil was healthy, healthier than butter, and would not raise or otherwise detriment his blood cholesterol levels." *Id.* ¶ 95. However, the amount of total and saturated fat in Defendant's Products renders them "both inherently unhealthy" and a "less healthy" butter alternative. *Id.* ¶ 56. Indeed, consumption of Defendant's Products "causes increased risk of CHD, stroke, and other morbidity." *Id.* ¶ 103. Plaintiff "paid more for Nutiva [Organic] Virgin Coconut Oil" based on the statements on its label and "would not have purchased Nutiva [Organic] Virgin Coconut Oil if he knew the product was misbranded pursuant to California and FDA regulations, or that its claims were false and misleading." *Id.* ¶¶ 101, 104.

Further, Defendant's Extra Virgin Coconut Oil and Organic Virgin Coconut Oil "are in fact the identical product" sold under a different label and name "to comply with certain regulations." *Id.* ¶ 50. Moreover,

> Each 1 tablespoon (or 15mL) serving of Nutiva coconut oil (whether "Extra Virgin," "Virgin," or "Refined") contains 130 calories, all of which come from fat: in each 14-gram serving there are 14 grams of fat. Further, each 14-gram serving contains 13 grams of saturated fat. In other words, Nutiva's Coconut Oil is 100 percent fat, 93 percent of which is saturated fat.

*Id.* ¶ 52. Based on these allegations, Plaintiff seeks to assert this action "on behalf of himself and

a Class of all persons in the United States who, on or after January 7, 2011[1] (the 'Class Period'), purchased, for personal or household use, and not for resale or distribution purposes, Nutiva Extra Virgin Coconut Oil, Nutiva Virgin Coconut Oil, or Nutiva Refined Coconut Oil." *Id.* ¶ 109.

Plaintiff asserts five causes of action on behalf of the putative nationwide class: (1) violation of the "fraudulent," "unlawful," and "unfair" prongs of the UCL; (2) violation of the FAL; (3) violation of the CLRA; (4) breach of express warranty; and (5) breach of the implied warranty of merchantability. Plaintiff seeks an order compelling Nutiva to (i) cease marketing its Products using allegedly misleading and unlawful tactics; (ii) destroy all misleading, deceptive, and unlawful materials; (iii) conduct a corrective advertising campaign; (iv) disgorge the amounts by which it has been unjustly enriched; and (v) pay restitution, compensatory damages, and punitive damages. *Id.*

## II.   REQUEST FOR JUDICIAL NOTICE

Before turning to the substance of the motions, the Court considers Plaintiff's request that the Court take judicial notice of "more complete and more legible" labels for Defendant's Products. Dkt. No. 21.

The doctrine of judicial notice permits a court to take as true "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under the incorporation by reference doctrine, the Court has discretion to consider on a motion to dismiss "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.")

---

[1] Plaintiff asserts that the January 7, 2011, date is a typographical error, and that the correct Class Period begins January 7, 2012. Dkt. No. 20 at 2 n.1. The Court addresses Plaintiff's typographical error in the statute of limitations section below.

1  Because the Products' labels form the basis of Plaintiff's complaint, and there is no dispute as to their authenticity, the Court finds it appropriate to take judicial notice of the more legible Product labels under the incorporation by reference doctrine. As such, the Court GRANTS Plaintiff's request.

### III. DISCUSSION

The Court will begin with Defendant's motion for judgment on the pleadings, then address Plaintiff's motion to remand and Plaintiff's motion to strike.

#### A. Defendant's Motion for Judgment on the Pleadings

##### i. Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The legal standard that governs a Rule 12(c) motion is the same as that which governs a Rule 12(b)(6) motion. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

"Rule 12(c) of the Federal Rules of Civil Procedure neither expressly provides for, nor bars, partial judgment on the pleadings." *Plumlee v. Pfizer, Inc.*, No. 13-CV-00414-LHK, 2014

4

WL 695024, at *4 (N.D. Cal. Feb. 21, 2014). However, courts commonly apply Rule 12(c) to individual causes of action. *Id.* A court has discretion to permit leave to amend in conjunction with a Rule 12(c) motion and may dismiss causes of action rather than grant judgment. *Id.* If a court grants a motion for judgment on the pleadings, leave to amend should be granted unless such amendment would be futile. *Pac. W. Grp., Inc. v. Real Time Sols., Inc.*, 321 F. App'x 566, 569 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) heightens these pleading requirements for all claims that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "[The Ninth Circuit] has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (internal quotation marks and citation omitted).

In short, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin,* 252 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

### ii. Analysis

Defendant moves for judgment on the pleadings for seven main reasons: (1) Plaintiff lacks standing to challenge products that he did not purchase; (2) Plaintiff lacks standing to challenge statements on Defendant's website because Plaintiff does not allege that he ever viewed Defendant's website; (3) Plaintiff fails to plead any UCL, FAL, or CLRA claim because he does not plausibly allege that a reasonable consumer is likely to be deceived by Defendant's Product advertising; (4) Plaintiff cannot state a UCL misbranding claim because Plaintiff does not plead reliance; (5) Plaintiff does not sufficiently allege claims for breach of express or implied warranty;

5

1  (6) Plaintiff asserts claims based on conduct occurring outside of the applicable statute of
2  limitations; and (7) Plaintiff lacks Article III standing to seek injunctive relief.

### a. Plaintiff's Standing to Challenge Unpurchased Products

Defendant asserts that Plaintiff lacks standing to challenge the Products that he did not purchase — namely, Defendant's Extra Virgin Coconut Oil and Defendant's Refined Coconut Oil. Dkt. No. 18 ("MJOP") at 6-9. In opposition, Plaintiff urges the Court to reserve ruling on whether he can represent purchasers of Defendant's Extra Virgin and Refined Coconut Oil products until the class certification stage. Dkt. No. 20 ("Opp'n to MJOP") at 18-22.

In the Ninth Circuit, "[t]here is no controlling authority on whether [p]laintiffs have standing for products they did not purchase." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012). While some district courts have held that a plaintiff lacks standing to assert such claims and others reserve the issue until a motion for class certification, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Id.* at 869; *see also Werdebaugh v. Blue Diamond Growers*, 2013 U.S. Dist. LEXIS 144178, *45, 2013 WL 5487236 (N.D. Cal. Oct. 2, 2013). If the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012). However, "[w]here the alleged misrepresentations or accused products are dissimilar, courts tend to dismiss claims to the extent they are based on products not purchased." *Miller*, 912 F. Supp. 2d at 870.

Courts have found substantial similarity where (1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer is the same; and (3) both the products and the legal claims and injury are similar. *Ang v. Bimbo Bakeries USA, Inc.*, 2014 U.S. Dist. LEXIS 34443, *13-14 (N.D. Cal. Mar. 13, 2014). The Court agrees with Judge Orrick of this district that "the best approach is one which focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products." *Id.* at *28. "That determination necessarily focuses on whether the

resolution of the asserted claims will be identical between the purchased and unpurchased products." *Id.* For example, a plaintiff may be able to assert claims for unpurchased products when the plaintiff contends that the products' labels fail to include a disclosure required by statute or regulation. *Id.* Such an allegation "can be resolved without a context-specific analysis of each product's label" and "[t]hat the products bearing the challenged label may be different — or that the labels themselves are different in other respects — is immaterial to the determination of whether the label is in fact illegal." *Id.* In contrast, a plaintiff asserting that the products' labels would deceive or mislead a reasonable consumer might be limited to challenging products that he or she purchased personally because such a claim "may well require a context-specific analysis of the appearance of the label, the misrepresentation's placement on the label, and other information contained on the label." *Id.* at *28-29. Similarly, if the composition of the products is legally significant, a plaintiff may only be able to pursue claims for products with identical compositions. *Id.* at *29.

It is undisputed that Plaintiff has only purchased Defendant's Virgin Coconut Oil and has never purchased Defendant's Extra Virgin or Refined Coconut Oil. Compl. ¶ 93. Based on his purchase of Defendant's Virgin Coconut Oil, Plaintiff asserts claims that all three of Defendant's Products are misbranded as a matter of law, *id.* ¶¶ 77-92, and are likely to deceive or mislead a reasonable consumer, *id.* ¶ 56.

The Court holds that Plaintiff may assert claims for Defendant's Extra Virgin Coconut Oil and Refined Coconut Oil on the basis that these items were misbranded as a matter of law. Plaintiff alleges, and Defendant does not appear to dispute, that "[e]ach 1 tablespoon (or 15mL) serving of Nutiva coconut oil (whether 'Extra Virgin,' 'Virgin,' or 'Refined') contains 130 calories, all of which come from fat: in each 14-gram serving there are 14 grams of fat. Further, each 14-gram serving contains 13 grams of saturated fat. In other words, Nutiva's Coconut Oil is 100 percent fat, 93 percent of which is saturated fat." *Id.* ¶ 52. According to Plaintiff, despite this high total and saturated fat content, Defendant's Extra Virgin and Virgin Coconut Oil labels contain the statement "100% less cholesterol than butter," and Defendant's Products all contain the statements "0g trans fat" (or "Zero trans fats") and "Non-hydrogenated." *Id.* ¶¶ 77-92; Dkt.

No. 21-1. Plaintiff's claims that these products are thus misbranded "can be resolved without a context-specific analysis of each product's label" and the fact that "the products bearing the challenged label may be different — or that the labels themselves are different in other respects — is immaterial to the determination of whether the label in in fact illegal." *See Ang*, 2014 U.S. Dist. LEXIS 34443, at *28. Accordingly, the Products are sufficiently similar for purposes of Plaintiff's claim that the Products are misbranded as a matter of law.

However, the Court also holds that Plaintiff lacks standing to assert his claims that Defendant's Extra Virgin and Refined Coconut Oil are likely to deceive or mislead a reasonable consumer, since he did not purchase those products. Plaintiff fails to adequately allege that the Extra Virgin or Refined Coconut Oil labels are substantially similar to Defendant's Organic Virgin Coconut Oil label. Plaintiff alleges that Defendant's Product "labeling claims are designed to conceal or distract customers from noticing that its coconut oils are pure fat, almost all of which is unhealthy saturated fat." Compl. ¶ 56. Further, Plaintiff contends that several of Defendant's Product statements "taken individually and in the context of the label as a whole" misleadingly imply that Defendant's Products are healthy. *See id.* ¶¶ 57-63. These UCL, FAL, and CLRA allegations "require a context-specific analysis of the appearance of the label, the misrepresentation's placement on the label, and other information contained on the label." *See Ang*, 2014 U.S. Dist. LEXIS 34443, at *28-29. Plaintiff concedes that Defendant's Extra Virgin, Virgin, and Refined labels are different and do not all contain the same allegedly misleading statements. *See* Opp'n to MJOP at 20; Dkt. No. 21-1; Compl. ¶ 81. For this reason, determining whether Defendant's representations would mislead a reasonable consumer will involve a separate fact-specific analysis for each label. Accordingly, the Court finds that Plaintiff does not have standing to challenge Defendant's Extra Virgin or Refined Coconut Oil labels on the basis that they are likely to deceive or mislead a reasonable consumer. *See Ang*, 2014 U.S. Dist. LEXIS 34443, at *28.

In sum, the Court holds that Plaintiff may challenge Defendant's Extra Virgin and Refined Coconut Oil on the basis that they are misbranded as a matter of law. To the extent that Plaintiff seeks to challenge Defendant's Extra Virgin and Refined Coconut Oil labels on the basis that they

are likely to mislead a reasonable consumer, Plaintiff lacks standing to assert such claims.

### b. Plaintiff's Standing to Challenge Defendant's Website Representations

Next, Defendant moves for judgment that Plaintiff cannot pursue claims based on Defendant's website because Plaintiff "does not allege that he relied on any website statement in making his purchases." MJOP at 9-10. Plaintiff responds that Defendant "misunderstands the nature of [Plaintiff's] references to Nutiva's website" in that Plaintiff does not seek to state "a claim for relief as to the falsity of representations on Nutiva's website, but instead refers to the website simply because those representations are highly relevant to various issues in the case." Opp'n to MJOP at 2 n.1.

The Court agrees that Plaintiff's references to Defendant's website may be relevant to class certification and absent class members' reliance. *See Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, 2015 U.S. Dist. LEXIS 14674, *34-35 (N.D. Cal. Feb. 5, 2015). In light of Plaintiff's representation that it is not asserting a stand-alone claim based on the website statements, the Court DENIES Defendant's motion for judgment on this theory as moot.

### c. UCL, FAL and CLRA Claims

Defendant next contends that Plaintiff fails to state a claim under the UCL, FAL, or CLRA because (1) Plaintiff does not plausibly allege that the statements on Defendant's Virgin Coconut Oil label, which are mere "puffery," would deceive a reasonable consumer, MJOP at 11-15, and (2) Plaintiff's UCL misbranding claims fail to adequately plead reliance, *id.* at 16-17.

#### 1. The Reasonable Consumer Test

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To plead a claim under the UCL's "fraudulent" prong, a plaintiff must plausibly allege that the defendant's product claims are false or misleading. *Williams v. Gerber Prods., Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The UCL's "unfair" prong prohibits "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002), *as modified* (May 22, 2002)); *Brod v. Sioux Honey Ass'n, Co-op.*, 927 F. Supp. 2d

811, 828 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 415 (9th Cir. 2015). The UCL's "unlawful" prong incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). California's CLRA prohibits any "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770. The FAL prohibits any "untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17500. A violation of the FAL "necessarily violates the UCL." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002), *as modified* (May 22, 2002).

UCL, CLRA, and FAL claims are all governed by the "reasonable consumer" test. *Williams*, 552 F.3d at 938. Thus, to state a claim, Plaintiff must plausibly plead that "members of the public are likely to be deceived." *Id.* (quotations and citations omitted). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, the test is whether "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams*, 552 F.3d at 938. It is a "rare situation" when "granting a motion to dismiss [a UCL claim] is appropriate." *Id.* at 939.

This case does not present that "rare situation." Plaintiff alleges that the statements (1) "Nurture Vitality"; (2) "Organic Superfood"; (3) "100% less cholesterol than butter"; (4) "Coconut is one of the world's most nourishing foods"; (5) "Contains 62% medium chain triglycerides (MCTs) along with lauric and caprylic acids"; (6) "is 'better than butter'"; (7) "A nutritious substitute in baking"; (8) "0g trans fat"; and (9) "non-hydrogenated," read together, led Plaintiff to believe that Defendant's Virgin Coconut Oil "was healthy, healthier than butter, and would not raise or otherwise detriment his blood cholesterol levels." Compl. ¶¶ 94, 95. However, Plaintiff maintains, Defendant's Virgin Coconut Oil in reality contains high saturated fat levels,

which have "a pernicious effect on blood total and LDL cholesterol levels" and increase "the risk of CHD, stroke, and other morbidity." *Id.* ¶¶ 58, 59, 97. Viewing the facts in the light most favorable to Plaintiff, the Court cannot conclude as a matter of law that no reasonable consumer would interpret Defendant's statements to mean that Defendant's Virgin Coconut Oil does not increase LDL blood cholesterol levels. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010). It is plausible that a reasonable consumer could interpret statements such as "0g trans fat" and "100% less cholesterol than butter" to indicate that Defendant's Virgin Coconut Oil is healthy, healthier than butter, or at least does not negatively impact one's cholesterol levels. *Id.* at 1129 n. 3; *see also Samet v. P&G*, 2013 U.S. Dist. LEXIS 86432, at *30 (N.D. Cal. June 18, 2013).

      Defendant maintains that the statements that Plaintiff allegedly relied upon are not actionable because they constitute non-actionable "puffery." MJOP at 11-15. In support of this contention, Defendant purports to analyze each statement and conclude that each is a subjective, non-actionable claim. *See id.* District courts may properly determine whether a statement is puffery at the motion to dismiss stage. *See Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990). "'Puffing' is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely . . . ." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (quoting 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27.04[4][d] at 27–52 (3d ed.1994)); *see also Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 n.3 (Ct. App. 2003). "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008). The Court agrees with Defendant that some of the Virgin Coconut Oil statements that Plaintiff purportedly relied upon could, standing alone, be characterized as puffery. For example, "is 'better than butter'" is closer to a subjective, general assertion of superiority than a statement of concrete, measurable fact. *See Williams*, 552 F.3d at 939 n. 3. But considered in the context of Defendant's entire Virgin Coconut Oil label, this statement could "certainly contribute[] . . . to the deceptive context of the package as a whole." *Id.*; *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115-16 (S.D. Cal.

11

1  2011). The same is true of each statement Defendant purports to isolate and analyze on a stand-
2  alone basis without considering the context of the label as a whole. Accordingly, the Court
3  declines to dismiss Plaintiff's UCL, FAL, and CLRA claims as based on non-actionable puffery.

### 2. UCL Misbranding Claim

Next, Defendant contends that Plaintiff fails to plead reliance as required for its UCL misbranding claim. MJOP at 16-17. Plaintiff responds that he need not plead reliance under the UCL's unlawful prong, and in the alternative, his complaint adequately pleads reliance. Opp'n to MJOP at 13-16.

The Court finds both that Plaintiff must plead reliance and that Plaintiff has adequately done so here. Plaintiff is correct that it is possible to plead a claim under the UCL's unlawful prong that does not sound in fraud and therefore need not satisfy the requirements of Federal Rule of Civil Procedure 9(b). *See Campen v. Frito-Lay North Am., Inc.*, 2013 U.S. Dist. LEXIS 47126, *13 (N.D. Cal. Apr. 1, 2013) (citing *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1105-06 (9th Cir. 2003)). However, when, as in this case, a plaintiff bases its "unlawful business practices claims on [a defendant's] alleged violations of underlying laws by way of allegedly fraudulent or deceptive labeling and advertising practices," the entire complaint "sounds in fraud and must meet Rule 9(b)'s heightened pleading standards." *Campen*, 2013 U.S. Dist. LEXIS 47126, at *13; *see also Yumul*, 733 F. Supp. 2d at 1122. Accordingly, Plaintiff must plead actual reliance to support a cognizable misbranding claim under the UCL. *See Pratt v. Whole Food Mkt. Cal., Inc.*, 2015 U.S. Dist. LEXIS 134968, *11 (N.D. Cal. Sept. 30, 2015) ("At this point, it appears settled that a plaintiff must plead actual reliance under each prong of the UCL, including the unlawful prong."); *Romero v. Flowers Bakeries, LLC*, 2015 U.S. Dist. LEXIS 59498, *9 (N.D. Cal. May 6, 2015) (courts in this district have "rejected the notion that 'misbranding' under the 'unlawful' prong of the UCL excuses a plaintiff's obligation to plead fraud with particularity").

Plaintiff alleges that Defendant's Products are misbranded due to three statements: (1) "100% less cholesterol than butter"; (2) "0g Trans Fat"; and (3) "non-hydrogenated." Compl. ¶¶ 77-92, 94. Plaintiff further contends that based on these statements he "believed Nutiva Virgin Coconut Oil was heathy, healthier than butter, and would not raise or otherwise detriment his

12

blood cholesterol levels." *Id.* ¶ 95. According to Plaintiff, absent these alleged misbranding violations, he either "would not have purchased Nutiva Virgin Coconut Oil" or "would have only been willing to pay less." *Id.* ¶¶ 101, 104. The Court finds that these allegations sufficiently plead reliance at the motion to dismiss stage, *see Bishop v. 7-Eleven, Inc.*, No. 14-15986, 2016 WL 3162999, at *1 (9th Cir. June 6, 2016), whether or not Plaintiff knew which particular branding regulations Defendant was allegedly violating, *see Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033, 1046 (N.D. Cal. 2013).

Accordingly, the Court declines to dismiss Plaintiff's UCL, FAL, and CLRA claims for failure to state a claim or failure to plead reliance.[2]

### d. Breach of Warranty Claims

Defendant argues that Plaintiff's claims for breach of express warranty and breach of the implied warranty of merchantability fail because (1) Plaintiff's breach of express warranty is premised upon "highly subjective" "affirmations," as opposed to "specific, measurable assertions," MJOP at 17, and (2) Defendant's Virgin Coconut Oil label "did not fail to conform to any affirmation on the label," *id.* at 18. Plaintiff counters that Defendant's Virgin Coconut Oil label, taken as a whole, warrants that Defendant's Virgin Coconut Oil is healthy. Opp'n to MJP at 16-18.

#### 1. Breach of Express Warranty

"To state a claim for breach of express warranty under California law, a plaintiff must allege (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury." *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1235 (N.D. Cal. 2012) (quoting *Nabors v. Google, Inc.,* 5:10–CV–03897 EJD,

---

[2] In its reply in support of its MJOP, Defendant asserts for the first time that Plaintiff's UCL misbranding claim is preempted by the FDCA, as amended by the NLEA. Dkt. No. 30 at 9-10. The Court will not consider this argument because "[i]t is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers." *Dytch v. Yoon*, No. C-10-02915-MEJ, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011); *see also Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

2011 WL 3861893, at *4 (N.D.Cal. Aug. 30, 2011)). An actionable express warranty "must be specific and unequivocal, and it must be written." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 875 (N.D. Cal. 2015) (internal quotations and citations omitted). "The determination as to whether a particular statement is an expression of opinion or an affirmation of a fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (Ct. App. 1985). As such, "[c]ourts liberally construe sellers' affirmations of quality in favor of injured consumers." *Allen v. Hylands, Inc.*, 2012 U.S. Dist. LEXIS 61606, *8 (C.D. Cal. May 2, 2012).

Plaintiff alleges that Defendant's statements including "Superfood," "Coconut is one of the world's most nourishing foods," "is 'better than butter,'" and "A nutritious substitute in baking" form the basis of Defendant's express warranty. *Id.* ¶ 150. Making all inferences in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately alleged at the pleading stage that the challenged statements constitute an affirmative fact or promise. *See Tsan v. Seventh Generation, Inc,* 2015 U.S. Dist. LEXIS 149042, *19 (N.D. Cal. Nov. 3, 2015); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011). Accordingly, the Court declines to dismiss Plaintiff's breach of express warranty claim at this stage in the action.

### 2. Breach of Implied Warranty of Merchantability

In California, "a warranty that the goods shall be merchantable is implied in a contract for their sale." Cal. Com. Code § 2314. "Merchantability has several meanings, two of which are relevant to the instant case: the product must conform to the promises or affirmations of fact made on the container or label and must be fit for the ordinary purposes for which such goods are used." *Hauter v. Zogarts*, 14 Cal. 3d 104, 117-18 (1975) (internal quotations and citations omitted).

For the reasons described above, Plaintiff adequately alleges that Defendant's Virgin Coconut Oil failed to "conform to the promises or affirmations of fact made on the container or label" in that it is not actually healthy. Accordingly, the Court declines to dismiss Plaintiff's breach of implied warranty of merchantability claim.

14

### e. Statute of Limitations

Defendant moves for judgment that Plaintiff cannot assert claims based on conduct occurring outside of the applicable statute of limitations. Plaintiff admits that his complaint purports to state claims barred by the applicable limitations period, but asserts that "the reference in the [c]omplaint to January 7, 2011 is a typographical error . . . and the correct date is January 7, 2012." Opp'n to MJOP at 2 n. 1.

The statute of limitations for CLRA and FAL claims is three years, and the statute of limitations on UCL and breach of warranty claims is four years. *See Yumul*, 733 F. Supp. 2d at 1130; *see also Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 642 (Cal. Ct. App. 2003).

As pled, Plaintiff's class includes individuals who purchased Defendant's Products up to five years before Plaintiff filed his complaint. *See* Compl. ¶ 109. Accordingly, the Court dismisses Plaintiff's CLRA and FAL claims to the extent that they are based on conduct occurring outside of the three-year statute of limitations and dismisses Plaintiff's UCL and breach of warranty claims to the extent that they are based on conduct occurring outside of the four-year statute of limitations.

### f. Injunctive Relief

Finally, Defendant asserts that Plaintiff lacks Article III standing to seek injunctive relief because he fails to allege a likelihood of future harm. MJOP at 10-11. Plaintiff urges the Court to permit him to seek injunctive relief in recognition of "his substantive right to a marketplace free from fraud." Opp'n to MJOP at 22-25.

To have standing to seek prospective injunctive relief under Article III of the United States Constitution, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation marks omitted). In false advertising cases, "where a plaintiff has no intention of purchasing the product in the future, a majority of district courts have held that the plaintiff has no standing to seek prospective injunctive relief, and some have also held that a plaintiff who is aware of allegedly misleading advertising has no standing to seek prospective injunctive relief." *Davidson v. Kimberly-Clark Corp.*, No. 14-cv-01783-PJH, 2014 WL 7247398, at *4 (N.D. Cal.

Dec. 19, 2014).

Plaintiff does not allege that he intends to purchase Defendant's Virgin Coconut Oil again in the future. To the contrary, Plaintiff alleges that he "would not have purchased Nutiva Virgin Coconut Oil if he knew the product was misbranded pursuant to California and FDA regulations, or that its claims were false and misleading." Compl. ¶ 104. As such, it is entirely implausible that Plaintiff risks being harmed by Defendant's alleged misrepresentations again. *See Gallagher v. Chipotle Mexican Grill, Inc.*, No. 15-CV-03952-HSG, 2016 WL 454083, at *3 (N.D. Cal. Feb. 5, 2016); *Gershman v. Bayer HealthCare LLC*, No. 14-cv-05332-HSG, 2015 WL 2170214, at *8 (N.D. Cal. May 8, 2015). The Court therefore finds that Plaintiff has not alleged "a real and immediate threat" of future injury and does not have standing to seek injunctive relief.[3]

\*   \*   \*

Accordingly, the Court GRANTS IN PART and DENIES IN PART Defendant's motion for judgment on the pleadings. Defendant's motion is GRANTED as follows: (1) Plaintiff's claims for Defendant's Extra Virgin Coconut Oil and Refined Coconut Oil are limited to the theory that these items were misbranded as a matter of law; (2) Plaintiff's claims are dismissed to the extent that they fall outside of the applicable limitations period; and (3) Plaintiff's request for injunctive relief is dismissed for lack of Article III standing. Defendant's motion for judgment on the pleadings is DENIED as to all other issues.

### B. Plaintiff's Motion to Remand

Because Plaintiff anticipated that the Court would hold that he lacks Article III standing to pursue injunctive relief, on March 14, 2016, Plaintiff filed a motion to remand Plaintiff's claims for injunctive relief if not allowed to proceed in this Court. Dkt. No. 19 ("Mot. to Remand").

In his Motion to Remand, Plaintiff asserts that "injunctive relief is an important remedy under California's consumer protection laws," and thus, if the Court concludes that Plaintiff lacks

---

[3] While the Court recognizes that other courts in this district have allowed claims for injunctive relief to proceed under similar circumstances on public policy grounds, the Court respectfully disagrees with those decisions because state policy objectives cannot trump the requirements of Article III. *See Delarosa v. Boiron, Inc.*, No. 10-cv-01569-JST, 2012 WL 8716658, at *3 (C.D. Cal. Dec. 28, 2012) ("To the extent that...other cases purport to create a public-policy exception to the standing requirement, that exception does not square with Article III's mandate.").

16

Article III standing to pursue his claims for injunctive relief, the Court should remand rather than dismiss Plaintiff's injunctive relief claims. *Id.* In opposition, Defendant argues that the Court indisputably possesses CAFA jurisdiction over this action, and thus cannot properly remand Plaintiff's request for injunctive relief. Dkt. No. 29 ("Opp'n to Mot. to Remand").

California district courts have disagreed on whether a federal district court can properly remand the portions of a plaintiff's UCL, FAL, and CLRA claims that seek injunctive relief while retaining jurisdiction over the portions of the claims seeking damages. *Compare Machlan v. Procter & Gamble Co.*, 77 F. Supp. 3d 954 (N.D. Cal. 2015) *with Mezzadri v. Med. Depot, Inc.*, 113 F. Supp. 3d 1061 (S.D. Cal. 2015). After carefully reviewing the parties' arguments and the applicable authorities, the Court holds that it cannot properly remand Plaintiff's request for injunctive relief.

Although Plaintiff frames his request as a motion to remand his claims for injunctive relief, injunctive relief is a remedy, not a separate cause of action. *See Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (citing *McDowell v. Watson,* 59 Cal.App.4th 1155, 1159 (1997)). Thus, Plaintiff really asks this Court to retain jurisdiction over Plaintiff's substantive UCL, FAL, and CLRA claims and "remand a remedy without any accompanying cause of action seeking that remedy." *See Davidson v. Kimberly-Clark Corp.*, No. C 14-1783 PJH, 2015 WL 2357088, at *4 (N.D. Cal. May 15, 2015). The Court declines to grant this request, which would inevitably "produce immense inefficiencies" as the action proceeded simultaneously in both state and federal court. *See id.*; *Cabral v. Supple, LLC*, No. EDCV-12-00085-MWF-OP, 2016 WL 1180143, at *4 (C.D. Cal. Mar. 24, 2016).

The Court's holding is not affected by *Hamilton v. Asbestos Corp.*, 22 Cal. 4th 1127 (2000), upon which Plaintiff relies. *See* Dkt. No. 33. The *Hamilton* court indicated that the California primary rights doctrine, which "bars splitting a single cause of action," might be subject to exceptions when "exceptional circumstances [] justify a departure from the rule to avoid harsh results." *Id.* at 1146. However, Plaintiff's circumstances are not exceptional and "could arise in almost every false advertising action under the UCL as long as the named plaintiff lacks standing to obtain an injunction in federal court." *See Cabral*, 2016 WL 1180143, at *4.

17

1 Accordingly, the Court DENIES Plaintiff's motion to remand his claims for injunctive
2 relief.

### C. Plaintiff's Motion to Strike

Finally, on March 24, 2016, Plaintiff filed a motion to strike affirmative defenses or, in the alternative, for judgment on the pleadings, and for order directing Nutiva to answer the complaint's specific allegations. Dkt. No. 28 ("Mot. to Strike").

In his Motion to Strike, Plaintiff asserts that many of Defendant's defenses are negative rather than affirmative defenses and that all of Defendant's affirmative defenses fail the federal pleading requirements set out in *Twombly* and *Iqbal*. *Id.* at 2-3. Conceding that his Motion to Strike is untimely, in the alternative, Plaintiff urges the Court to construe his motion as a motion for judgment on the pleadings, which can be brought at any time during the proceeding. *Id.* at 4-5. Finally, Plaintiff requests that the Court direct Defendant to replead its answer so that it directly responds to Plaintiff's allegations. *Id.* at 11.

Under Federal Rule of Civil Procedure 12(f), a plaintiff may move to strike portions of a pleading "within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f). As Plaintiff acknowledges, his Motion to Strike, filed more than a month after Defendant served its answer, is untimely. The Court declines to allow Plaintiff to circumvent the Federal Rules of Civil Procedure by construing Plaintiff's untimely Motion to Strike as a motion for judgment on the pleadings, and thus will not exercise its discretion to entertain the motion.

Federal Rule of Civil Procedure 81(c) contemplates a defendant's ability to answer in state court prior to removal. Whether to require repleading once an action is removed "is left to the sound discretion of the district court." *O'Sullivan v. AMN Servs., Inc.*, No. C-12-02125 JCS, 2012 WL 2912061, at *5 (N.D. Cal. July 16, 2012). Plaintiff made the calculated decision to file in state court where the pleading requirements of *Twombly* and *Iqbal* are inapplicable, and Defendant reaped the small, but likely immaterial, benefit of a general denial. As such, the Court declines to require Defendant to replead its answer at this time.

Accordingly, the Court DENIES Plaintiff's Motion to Strike in its entirety.

**IV. CONCLUSION**

The Court GRANTS IN PART and DENIES IN PART Defendant's motion for judgment on the pleadings. Defendant's motion for judgment on the pleadings is GRANTED on the following issues: (1) Plaintiff's claims for Defendant's Extra Virgin Coconut Oil and Refined Coconut Oil are limited to the theory that these items were misbranded as a matter of law; (2) Plaintiff's claims are dismissed to the extent that they fall outside of the applicable limitations period; and (3) Plaintiff's request for injunctive relief is dismissed for lack of Article III standing. Because amendment as to these issues would be futile given the facts Plaintiff already has pled, the Court grants Defendant's motion for judgment on the pleadings as to the aforementioned issues with prejudice. *See Pac. W. Grp., Inc. v. Real Time Sols., Inc.*, 321 F. App'x 566, 569 (9th Cir. 2008). Defendant's motion for judgment on the pleadings is DENIED as to all other issues.

The Court DENIES Plaintiff's motion to remand his claim for injunctive relief if not allowed to proceed in this Court and DENIES Plaintiff's motion to strike affirmative defenses or, in the alternative, for judgment on the pleadings, and for an order directing Defendant to answer the complaint's specific allegations.

The Court sets a case management conference for October 4, 2016, at 9:00 a.m. to discuss scheduling. The parties are directed to meet and confer prior to the hearing and file a joint case management statement by September 30, 2016.

**IT IS SO ORDERED.**

Dated: September 22, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge