**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 206
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

***Counsel for Plaintiff and the Proposed Class***

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON JONES, on behalf of himself, all others similarly situated, and the general public,<br><br>        Plaintiff,<br><br>   v.<br><br>NUTIVA, INC.,<br><br>        Defendant. | Case No: 3:16-cv-00711-HSG<br><br>**NOTICE OF MOTION & MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Fed. R. Civ. P. 56]<br><br>Date:     December 29, 2016<br>Time:    2:00 p.m.<br>Place:   Courtroom 10<br>Judge:  Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

NOTICE OF MOTION ..........................................................................................................1

RELIEF SOUGHT ...............................................................................................................1

MEMORANDUM OF POINTS & AUTHORITIES...........................................................2

     I.      STATEMENT OF ISSUES TO BE DECIDED....................................................2

     II.    INTRODUCTION ...............................................................................................2

     III.   RELEVANT FACTS............................................................................................3

          A.     The Nutiva Extra Virgin Coconut Oil Yellow & Red Labels...................3

          B.     The Nutiva Virgin Coconut Oil "Watercolor" Label...............................3

          C.     The Nutiva Refined Coconut Oil "Watercolor" Label .............................3

          D.     The Nutiva Coconut Oils' Nutritional Profile, Serving Size, & Reference Amount Customarily Consumed ............................................3

     IV.   APPLICABLE LAWS & REGULATIONS .........................................................4

          A.     The Federal Food, Drug, and Cosmetic Act ...........................................4

          B.     Statutory & Regulatory Requirements for Nutrient Content Claims..........................................................................................................4

               1.     General Principles of Nutrient Content Claims............................4

               2.     Regulations Applicable to the Present Controversy......................7

                    a.     21 C.F.R. § 101.13...........................................................7

                    b.     21 C.F.R. § 101.62...........................................................9

           C.     California's Sherman Food, Drug, and Cosmetic Law............................10

i

V.    LEGAL STANDARDS ...................................................................11

      A.    Partial Summary Judgment ...................................................11

      B.    California's Unfair Competition Law .....................................11

      C.    California's False Advertising Law ........................................13

      D.    California's Consumer Legal Remedies Act ...........................13

VI.   ARGUMENT....................................................................................14

      A.    The Nutiva Coconut Oil Labels Are Misbranded .................14

            1.    The Extra Virgin Coconut Oil Label was Misbranded.................14

                  a.    "100% Less Cholesterol Than Butter" ..............................14

                  b.    "Zero Trans Fats" ........................................................17

                  c.    "Non-Hydrogenated"...................................................18

            2.    The Virgin Coconut Oil Label is Misbranded ............................19

            3.    The Refined Coconut Oil Label is Misbranded...........................19

      B.    Because the Nutiva Coconut Oil Labels are Misbranded, Nutiva
            is Liable for Violating the UCL's "Unlawful" Prong............................19

      C.    Because the Nutiva Virgin Coconut Oil Label is Misbranded,
            Nutiva is Liable for Violating the UCL's "Fraudulent" Prong,
            the FAL, and the CLRA in Making the Misbranded Statements...........20

      D.    Because the Misbranded Statements Used on Nutiva's Virgin
            Coconut Oil Are, as a Matter of Law, Material, the CLRA's
            Reliance Element is Satisfied.................................................22

VII.  CONCLUSION .................................................................................23

ii

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Anderson v. Liberty Lobby, Inc.*,
4
    477 U.S. 242 (1986) ................................................................................11

5

*Backus v. Nestle USA, Inc.*,
6
    167 F. Supp. 3d 1068 (N.D. Cal. 2016) ...............................................17

7

*Bishop v. 7-Eleven*, --- Fed. Appx. ----,
8
    2016 WL 3162999 (9th Cir. June 6, 2016) ...........................................21

9

*Brown v. Hain Celestial Group, Inc.*,
10
    2015 WL 3398415 (N.D. Cal. May 26, 2015) ...........................20, 21, 22, 23

11

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
12
    20 Cal. 4th 163 (1999) ..........................................................................11

13

*Chabner v. United Omaha Life Ins. Co.*,
14
    225 F.3d 1042 (9th Cir. 2000) ..............................................................12

15

*Chacanaca v. Quaker Oats Co.*,
16
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...............................................5, 8, 18

17

*Corbett v. Super. Ct.*,
18
    101 Cal. App. 4th 649 (2002) ...............................................................12

19

*Farm Raised Salmon Cases*,
20
    42 Cal. 4th 1077 (2008) ........................................................................10

21

*Freeman v. Arpaio*,
22
    125 F.3d 732 (9th Cir. 1997) ................................................................11

23

*Guido v. L'Oreal, USA, Inc.*,
24
    284 F.R.D. 468 (C.D. Cal. 2012) .........................................................13, 22

25

*Gustavson v. Mars, Inc.*,
26
    2014 WL 2604774 (N.D. Cal. June 10, 2014) .....................................8

27

*Hinojos v. Kohl's Corp.*,
28
    718 F.3d 1098 (9th Cir. 2013) ..............................................................20, 21

iii

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .......................................................................................... 12

*Jordan v. Paul Fin., LLC*,
  745 F. Supp. 2d 1084 (N.D. Cal. 2010) ............................................................... 11

*Kwikset v. Super. Ct.*,
  51 Cal. 4th 310 (2011) .......................................................................................... 21

*Leonhart v. Nature's Path Foods, Inc.*,
  2014 WL 1338161 (N.D. Cal. Mar. 31, 2014) ...................................................... 12

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
  97 Cal. App. 4th 1282 (2002) ............................................................................... 23

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .............................................................................................. 11

*McCrary v. Elations Co.*,
  2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ....................................................... 23

*Plascencia v. Lending 1st Mortg.*,
  259 F.R.D. 437 (N.D. Cal. 2009) .......................................................................... 12

*Rahman v. Mott's LLP*,
  2014 WL 6815779 (N.D. Cal. Dec. 3, 2014) ................................................... 12, 21

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) ......................................................................5, 10, 17

*Rezner v. Bayerishe Hypo-Und Vereinsbank AG*,
  2011 WL 6329854 (N.D. Cal. Nov. 8, 2011) ........................................................ 12

*State Farm v. Super. Ct.*,
  45 Cal. App. 4th 1093 (1996) ............................................................................... 12

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2012) .....................................................................12, 13, 22

*United States v. Dotterweich*,
  320 U.S. 277 (1943) ................................................................................................ 4

iv

*United States v. Watkins*,
   278 F.3d 961 (9th Cir. 2002) ...............................................................................4

*United States v. Woods*,
   335 F.3d 993 (9th Cir. 2003) ...............................................................................5

*Wang v. Massey Chevrolet*,
   97 Cal. App. 4th 856 (2002) ..............................................................................12

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) .............................................................................13

**Statutes**

21 U.S.C. §§ 301 *et seq.* ..........................................................................................4

21 U.S.C. § 321(d) ..................................................................................................4

21 U.S.C. § 321(n) ........................................................................................6, 7, 23

21 U.S.C. § 331(a) ..................................................................................................4

21 U.S.C. § 331(b) ..................................................................................................4

21 U.S.C. § 331(c) ..................................................................................................4

21 U.S.C. § 331(g) ..................................................................................................4

21 U.S.C. § 331(k) ..................................................................................................4

21 U.S.C. § 343(a) ........................................................................................4, 7, 23

21 U.S.C. § 343(r)(1) ...............................................................................................5

21 U.S.C. § 343(r)(1)(A) ....................................................................................5, 23

21 U.S.C. § 343(r)(2)(A) ......................................................................................5, 6

21 U.S.C. § 343(r)(2)(B) .........................................................................................6

21 U.S.C. § 371(a) ............................................................................................. 4, 7

21 U.S.C. § 393(b)(2)(A) ..................................................................................... 4

44 U.S.C. § 1507 ................................................................................................. 5

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ........................................................... 1

Cal. Bus. & Prof. Code § 17200 ......................................................................... 11

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ........................................................... 1

Cal. Bus. & Prof. Code § 17500 ......................................................................... 13

Cal. Civ. Code §§ 1750 *et. seq.* ......................................................................... 1

Cal. Civ. Code § 1770(a) ..................................................................................... 13

Cal. Civ. Code § 1770(a)(16) .............................................................................. 13

Cal. Civ. Code § 1770(a)(5) ................................................................................ 13

Cal. Civ. Code § 1770(a)(7) ................................................................................ 13

Cal. Civ. Code § 1770(a)(9) ................................................................................ 13

Cal. Civ. Code § 1780 ......................................................................................... 13

Cal. Evid. Code § 451(b) ..................................................................................... 5

Cal. Health & Safety Code §§ 109875 *et seq.* ................................................... 10

Cal. Health & Safety Code § 110100(a) .............................................................. 10, 23

Cal. Health & Safety Code § 110670 ................................................................... 10, 23

Cal. Health & Safety Code § 110765 ................................................................... 10, 23

Pub. L. 101-535, 104 Stat. 2353 (1990) .............................................................. 4

*Jones v. Nutiva, Inc.*, No. 16-cv-711-HSG
MOTION FOR PARTIAL SUMMARY JUDGMENT

**Rules**

Fed. R. Civ. P. 56(a)..................................................................................................1, 11

N.D. Cal. Civ. L.R. 56......................................................................................................1

N.D. Cal. Civ. L.R. 7........................................................................................................1

**Regulations**

21 C.F.R. § 101.12(b)..................................................................................................4, 14

21 C.F.R. § 101.13(b)......................................................................................4, 7, 17, 18

21 C.F.R. § 101.13(b)(1)..............................................................................................7, 17

21 C.F.R. § 101.13(b)(2)....................................................................................................7

21 C.F.R. § 101.13(b)(2)(i)..............................................................................................18

21 C.F.R. § 101.13(d)........................................................................................................9

21 C.F.R. § 101.13(h)......................................................................................................19

21 C.F.R. § 101.13(h)(1)..............................................................................8, 16, 18, 19

21 C.F.R. § 101.13(h)(4)(ii)..............................................................................16, 18, 19

21 C.F.R. § 101.13(i)(1)..............................................................................................17, 18

21 C.F.R. § 101.13(i)(3)....................................................................................................17

21 C.F.R. §§ 101.54-101.69..............................................................................................7

21 C.F.R. § 101.62 ..................................................................................................9, 10, 23

21 C.F.R. § 101.62(a)............................................................................................9, 14, 19

21 C.F.R. § 101.62(a)(1)..................................................................................................14

*Jones v. Nutiva, Inc.*, No. 16-cv-711-HSG
MOTION FOR PARTIAL SUMMARY JUDGMENT

21 C.F.R. § 101.62(a)(2) ...................................................................................................14

21 C.F.R. §§ 101.62(b)-(d)................................................................................................10

21 C.F.R. § 101.62(d).........................................................................................................10

21 C.F.R. § 101.62(d)(4)(ii) ..............................................................................................14

21 C.F.R. § 101.62(d)(4)(ii)(A) .........................................................................................14

21 C.F.R. § 101.62(d)(4)(ii)(B).....................................................................................15, 16

21 C.F.R. § 101.62(d)(4)(ii)(C).........................................................................................15

21 C.F.R. § 101.65(a)(2) ...................................................................................................18

21 C.F.R. § 101.9 ..............................................................................................................18

**Other Authorities**

56 Fed. Reg. 60421 (Nov. 27, 1991).............................................................................passim

56 Fed. Reg. 60478 (Nov. 27, 1991)...................................................................................15

58 Fed. Reg. 2302 (Jan. 6, 1993) ...........................................................................7, 15, 16

68 Fed. Reg. 41,434 (July 11, 2003)...................................................................................10

**<u>NOTICE OF MOTION</u>**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on December 29, 2016, at 2:00 p.m., in Courtroom 10, 19th Floor, 450 Golden Gate Avenue, San Francisco, or as soon thereafter as may be heard, plaintiff Preston Jones will, and hereby does move the Court, the Honorable Haywood S. Gilliam, Jr. presiding, for an Order, pursuant to Fed. R. Civ. P. 56(a) and N.D. Cal. Civ. L.R. 7 and 56, for partial summary judgment. This Motion is based on this Notice of Motion, the below Memorandum of Points & Authorities, the concurrently-filed Declaration of Jack Fitzgerald ("Fitzgerald Declaration") and all exhibits thereto, the concurrently-filed Request for Judicial Notice ("RJN"), all pleadings and proceedings had thus far, and all written and oral argument offered in support of the Motion.

**<u>RELIEF SOUGHT</u>**

Plaintiff seeks partial summary judgment finding Nutiva liable for violating the "unlawful" prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), with respect to the labeling of its Extra Virgin, Virgin, and Refined Coconut Oils with the following phrases: (a) "100% Less Cholesterol Than Butter," (b) "Zero Trans Fats," (c) "0g Trans Fat," and (d) "Non-Hydrogenated" (the "Misbranded Statements").

Plaintiff further seeks partial summary judgment finding Nutiva liable for violating the UCL's "fraudulent" prong, the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"), and the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et. seq.* ("CLRA"), with respect to the labeling of its Virgin Coconut Oil with the Misbranded Statements, including a finding that a classwide presumption of reliance arises with respect to plaintiff's claim under the CLRA.[1]

---

[1] Plaintiff's motion for partial summary judgment under the UCL's "fraudulent" prong, FAL, and CLRA are limited to Nutiva's Virgin Coconut Oil as a result of the Court's holding that plaintiff may only represent purchasers of Nutiva's Extra Virgin and Refined Coconut Oils relating to his misbranding claims brought under the UCL's "unlawful" prong. (*See* Dkt. No. 55 at 8-9.)

## MEMORANDUM OF POINTS & AUTHORITIES

## I.   STATEMENT OF ISSUES TO BE DECIDED

• Whether plaintiff is entitled to partial summary judgment finding Nutiva liable for violating the UCL's "unlawful" prong because the labels of its Extra Virgin, Virgin, and Refined Coconut Oils bore statements that violated state and federal food labeling laws and regulations.

• Whether plaintiff is entitled to partial summary judgment finding Nutiva liable for violating the UCL's "fraudulent" prong, the FAL, and the CLRA with respect to statements on the label of its Virgin Coconut Oil that violated state and federal food labeling laws and regulations.

• Whether plaintiff is entitled to partial summary judgment finding that a classwide presumption of reliance arises with respect to plaintiff's claim under the CLRA.

## II.   INTRODUCTION

This is a putative class action that asserts claims under California's UCL on behalf of individuals who, on or after January 7, 2012, purchased Nutiva Extra Virgin, Virgin, or Refined Coconut Oils; and under California's UCL, FAL, and CLRA for individuals who purchased Nutiva Virgin Coconut Oil after January 7, 2012 (UCL) or 2013 (FAL and CLRA).

Plaintiff seeks partial summary judgment finding Nutiva liable for violating the UCL's "unlawful" prong with respect to nutrient content claims on Nutiva's Extra Virgin, Virgin, and Refined Coconut Oils that violate federal and state food labeling laws and regulations, and under the UCL's "fraudulent" prong, the FAL, and the CLRA with respect to those statements as used on Nutiva's Virgin Coconut Oil.

Partial summary judgment is proper because, on incontrovertible facts, the labels violated applicable laws and regulations, and such violations are—as a matter of law—both material and likely to deceive. Thus, not only do the statements violate the UCL's "unlawful" prong, but they also violate the UCL's "fraudulent" prong, the FAL, and the CLRA. Moreover, because such statements are material, a classwide presumption of reliance arises with respect to plaintiff's CLRA claim.

2

III.    RELEVANT FACTS

    A.    The Nutiva Extra Virgin Coconut Oil Yellow & Red Labels

From January 2012 to approximately March 2013, Nutiva sold Extra Virgin Coconut Oil in 54-, 29-, and 15-fluid ounce plastic jars bearing a predominantly yellow label, and 23- and 15-fluid ounce glass jars bearing a predominantly red label. During the entire time period, both the Extra Virgin Coconut Oil yellow and red labels made the following statements: "100% Less Cholesterol Than Butter," "Zero Trans Fats," and "Non-Hydrogenated." (*See* Fitzgerald Decl. Exs. 1-5 (exemplar labels); *id.* Ex. 15, Kaplan Dep. Tr. 192:4-25.)

    B.    The Nutiva Virgin Coconut Oil "Watercolor" Label

From approximately March 2013 through the present, Nutiva sold Virgin Coconut Oil in 78-, 54- 29-, 23-, and 15-fluid ounce jars (although in approximately September 2014, the 15-fluid ounce jars were replaced with 14-fluid ounce jars) bearing a beige "watercolor" label, referring to the prominent vignette of a half-coconut on the principal display panel. During the entire time period, the Virgin Coconut Oil watercolor label made the following statements: "100% Less Cholesterol Than Butter," "Non-Hydrogenated," and either "Zero Trans Fats" (for a short while), or "0g Trans Fat." (*See id.* Ex. 6-11 (exemplar labels); *id.* Ex. 15, Kaplan Dep. Tr. at 133:24-134:8, 177:10-180:13, 203:18-204:19.)

    C.    The Nutiva Refined Coconut Oil "Watercolor" Label

From approximately September 2014 through the present, Nutiva sold Refined Coconut Oil in 54-, 23-, and 15-fluid ounce jars bearing a beige "watercolor" label. During the entire time period, the Refined Coconut Oil watercolor label stated, "0g Trans Fat," as well as, for a short while, "zero trans fat." (*See id.* Ex. 12-14 (exemplar labels).)

    D.    The Nutiva Coconut Oils' Nutritional Profile, Serving Size, & Reference Amount Customarily Consumed

Each of the Nutiva Coconut Oils have always had the same nutritional profile. As reflected in each's Nutrition Facts box, the serving size for each is 1 Tablespoon, alternatively expressed in grams, as "1 Tbsp (14g)" for the Extra Virgin and Virgin Coconut Oils, or

3

milliliters, as "1 Tbsp (15mL)," for the Refined coconut oil.[2] (*See id.* Exs. 1-14.) One serving of each contains 14 grams of total fat, of which 13 grams is saturated fat. (*See id.*)

## IV.   APPLICABLE LAWS & REGULATIONS

### A.   The Federal Food, Drug, and Cosmetic Act

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ("FDCA") empowers the Food and Drug Administration ("FDA") to protect public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," *id.* § 393(b)(2)(A). The Act prohibits the distribution and sale of misbranded foods. *Id.* §§ 331(a)-(c), (g), (k).

Foods are misbranded when they meet one of the definitions for misbranding under § 343, including where their labels are "false or misleading in any particular," *id.* § 343(a), or where their labels make nutrient content claims—statements that expressly or by implication characterize the level of a nutrient in a food—in violation of the Act and its implementing regulations, *see id.* § 343(r); 21 C.F.R. § 101.13(b). "An article may be misbranded . . . 'without any conscious fraud at all,'" *United States v. Watkins*, 278 F.3d 961, 964 (9th Cir. 2002) (quoting *United States v. Dotterweich*, 320 U.S. 277, 281 (1943)).

The FDCA authorizes the Secretary of the Department of Health and Human Services to promulgate regulations implementing the Act's statutory provisions. 21 U.S.C. §§ 321(d) (definition of "Secretary"), 371(a) ("The authority to promulgate regulations for the efficient enforcement of this chapter . . . is vested in the Secretary.").

### B.   Statutory & Regulatory Requirements for Nutrient Content Claims

#### 1.   General Principles of Nutrient Content Claims

In 1990, Congress amended the FDCA by enacting the Nutrition Labeling and Education Act of 1990, Pub. L. 101-535, 104 Stat. 2353 (1990) ("NLEA"), which

---

[2] One Tablespoon is the Reference Amount Customarily Consumed ("RACC") for Oils and Fats, which can be alternatively expressed "1 tbsp (_g)," or "1 tbsp (15 mL)." 21 C.F.R. § 101.12(b) (RACC for "Fats and Oils: Butter, margarine, oil, shortening"), depending on whether the product is in a solid or liquid state. Coconut oil transitions between solid and liquid states at around 76° Fahrenheit and therefore can be expressed in terms of mass or volume.

"strengthen[ed] the Secretary's food labeling initiative . . . by defining the circumstances under which claims may be made about the nutrients in foods." (Fitzgerald Decl. Ex. 19, 56 Fed. Reg. 60421, 60422 (Nov. 27, 1991).[3]) Among other provisions, the NLEA "added section 403(r)(1)(A) to the act," *i.e.*, 21 U.S.C. § 343(r)(1)(A), which:

> states that a food is misbranded if it bears a claim in its label or labeling that either expressly or implicitly characterizes the level of any nutrient of the type required to be declared as part of the nutrition labeling, unless such claim has been specifically defined (or otherwise exempted) by regulation.

56 Fed. Reg. at 60422. Thus, "the general rule is that 'nutrient content claims' are not permitted on food labels." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015).

Specifically, under § 343(r)(1):

> A food shall be deemed to be misbranded [ . . . ] if it is a food intended for human consumption which is offered for sale and for which a claim is made in the label or labeling of the food which expressly or by implication[ ] (A) characterizes the level of any nutrient which is of the type required . . . . to be in the label or labeling of the food unless the claim is made in accordance with subparagraph (2)[.]

21 U.S.C. § 343(r)(1); *see generally Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1117 (N.D. Cal. 2010) (discussing § 343(r) and its implementing regulations).

Subparagraph 2 of § 343(r) prescribes the limited conditions under which nutrient content claims may be made. For example, except under certain circumstances not relevant to the present case, "a claim described in subparagraph (1)(A)"—that is, a nutrient content claim—"(i) may be made only if the characterization of the level made in the claim uses terms which are defined in regulations of the Secretary," 21 U.S.C. § 343(r)(2)(A). Further, such a claim:

> (ii) may not state the absence of a nutrient unless[] (I) the nutrient is usually present in the food for in a food which substitutes for the food as defined by

---

[3] The Federal Register Act provides that "[t]he contents of the Federal Register shall be judicially noticed," 44 U.S.C. § 1507; *see also United States v. Woods*, 335 F.3d 993, 1001 (9th Cir. 2003); Cal. Evid. Code § 451(b) ( "Judicial notice shall be taken of . . . [a]ny matter made subject of judicial notice by . . . Section 1507 of Title 44 of the United States Code.").

the Secretary by regulation, or (II) the Secretary by regulation permits such a statement on the basis of a finding that such a statement would assist consumers in maintaining healthy dietary practices and the statement discloses that the nutrient is not usually present in the food[.]

*Id.*

Even more specifically, a nutrient content claim "(iii) may not be made with respect to the level of cholesterol in the food if the food contains, as determined by the Secretary by regulation, fat or saturated fat in an amount which increases to persons in the general population the risk of disease or a health related condition which is diet related unless" certain additional conditions are met, including that "(II) the label or labeling of the food discloses the level of such fat or saturated fat in immediate proximity to such claim with appropriate prominence . . . ." *Id.*; *compare id.* § 343(r)(2)(B).

In addition, nutrient content claims "(vi) may not be made if the Secretary by regulation prohibits the claim because the claim is misleading in light of the level of another nutrient in the food." *Id.* § 343(r)(2)(A); *c.f. id.* § 321(n) (

> [I]n determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article to which the labeling or advertising relates under the conditions of use prescribed in the labeling or advertising thereof or under such conditions of use as are customary or usual.)

In response to the NLEA, the FDA, by delegation of the Secretary, proposed "general principles and procedures to govern the use of nutrient content claims." 56 Fed. Reg. at 60422. In its notice of proposed rulemaking, the FDA explained that its authority to promulgate regulations derives from various sections of the FDCA that:

> authorize the agency to adopt regulations that prohibit labeling that: (1) Is false or misleading in that it fails to reveal material facts with respect to consequences that may result from use of the food and (2) uses terms to characterize the level of any nutrient in a food that have not been defined by regulation by FDA.

6

*Id.* at 60423 (citing 21 U.S.C. §§ 321(n), 343(a), 343(r), 371(a)). Thus, one of the FDA's primary purposes in implementing nutrient content claim regulations was "[t]o ensure that consumers are not misled and are given reliable information." *Id.*; *see also* 58 Fed. Reg. 2302, 2302 (Jan. 6, 1993)[4] ("basic objectives" of the NLEA include "assist[ing] consumers in selecting foods that can lead to healthier diets," and "eliminat[ing] consumer confusion by establishing definitions for nutrient content claims that are consistent with the terms defined by the Secretary").

### 2.    Regulations Applicable to the Present Controversy

Regulations implementing the FDCA appear in part 101 of title 21 of the Code of Federal Regulations. Section 101.13 sets out the "general principles" and requirements governing nutrient content claims, while Subpart D prescribes provides additional requirements for specific types of nutrient content claims, which are set forth in 21 C.F.R. §§ 101.54-101.69.

### a.    21 C.F.R. § 101.13

Nutrient content claims can be express or implied. An express nutrient content claim is "any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories,'" while an implied nutrient content claim, *inter alia*, "[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran')," *Id.* §§ 101.13(b)(1)-(2). Any claim:

> that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under 101.9 or 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D of this part . . . .

*Id.* § 101.13(b). Thus, All nutrient content claims are prohibited, unless they comply with the requirements of § 101.13 and any applicable provisions of Subpart D.

---

[4] Attached to the Fitzgerald Declaration as Exhibit 20.

Among the provisions of § 101.13 that a food manufacturer must comply with to make a nutrient content claim is § 101.13(h)(1), which requires a mandatory disclosure statement when a food label bears a nutrient content claim and exceeds the disclosure levels for either total fat, saturated fat, cholesterol, or sodium. Specifically, § 101.13(h)(1) provides that:

> If a food . . . contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less or 2 tablespoons or less, per 50 g . . . then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for ___ content" with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

*Id.* § 101.13(h)(1); *see also* 56 Fed. Reg. at 60425 (

> Section 403(r)(2)(B)(ii) of the act states that if a food that bears a nutrient content claim "contains a nutrient at a level which increases to persons in the general population the risk of a disease or health-related condition which is diet related, taking into account the significance of the food in the total daily diet, the required referral statement shall also identify such nutrient." FDA is referring to this level as the "disclosure level.").

Further:

> It is important to note how disqualifying claims work. A disqualifying level of, say, saturated fat is four grams per "reference amount customarily consumed." 21 C.F.R. § 101.13(h)(1). If this level is exceeded, a food purveyor is *prohibited* from making an unqualified claim touting the health benefits of another nutrient in the food. This is because the Agency has reasoned that the beneficent claim, standing alone, would be misleading.

*Chacanaca*, 752 F. Supp. at 1122; *see generally Gustavson v. Mars, Inc.*, 2014 WL 2604774, at *11 (N.D. Cal. June 10, 2014) (Discussing § 101.13(h) and noting that "the FDA has already spoken as to at least one of the reasons why Defendants' product labels are allegedly misleading—namely, Defendants' failure to accompany their front-of-package calorie

statements with a disclosure directing consumers to consult the nutrition information panel for information about fat and/or saturated fat.").

### b.     21 C.F.R. § 101.62

Section 101.62 is the provision of Subpart D that governs "Nutrient content claims for fat, fatty acid, and cholesterol content of foods." *See* 21 C.F.R. § 101.62. The section first sets forth general requirements for making such claims on food labels. *Id.* § 101.62(a). Under this provision, such claims "may only be made . . . if," as is relevant here, "(1) The claim uses one of the terms defined in this section in accordance with the definition for the term; [and] (2) The claim is made in accordance with the general requirements for nutrient content claims in 101.13[.]" *Id.*

Section 101.62(d) governs "Cholesterol content claims," and provides, relevant to Nutiva's "100% Less Cholesterol Than Butter" labeling claim, that:

> (4)     The term[] . . . "less cholesterol[]" . . . may be used on the label or in labeling of foods or foods that substitute for those foods as specified in 101.13(d)[5] . . . provided that:
>
> [ . . . ]
>
> (ii)     For foods that contain more than 13 g of total fat per reference amount customarily consumed, per labeled serving, or per 50 g if the reference amount customarily consumed is 30 g or less or 2 tablespoons or less . . . :
>
> > (A)     The food has been specifically formulated, altered, or processed to reduce its cholesterol by 25 percent or more from the reference food it resembles as defined in 101.13(j)(1) and for which it substitutes as specified in 101.13(d) that has a significant (i.e., 5 percent or more of a national or regional market) market share;

---

[5] "A 'substitute' food is one that may be used interchangeably with another food that it resembles, i.e., that it is organoleptically, physically, and functionally (including shelf life) similar to, and that it is not nutritionally inferior to unless it is labeled as an 'imitation.'" 21 C.F.R. § 101.13(d).

(B)     The food contains 2 g or less of saturated fatty acids per reference amount customarily consumed;

(C)     The label or labeling discloses the level of total fat in a serving (as declared on the label) of the food. Such disclosure shall appear in immediate proximity to such claim preceding any disclosure statement required under 101.13(h) in type that shall be no less than one-half the size of the type used for such claim.

21 C.F.R. § 101.62(d).

While § 101.62 provides definitions for fat content, fatty acid content, and cholesterol content claims, *see* 21 C.F.R. §§ 101.62(b)-(d), it does *not* authorize *any* nutrient content claim regarding artificial trans fat. *See generally id.* § 101.62; *Reid*, 780 F.3d at 960 (

Outside the label, claimants may make nutrient content claims such as "fat free," "no fat," "zero fat," or "negligible source of fat" on labels where the food contains less than 0.5 grams of fat per serving and certain other conditions are met. [21 C.F.R.] § 101.62(b). There is a parallel regulation permitting similar claims about "saturated fat," *see id.* § 101.62(c), but not about "trans fat." The FDA considered authorizing a "trans fat free" claim but decided not to enact the regulation in light of "insufficient scientific information." (citing Food Labeling: Trans Fatty Acids in Nutrition Labeling, Nutrient Content Claims, Health Claims, 68 Fed. Reg. 41,434, 41,464-65 (July 11, 2003))).

## C.     California's Sherman Food, Drug, and Cosmetic Law

California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et seq.* ("Sherman Law"), incorporates the federal food labeling laws and regulations into state law. *See id.* §§ 110100(a)  ("All food labeling regulations . . . adopted pursuant to the federal fact . . . shall be the food labeling regulations in this state."), 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto."), 110765 ("It is unlawful for any person to misbrand any food."); *see also Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086-87, 1090 (2008).

1    V.    **LEGAL STANDARDS**

2         A.    **Partial Summary Judgment**

3         Under Rule 56, "[t]he court shall grant summary judgment if movant shows that there

4    is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

5    of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit

6    under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

7    dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact

8    to decide in favor of the nonmoving party." *Id.*

9         Although in deciding whether a dispute is genuine, the court must view the inferences

10   reasonably drawn from the record in light most favorable to the nonmoving party, *Matsushita*

11   *Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "may not

12   weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732,

13   735 (9th Cir. 1997), to show a genuine dispute the nonmoving party "must do more than

14   simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec.*

15   *Indus. Co., Ltd.*, 475 U.S. at 586. As a result, "[i]f the evidence [of a dispute] is merely

16   colorable, or is not significantly probative, summary judgment may be granted," *Anderson*,

17   477 U.S. at 249 (internal citations omitted).

18        Where there is no genuine dispute of material fact as to only a single claim or defense,

19   or as to part of a claim or defense, partial summary judgment is proper. Fed. R. Civ. P. 56(a).

20        B.    **California's Unfair Competition Law**

21        California's Unfair Competition Law prohibits "any unlawful, unfair or fraudulent

22   business act or practice," *see* Cal. Bus. & Prof. Code § 17200.

23        The UCL's "unlawful" prong "incorporates other laws to make them actionable."

24   *Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1098 (N.D. Cal. 2010); *see also Cel-Tech*

25   *Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("By

26   proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws

27   and treats them as unlawful practices that the unfair competition law makes independently

28   actionable." (internal quotations and citations omitted)). Thus, "violation of almost any law

11

1   may serve as a basis for a UCL claim." *Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437,

2   448 (N.D. Cal. 2009) (citing *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048

3   (9th Cir. 2000)). This includes laws, like the FDCA, that do not provide for a private right of

4   action. *See Rezner v. Bayerishe Hypo-Und Vereinsbank AG*, 2011 WL 6329854, at *5 (N.D.

5   Cal. Nov. 8, 2011) ("California courts have consistently held that where a business act or

6   practice violates any law, that violation is actionable under the UCL, regardless of whether

7   the predicate law itself contains a private right of action.").

8        Accordingly, violations of the FDCA and its implementing regulations, as well as

9   violations of California's parallel Sherman Law, are predicate acts under the UCL's

10  "unlawful" prong. *See*, *e.g.*, *Rahman v. Mott's LLP*, 2014 WL 6815779, at *7 (N.D. Cal. Dec.

11  3, 2014) ("Plaintiff has made a prima facie showing that the 'No Sugar Added' statement

12  constitutes a violation of California's Sherman Law, and is thus independently actionable

13  under the unlawful prong of the UCL.").

14       Establishing liability under the UCL's "fraudulent" prong "requires a showing [that]

15  members of the public are likely to be deceived." *Leonhart v. Nature's Path Foods, Inc.*, 2014

16  WL 1338161, at *3 (N.D. Cal. Mar. 31, 2014) (quoting *Wang v. Massey Chevrolet*, 97 Cal.

17  App. 4th 856, 871 (2002)). "[I]n service of the statute's larger purpose of protecting the

18  general public against unscrupulous business practices," the UCL's "fraudulent" prong "has

19  been understood to be distinct from common law fraud." *In re Tobacco II Cases*, 46 Cal. 4th

20  298, 312 (2009). Thus, if plaintiff demonstrates a representation was likely to deceive, relief

21  under the UCL "is available without individualized proof of deception, reliance, and injury,"

22  *Corbett v. Super. Ct.*, 101 Cal. App. 4th 649, 672 (2002). This means that "a section 17200

23  violation . . . can be shown even if no one was actually deceived, relied upon the fraudulent

24  practice, or sustained any damage." *State Farm v. Super. Ct.*, 45 Cal. App. 4th 1093, 1105

25  (1996)); *c.f. Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021-22 (9th Cir. 2012),

26  *abrogated on other grounds by Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

27

28

### C.   California's False Advertising Law

Similar to the UCL's "fraudulent" prong, the FAL prohibits "any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. Both statutes "prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public,'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quotation omitted). Like the UCL, neither reliance nor injury are elements of an FAL claim. *See Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 482 (C.D. Cal. 2012).

### D.   California's Consumer Legal Remedies Act

"California's CLRA prohibits 'unfair methods of competition and unfair or deceptive acts or practices.'" *Stearns*, 655 F.3d at 1022 (quoting Cal. Civ. Code § 1770(a)). The statute "allows suits by a 'consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared unlawful,'" *id.* (quoting Cal. Civ. Code § 1780).

The CLRA prohibits certain enumerated acts, including "representing that goods have characteristics, uses, or benefits which they do not have," Cal. Civ. Code § 1770(a)(5), "representing that goods are of a particular standard, quality, or grade if they are of another," *id.* § 1770(a)(7), "advertising goods with intent not to sell them as advertised," *id.* § 1770(a)(9), and "representing the subject of a transaction has been supplied in accordance with a previous representation when it has not," *id.* § 1770(a)(16). (*Compare* Compl. ¶ 143.)

Although, unlike the UCL and FAL, "the CLRA requires each class member to have an actual injury caused by the unlawful practice[,] . . . . '[c]ausation, on a class-wide basis, may be established by *materiality*.'" *Stearns*, 655 F.3d at 1022 (quotation omitted).

13

1    **VI.    ARGUMENT**

2        **A.    The Nutiva Coconut Oil Labels Are Misbranded**

3            **1.    The Extra Virgin Coconut Oil Label was Misbranded**

4                **a.    "100% Less Cholesterol Than Butter"**

5        Nutiva's statement on the label of its Extra Virgin Coconut Oil, "100% Less

6    Cholesterol Than Butter," violates 21 C.F.R. § 101.62(a) because it is "[a] claim about the

7    level of . . . cholesterol in a food," but does not "use[] one of the terms defined in this section

8    in accordance with the definition for that term," *id.* § 101.62(a)(1), and is not "made in

9    accordance with the general requirements for nutrition content claims in 101.13," *id.* §

10   101.62(a)(2).

11       Nutiva's Extra Virgin Coconut Oil violates § 101.62(a) because it does not satisfy the

12   requirements of § 101.62(d)(4)(ii) for making a "less cholesterol" claim.[6] Under §

13   101.62(d)(4)(ii), a food cannot make a "less cholesterol" claim unless it satisfies several

14   criteria. Nutiva's Extra Virgin Coconut Oil, however, fails to satisfy at least three of these

15   criteria.

16       First, to make a "less cholesterol" claim, the food must have "been specifically

17   formulated, altered, or processed to reduce its cholesterol by 25 percent or more from the

18   reference food it resembles," *id.* § 101.62(d)(4)(ii)(A). Like all plants, coconuts are naturally

19   cholesterol free. (*See* RJN (citing Fitzgerald Decl. Ex. 16).) Thus, Nutiva's Extra Virgin

20   Coconut Oil has not been "formulated, altered, or processed" to reduce cholesterol, as

21   required.

22

23   ─────────────────

24   [6] This section applies because Nutiva's Extra Virgin Coconut Oil "contain[s] more than 13 g
     of total fat per [RACC], per labeled serving, or per 50 g," since "the [RACC] is 30 g or less
25   or 2 tablespoons or less." Specifically, the RACC for Nutiva's Extra Virgin Coconut Oil is 1
     tablespoon, equivalent to 14 grams. *See* 21 C.F.R. § 101.12(b); Fitzgerald Decl. Exs. 1-5.
26   This amount contains 14 grams of total fat, which is "more than 13 g of total fat per [RACC],"
     *id.* § 101.62(d)(4)(ii). Similarly, § 101.62(d)(4)(ii) applies because Nutiva Extra Virgin
27   Coconut Oil contained 14 grams of total fat "per labeled serving," and 50 grams of total fat
     per 50 grams.
28

14

Second, to make a "less cholesterol" claim, the food must "contain[] 2 g or less of saturated fatty acids per [RACC]," *id.* § 101.62(d)(4)(ii)(B). This is because "it would be misleading for a food that contains significant amounts of saturated fatty acids to make claims regarding cholesterol content and, thereby, to encourage consumers to buy the product for the purpose of reducing the risk of heart disease." (Fitzgerald Decl. Ex. 21, 56 Fed. Reg. 60478, 60495 (Nov. 27, 1991).[7]) Nutiva's Extra Virgin Coconut Oil contained 13g of saturated fatty acids per RACC (1 tbsp) (*see* Fitzgerald Decl. Exs. 1-5), which is not "2 g or less of saturated fatty acids per [RACC]."

Third, the food's label must "disclose[] the level of total fat in a serving (as declared on the label) of the food," and "[s]uch disclosure shall appear in immediate proximity to such claim preceding any disclosure statement required under 101.13(h)," *id.* § 101.62(d)(4)(ii)(C). Nutiva's Extra Virgin Coconut Oil label did not bear the mandatory disclosure.

In addition to violating § 101.62(a)(1) because the statement "100% Less Cholesterol Than Butter" is not "use[d] . . . in accordance with the definition for that term" set forth in §

---

[7] *See also* 58 Fed. Reg. at 2333-34 (

> The agency is not persuaded that the saturated fat threshold should be eliminated or changed. FDA finds that there is general scientific agreement on the relationship between saturated fat and cholesterol and serum cholesterol levels. In the general principles proposal (56 FR 60421 at 60426), the agency noted that under section 403(r)(2)(A)(vi) of the act, it can by regulation prohibit a nutrient content claim if the claim is misleading in light of the level of another nutrient in the food. Further, FDA stated that it has tentatively made such a finding with regard to cholesterol claims and the presence of saturated fat, as fully discussed in the fat/cholesterol proposal (56 FR 60478 at 60495). . . . FDA continues to believe that to ensure that cholesterol claims do not mislead consumers it is necessary to permit their use only when the foods also contain levels of saturated fat that are below a specified threshold level. Accordingly, the agency is denying the requests to eliminate the threshold. This decision applies to "cholesterol free," "low cholesterol," and comparative cholesterol claims.).

101.62(d)(4), Nutiva's use of the statement on its Extra Virgin Coconut Oil violated §
101.62(a)(2) because the claim was not "made in accordance with the general requirements
for nutrient content claims in 101.13."

Specifically, Nutiva's Extra Virgin Coconut Oil label violated § 101.13(h)(1), which
requires that a food "contain[ing] more than 13.0 g of fat, [or] 4.0 g of saturated fat . . . per
[RACC], per labeled serving, or" per 50 g, if the RACC is "30 g or less or 2 tablespoons or
less . . . must bear a statement disclosing that the nutrient exceeding the specified level is
present in the food as follows: 'See nutrition information for __ content' with the blank filled
in with the identity of the nutrient exceeding the specified level . . . ." 21 C.F.R. §
101.13(h)(1). This mandatory disclosure must "be immediately adjacent to the nutrient
content claim," *id.* § 101.13(h)(4)(ii).

Nutiva's Extra Virgin Coconut Oil exceeds the disclosure levels, containing both
"more than 13.0 g of fat" and "more than . . . 4.0 g of saturated fat" per RACC, labeled
serving, and 50g. Accordingly, to make the nutrient content claim, "100% Less Cholesterol
Than Butter," Nutiva must have included, immediately adjacent to the claim, the disclosure
statement, "See nutrition information for fat and saturated fat content." *See id.* §§
101.13(h)(1), (4)(ii).[8] The label of Nutiva's Extra Virgin Coconut Oil, however, never bore
the disclosure statement. (*See* Fitzgerald Decl. Exs. 1-5.)

---

[8] The *absolute prohibition* of beneficial claims about the cholesterol content for foods
containing more than 2 grams of saturated fat under § 101.62(d)(4)(ii)(B), however, moots
this requirement of § 101.13. *See* 58 Fed. Reg. at 2334 (

> The agency does not agree that disclosure of the amount of saturated fat in
> proximity to a cholesterol claim is sufficient to prevent consumers from being
> misled. As stated above, consumers expect foods with cholesterol claims to
> affect blood cholesterol levels, and saturated fat is the major dietary
> determinant of blood cholesterol levels. These expectations are not met if
> disclosure of saturated fat is permitted because the saturated fat is still present.
> Therefore, the agency is also denying the request to allow disclosure of
> saturated fat instead of a threshold.)

1

### b.    "Zero Trans Fats"

2     The statement "Zero Trans Fats" on Nutiva's Extra Virgin Coconut Oil is an express

3  nutrient content claim because it "is [a] direct statement about the level . . . of [trans fat] in

4  the food." 21 C.F.R. § 101.13(b)(1); *see also Reid*, 780 F.3d at 962.

5     Section 101.13 provides that a food may contain an express nutrient content claim so

6  long as it "does not in any way implicitly characterize the level of the nutrient in the food and

7  it is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat')," 21 C.F.R.

8  § 101.13(i)(3). Express nutrient content claims that "characterize the level of the nutrient,"

9  *id.*, however, may only be made where defined in Subpart D of title 21 of the Code of Federal

10  Regulations. *See id.* §§ 101.13(b), (i)(1).

11     The FDA has made clear that any statements about the amount of trans fat in a product,

12  other than "0g trans fat per serving," characterize the level of trans fat in the product. (*See*

13  Fitzgerald Decl. Exs. 17-18 (FDA Warning Letters to BestLife International, dated February

14  4, 2008, and to Cytosport, Inc., dated June 29, 2011[9]).) Accordingly, the statement, "Zero

15  Trans Fat" may only be made if defined in Subpart D. *See* 21 C.F.R. §§ 101.13(b), (i)(1). But

16  Subpart D does not define a "Zero Trans Fat" claim, which is indistinguishable from the

17  unauthorized nutrient content claims "No Trans Fat," and "Trans Fat Free," and is therefore

18  an unauthorized nutrient content claim. *See Reid*, 780 F.3d at 962-63 (relying on the FDA

19  Warning Letters attached as Exhibits 17-18 to the Fitzgerald Declaration, in which "the FDA

20  indicated that 'No Trans Fat' is 'an unauthorized nutrient content claim . . . which has not

21  been defined by FDA," and that "'trans fat-free' is an 'unauthorized nutrient content

22  claim.'"); *see also Backus v. Nestle USA, Inc.*, 167 F. Supp. 3d 1068, 1076 (N.D. Cal. 2016)

23

24

25

26

27

28

---

[9] These are the exact letters the Ninth Circuit considered in *Reid* to determine that 21 C.F.R. § 101.13(i)(3) "does not authorize 'No Trans Fat' claims," 780 F.3d at 962. (Fitzgerald Decl. ¶ 20.) As the *Reid* court explained, "[j]udicial notice . . . is unnecessary for materials establishing legal principles governing a case," and thus it is "not necessary . . . to take judicial notice of the warning letters in order to consider them." *Id.* at 962 n.4 (citations omitted).

17

1  (distinguishing "No Trans Fat" claim from "0g trans fat"). Accordingly, Nutiva's use of "Zero

2  Trans Fat" claim violates 21 C.F.R. §§ 101.13(b) and (i)(1).

3        In addition to being an unauthorized and prohibited nutrient content claim, Nutiva's

4  "Zero Trans Fat" statement further violates § 101.13(h) because Nutiva's Extra Virgin

5  Coconut Oil contains both "more than 13.0 g of fat" and "more than . . . 4.0 g of saturated

6  fat" per RACC, labeled serving, and 50g, but fails to make, immediately adjacent to the claim,

7  the mandatory disclosure statement, "See nutrition information for fat and saturated fat

8  content." *See* 21 C.F.R. §§ 101.13(h)(1), (4)(ii).[10]

9        **c.**    **"Non-Hydrogenated"**

10        In oils, trans fat is created through the industrial process of hydrogenation, in which

11  hydrogen atoms are added to normal vegetable oil by heating it in the presence of an ion

12  donor catalyst metal, like nickel. *See Chacanaca*, 752 F. Supp. 2d at 1115. If an oil is not

13  hydrogenated, then by definition it cannot contain artificial trans fat. The term "non-

14  hydrogenated" is therefore an implied nutrient content claim because it "suggests that a

15  nutrient" that must be labeled pursuant to 21 C.F.R. § 101.9—trans fat—"is absent" from the

16  Nutiva Coconut Oils. *See* 21 C.F.R. § 101.13(b)(2)(i).

17        Nutiva's use of the statement "Non-Hydrogenated" on its Extra Virgin Coconut Oil

18  violates § 101.13(h) because the product exceeds the disclosure levels, containing both "more

19  than 13.0 g of fat" and "more than . . . 4.0 g of saturated fat" per RACC, labeled serving, and

20  50g, but fails to make, immediately adjacent to the claim, the disclosure statement, "See

21  nutrition information for fat and saturated fat content." *See* 21 C.F.R. §§ 101.13(h)(1), (4)(ii).

22  Moreover, these violations render the Extra Virgin Coconut Oil in violation of § 101.65(a),

23  which prohibits implied nutrient content claims that are not made "in accordance with the

24  general requirements . . . in 101.13." 21 C.F.R. § 101.65(a)(2).

25

26  [10] Although this regulation provides that the disclosure statement "may be omitted" under

27  certain circumstances, they do not apply to Nutiva's Virgin Coconut Oil label because the
   nutrient content claim, "0g Trans Fat" does not "appear[] on more than one panel of the label,"

28  *id.* § 101.13(h)(4)(ii).

### 2. The Virgin Coconut Oil Label is Misbranded

The statements, "100% Less Cholesterol Than Butter," "Non-Hydrogenated," and "Zero Trans Fats" on Nutiva's Virgin Coconut Oil were and continue to be in violation of 21 C.F.R. §§ 101.13(h) and 101.62(a) for the same reasons discussed above with respect to Nutiva's Extra Virgin Coconut Oil.[11]

In addition, the statement "0g Trans Fat" on the label of Nutiva's Virgin Coconut Oil is in violation of § 101.13(h) because Nutiva's Virgin Coconut Oil contains both "more than 13.0 g of fat" and "more than . . . 4.0 g of saturated fat" per RACC, labeled serving, and 50g, but fails to make, immediately adjacent to the claim, the statement "See nutrition information for fat and saturated fat content." *See* 21 C.F.R. §§ 101.13(h)(1), (4)(ii).

### 3. The Refined Coconut Oil Label is Misbranded

The statements "zero trans fat" and "0g Trans Fat" on Nutiva's Refined Coconut Oil were and are in violation of the applicable regulations for the same reasons set forth above with respect to Nutiva's Extra Virgin Coconut Oil: the claims are either wholly unauthorized, or lack the mandatory disclosure required by 21 C.F.R. § 101.13(h) because the product exceeds the prescribed levels for total and saturated fat.

### B. Because the Nutiva Coconut Oil Labels are Misbranded, Nutiva is Liable for Violating the UCL's "Unlawful" Prong

A claim under the UCL's "unlawful" prong has just one element: the violation of any predicate law or regulation. Plaintiff has demonstrated Nutiva's predicate violations above (which by extension are also violations of California's Sherman Law), and Nutiva cannot genuinely dispute these violations. Accordingly, plaintiff is entitled to partial summary judgment finding Nutiva liable for violating the UCL's "unlawful" prong.

---

[11] When Nutiva modified the "Extra Virgin" yellow and red label to a "Virgin" watercolor label in approximately March 2013, it initially kept the "Zero Trans Fat" statement from the previous label. Nutiva's former Marketing Manager, Liz Kaplan, testified that Nutiva likely modified the statement from "Zero Trans Fat" to "0g Trans Fat" after determining that the former statement is an unauthorized nutrient content claim. (*See* Fitzgerald Decl. Ex. 15, Kaplan Dep. Tr. at 177:10-180:13.)

**C.** **Because the Nutiva Virgin Coconut Oil Label is Misbranded, Nutiva is Liable for Violating the UCL's "Fraudulent" Prong, the FAL, and the CLRA in Making the Misbranded Statements**

Nutiva's regulatory violations demonstrated above "fix[] . . . key conclusions in [plaintiff's] favor," regarding his claim under the UCL's "fraudulent" prong, the FAL, and the CLRA namely "that the mislabeling was 'material,'" and "that the mislabeling was 'likely to deceive reasonable consumers,'" *see Brown v. Hain Celestial Group, Inc.*, 2015 WL 3398415, at *5 (N.D. Cal. May 26, 2015).

In *Brown*, the court granted partial summary judgment in plaintiffs' favor after determining that two lines of Hain Celestial cosmetics labeled as "organic" violated the California Organic Products Act ("COPA"). The *Brown* court held that, as a matter of law, such violations also establish materiality and likelihood of deception. *See id.*, at *5-13. The facts are closely analogous to the present case and demonstrate why the Court should, respectfully, grant plaintiff's motion for partial summary judgment on his UCL "fraudulent" prong, FAL, and CLRA claims inasmuch as they concern the Misbranded Statements used on Nutiva's Virgin Coconut Oil.

In *Brown*:

> the plaintiffs' argument r[an] like this: The California legislature in passing COPA determined that mislabeled organic products are "material" to the ordinary consumer. The court "must defer" to this determination, and this supplies the "materiality" component of the plaintiffs' UCL claims. This legislative determination of materiality compels the further conclusion that, as a matter of law, the label was "likely to deceive" the ordinary (read: reasonable) consumer.

*Id.*, at *5.

In finding "[t]he plaintiffs are correct," *id.*, the *Brown* court relied, first, on the Ninth Circuit's decision in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013), which held that "the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Brown*, 2015 WL 3398415, at *6 (quoting

20

1   *Hinojos*, 718 F.3d at 1107 (citing *Kwikset v. Super. Ct.*, 51 Cal. 4th 310, 333 (2011) ("Here,

2   the Legislature has by statute made clear that whether a product is manufactured in the United

3   States or elsewhere is precisely the sort of consideration reasonable people can and do attach

4   importance to in their purchasing decisions.")); *see also Rahman*, 2014 WL 6815779, at *7

5   (A "showing that the 'No Sugar Added' statement constitutes a violation of California's

6   Sherman Law . . . . gives rise to a presumption of materiality." (citing *Hinojos*, 718 F.3d at

7   1107 (citation omitted)); *c.f. Bishop v. 7-Eleven*, --- Fed. Appx. ----, 2016 WL 3162999 (9th

8   Cir. June 6, 2016) (Reversing dismissal of claims challenging "0g trans fat" and "no

9   cholesterol" representations because plaintiff "adequately alleged that he relied" on the

10  statements, "and that he would not have purchased the chips had 7-Eleven included on the

11  front of the package the 'See nutrition information for fat content' disclosure required by the

12  U.S. Food and Drug Administration," since "California's consumer protection statutes render

13  statements actionable which, although not technically false, have a tendency to mislead

14  consumers because the statements fail to disclose or direct the consumer's attention to other

15  relevant information." (citations omitted)).

16      Given the decisions in *Kwikset* and *Hinojos*, the *Brown* court "conclude[d] that . . . the

17  California legislature's decision in COPA to prohibit the sale, labeling, or representation of

18  products as 'organic,' when they contain less than 70% organic ingredients, establishes as a

19  matter of law that violations of COPA are 'material' misrepresentations under the UCL."

20  2015 WL 3398415, at *7.

21      This court should apply the same reasoning to find that Nutiva's violations of the FDA

22  regulations discussed above and incorporated into California state law through the Sherman

23  Law are material misrepresentations, especially given the plethora of legislative history

24  demonstrating that the most essential purpose of nutrient content claim regulations is to avoid

25  consumer confusion. *See, e.g.*, 56 Fed. Reg. at 60426 (

26      [S]ince many consumers have a limited knowledge and understanding of the
       amounts of nutrients that are recommended for daily consumption, a statement
27     declaring that the product contained a specified amount of a nutrient could be
       misleading. By its very presence, such a statement could give consumers who

28

21

were unfamiliar with the dietary recommendations the false impression that the product would assist them in maintaining healthy dietary practices relative to the amount of the nutrient consumed when it, in fact, would not. Consistent with the statute, FDA is proposing not to permit the use of claims that state the percent or amount of a nutrient in those circumstances in which they would be misleading and thus would misbrand the product.)

Next, the *Brown* court found that, "as a matter of law, COPA violations are 'likely to deceive reasonable consumers.'" *See* 2015 WL 3398415, at *7 (record citation omitted). As the court reasoned, "[t]hat COPA violations are legally deemed material must imply that the attendant organic-content misrepresentations are likely to deceive reasonable consumers. A misrepresentation is by definition prone to deceive." *Id.*

In so holding, the court relied heavily on the Ninth Circuit's decision in *Stearns*, 655 F.3d 1013. *See Brown*, 2015 WL 3398415, at *7-8. For example, the *Brown* court held that the statement in *Stearns*, that "California has created what amounts to a *conclusive presumption* that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury," and "restitution is the remedy," was "not mere *dicta*," but instead "a conclusion that follows from the California Supreme Court's statements about UCL fraud doctrine." *Id.*, at *8 (emphasis in original) (quoting *Stearns*, 655 F.3d at 1021 n.13, and adding emphasis).

### D. Because the Misbranded Statements Used on Nutiva's Virgin Coconut Oil Are, as a Matter of Law, Material, the CLRA's Reliance Element is Satisfied

One final key conclusion flows from Nutiva's violation of food labeling laws and regulations: because such violations are material, a classwide presumption of reliance arises to satisfy that element of plaintiff's CLRA claim. *See Brown*, 2015 WL 3398415, at *11. It is well-established that, "[i]f a misrepresentation is material . . . then under the CLRA, an 'inference of reliance arises as to the class.'" *Id.* (quoting *Stearns*, 655 F.3d at 1022.); *see also Guido*, 284 F.R.D. at 482 ("The causation required by the CLRA does not make plaintiffs' claims unsuitable for class treatment because causation as to each class member is

22

commonly proved more likely than not by materiality." (quoting *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1292 (2002))); *McCrary v. Elations Co.*, 2014 WL 1779243, at *14 (C.D. Cal. Jan. 13, 2014) (Under the CLRA, "[a] presumption, or at least an inference, of reliance arises . . . whenever there is a showing that a misrepresentation was material.").

Accordingly, plaintiff's "argumentative thread is thus complete: From a[n] [FDCA or Sherman Law] violation, there is UCL materiality, and from that materiality there follows an inference of classwide CLRA reliance." *See Brown*, 2015 WL 3398415, at *11.

## VII.   CONCLUSION

For the foregoing reasons, the court should grant partial summary judgment in favor of plaintiff and hold that:

(A)   Nutiva's labels were in violation of 21 C.F.R. §§ 101.13 & 101.62, and thereby in violation of 21 U.S.C. §§ 321(n), 343(a), and 343(r)(1)(A), rendering the products misbranded;

(B)   Nutiva's labels were therefore also in violation of California's Sherman Law, including Cal. Health & Safety Code §§ 110100(a), 110670, and 110765;

(C)   Accordingly, Nutiva violated the UCL's "unlawful" prong;

(D)   Under *Kwikset* and *Hinojos*, these violations were, as a matter of law, both material and likely to deceive the public; therefore

(E)   Nutiva is liable for violating the UCL's "fraudulent" prong, the FAL, and the CLRA with respect to Nutiva's use of the Misbranded Statements on its Virgin Coconut Oil; and

(G)   A classwide presumption of reliance arises with respect to plaintiff's claim under the CLRA with respect to Nutiva's use of the Misbranded Statements on its Virgin Coconut Oil.

Dated: October 18, 2016          Respectfully submitted,

/s/ Jack Fitzgerald

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd. No. 206
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

***Attorneys for Plaintiff and the Proposed Class***