**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 206
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PRESTON JONES and SHIRIN DELALAT, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>NUTIVA, INC.,<br><br>Defendant. | Case No: 3:16-cv-00711-HSG<br><br>CLASS ACTION<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**VIOLATIONS OF CAL. BUS. & PROF. CODE §§17200 *ET SEQ.*; CAL. BUS. & PROF. CODE §§17500 *ET SEQ.*; CAL. CIV. CODE §§ 1750 *ET SEQ.*; AND BREACH OF EXPRESS & IMPLIED WARRANTIES.**<br><br>DEMAND FOR JURY TRIAL |

With defendant's written consent pursuant to Fed. R. Civ. P. 15(a)(2) to file this First Amended Complaint, plaintiffs Preston Jones and Shirin Delalat, on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby sue defendant Nutiva, Inc., and allege the following upon their own knowledge, or where they lack personal knowledge, upon information and belief, including through the investigation of their counsel.

## INTRODUCTION

1.    Nutiva misleadingly markets various coconut oil products as both inherently healthy, and as a healthy alternative to butter and other oils, despite that coconut oil is actually inherently *unhealthy*, and a *less healthy* option to these alternatives. Nutiva's coconut oil labeling and advertising also violates several federal and California state food regulations.

2.    Plaintiffs relied upon Nutiva's misleading and unlawful claims when purchasing Nutiva coconut oil, and were damaged as a result. They bring this action on behalf of themselves, all others similarly situated, and the general public, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), and False Advertising Law, *id.* §§ 17500 *et seq.* ("FAL"). Plaintiffs further allege that Nutiva breached express and implied warranties under state law.

3.    Plaintiffs seek an order, *inter alia*, compelling Nutiva to (a) cease marketing its coconut oil products using the misleading and unlawful tactics complained of herein, (b) destroy all misleading, deceptive, and unlawful materials, (c) conduct a corrective advertising campaign,[1] (d) restore the amounts by which it has been unjustly enriched, and (e) pay restitution, damages, and punitive damages as allowed by law.

---

[1] In L*acey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012), the Ninth Circuit modified the "*Fousyth* rule," stating that "[f]or claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled." This Court, in its September 22, 2016 Order Granting In Part And

## PARTIES

4.      Plaintiff Preston Jones is a resident of Virginia Beach, Virginia.

5.      Plaintiff Shirin Delalat is a resident of San Diego, California.

6.      Defendant Nutiva, Inc. is a California Corporation with its principal place of business at 213 W. Cutting Boulevard, Richmond, California 94804.

## JURISDICTION & VENUE

7.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and because more than two-thirds of the members of the Class reside in states other than the state of which Nutiva is a citizen.

8.      The Court has personal jurisdiction over Nutiva because it resides in California, has significant, systematic, and continuous business operations in California, and has purposely availed itself of the benefits and privileges of conducting business activities within California.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, and Defendant (1) resides in this District, (2) is authorized to conduct business in this District, (3) has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of its products in this District, and (4) is subject to personal jurisdiction in this District.

---

Denying In Part Motion For Judgment On The Pleadings ("Order"), held that "Plaintiff's request for injunctive relief is dismissed for lack of Article III standing. Because amendment as to these issues would be futile given the facts Plaintiff already has pled, the Court grants Defendant's motion for judgment on the pleadings as to the aforementioned issues with prejudice." (Order at 19.) While Mr. Jones' injunctive claims have been dismissed with prejudice and therefore do not require repleading to preserve his right to appeal, Ms. Delalat's injunctive relief claims have not been dismissed with prejudice. With due regard for the Court's Order dismissing Preston Jones injunctive relief claims, plaintiffs respectfully maintain allegations regarding injunctive relief to ensure they both properly preserve their appeal rights regarding their these claims.

# FACTS

## I. Saturated Fat Consumption Increases the Risk of Cardiovascular Heart Disease and Other Morbidity

### A. The Role of Cholesterol in the Human Body

10. Cholesterol is a waxy, fat-like substance found in the body's cell walls. The body uses cholesterol to make hormones, bile acids, vitamin D, and other substances. The body synthesizes all the cholesterol it needs, which circulates in the bloodstream in packages called lipoproteins, of which there are two main kinds—low density lipoproteins, or LDL cholesterol, and high density lipoproteins, or HDL cholesterol.

11. LDL cholesterol is sometimes called "bad" cholesterol because it carries cholesterol to tissues, including the arteries. Most cholesterol in the blood is LDL cholesterol.

12. HDL cholesterol is sometimes called "good" cholesterol because it takes excess cholesterol away from tissues to the liver, where it is removed from the body.

### B. High Total and LDL Blood Cholesterol Levels are Associated with Increased Risk of Morbidity, Including Coronary Heart Disease and Stroke

13. Total and LDL cholesterol blood levels are two of the most important risk factors in predicting coronary heart disease (CHD), with higher total and LDL cholesterol levels associated with increased risk of CHD.[2]

14. High LDL cholesterol levels are dangerous because "[e]levated blood LDL cholesterol increases atherosclerotic lipid accumulation in blood vessels."[3] That is, if there is

---

[2] *See*, *e.g.*, Dr. Dustin Randolph, *Coconut Oil Increases Cardiovascular Disease Risk and Possible Death Due to Heart Attacks and Stroke* (Sept. 19, 2015) ("Heart attack and stroke risk can be largely predicted based on total and LDL cholesterol levels in people" because "as cholesterol levels increase so does one's risk of symptomatic and deadly heart disease."), *available at* http://www.pursueahealthyyou.com/2015/04/coconut-oil-increases-cardiovascular.html.

[3] USDA Center for Nutrition Policy and Promotion, *Dietary Saturated Fat and Cardiovascular Health: A Review of the Evidence*, Nutrition Insight 44 (July 2011)

3

too much cholesterol in the blood, some of the excess may become trapped along artery walls. Built up formations of cholesterol on arteries and blood vessels are called plaque. Plaque narrows vessels and makes them less flexible, a condition called atherosclerosis.

15.     This process can happen to the coronary arteries in the heart and restricts the provision of oxygen and nutrients to the heart, causing chest pain or angina.

16.     When atherosclerosis affects the coronary arteries, the condition is called coronary heart disease.

17.     Cholesterol-rich plaques can also burst, causing a blood clot to form over the plaque, blocking blood flow through arteries, which in turn can cause an often-deadly or debilitating heart attack or stroke.

18.     Thus, "[f]or the health of your heart, lowering your LDL cholesterol is the single most important thing to do."[4]

**C.     Saturated Fat Consumption Causes Increased Total and LDL Blood Cholesterol Levels, Increasing the Risk of CHD and Stroke**

19.     The consumption of saturated fat negatively affects blood cholesterol levels because the body reacts to saturated fat by producing cholesterol. More specifically, saturated fat consumption causes coronary heart disease by, among other things, "increas[ing] total cholesterol and low density lipoprotein (LDL) cholesterol."[5]

---

[hereinafter, "USDA, Review of the Evidence"], *available at* http://www.cnpp.usda.gov/sites/default/files/nutrition_insights_uploads/Insight44.pdf.

[4]     Pritikin Longevity Center, *Is Coconut Oil Bad for You?*, *available at* https://www.pritikin.com/your-health/healthy-living/eating-right/1790-is-coconut-oil-bad-for-you.html.

[5] USDA Review of the Evidence, *supra* n.3.

20.     Moreover, "[t]here is a positive linear trend between total saturated fatty acid intake and total and low density lipoprotein (LDL) cholesterol concentration and increased risk of coronary heart disease (CHD)."[6]

21.     This linear relationship between saturated fat intake and risk of coronary heart disease is well established and accepted in the scientific community.

22.     For example, the Institute of Medicine's Dietary Guidelines Advisory Committee "concluded there is strong evidence that dietary [saturated fatty acids] SFA increase serum total and LDL cholesterol and are associated with increased risk of [cardiovascular disease] CVD."[7]

23.     In addition, "[s]everal hundred studies have been conducted to assess the effect of saturated fatty acids on serum cholesterol concentration. In general, the higher the intake of saturated fatty acids, the higher the serum total and low density lipoprotein (LDL) cholesterol concentrations."[8]

24.     Importantly, there is "no safe level" of saturated fat intake because "any incremental increase in saturated fatty acid intake increases CHD risk."[9]

25.     For this reason, while the Institute of Medicine sets tolerable upper intake levels (UL) for the highest level of daily nutrient intake that is likely to pose no risk of adverse health effects to almost all individuals in the general population, "[a] UL is not set for saturated fatty acids."[10]

---

[6] Institute of Medicine, *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids*, at 422 (2005) [hereinafter "IOM, Dietary Reference Intakes"], *available at* http://www.nap.edu/catalog.php?record_id=10490.

[7] USDA Review of the Evidence, *supra* n.3.

[8] IOM, Dietary Reference Intakes, *supra* n.6, at 481.

[9] *Id.* at 422.

[10] *Id.*

26. In addition, "[t]here is no evidence to indicate that saturated fatty acids are essential in the diet or have a beneficial role in the prevention of chronic diseases."[11]

27. Further, "[i]t is generally accepted that a reduction in the intake of SFA [saturated fatty acids] will lower TC [total cholesterol] and LDL-cholesterol."[12]

28. For these reasons, "reduction in SFA intake has been a key component of dietary recommendations to reduce risk of CVD."[13]

29. The Institute of Medicine's Dietary Guidelines for Americans, for example, "recommend reducing SFA intake to less than 10 percent of calories."[14] And "lowering the percentage of calories from dietary SFA to 7 percent can further reduce the risk of CVD."[15]

30. In short, consuming saturated fat increases the risk of CHD and stroke.[16]

**D. In Contrast to Saturated Fat, the Consumption of Dietary Cholesterol has No Impact on Blood Cholesterol Levels**

31. For many years, there has been a common misperception that dietary cholesterol affects blood cholesterol levels. According to the USDA and Department of Health and Human Services (DHHS), however, "available evidence shows no appreciable relationship between consumption of dietary cholesterol and serum cholesterol."[17]

---

[11] *Id.* at 460.

[12] Shanthi Mendis et al., *Coconut fat and serum lipoproteins: effects of partial replacement with unsaturated fats*, 85 Brit. J. Nutr. 583, 583 (2001) [hereinafter "Mendis, Coconut fat"].

[13] USDA Review of the Evidence, *supra* n.3.

[14] *Id.*

[15] *Id.*

[16] *See* Mendis, Coconut fat, *supra* n.12, at 583.

[17] USDA & DHHS, *Dietary Guidelines for Americans*, Part D., Chapter 1, at 17 (2015) [hereinafter "USDA & DHHS, Dietary Guidelines"], *available at* http://health.gov/dietaryguidelines/2015-scientific-report/pdfs/scientific-report-of-the-2015-dietary-guidelines-advisory-committee.pdf.

32.     In fact, the USDA and DHHS have concluded that "Cholesterol is not a nutrient of concern for overconsumption."[18]

33.     In contrast, the USDA and DHHS state that "[s]trong and consistent evidence from [randomized control trials] shows that replacing [saturated fats] with unsaturated fats, especially [polyunsaturated fats], significantly reduces total and LDL cholesterol."[19]

34.     Therefore, the USDA and DHHS specifically recommend replacing "tropical oils (e.g., palm, palm kernel, ***and coconut oils***)" with "vegetable oils that are high in unsaturated fats and relatively low in SFA (e.g., soybean, corn, olive, and canola oils)."[20]

## II.    Because of its High Saturated Fat Content, the Consumption of Coconut Oil Increases the Risk of Cardiovascular Heart Disease and Other Morbidity

35.     Although it is well established that diets generally high in saturated fatty acids increase the risk of CHD,[21] several studies have specifically shown that consuming coconut oil—which is approximately 90 percent saturated fat—increases the risk of CHD and stroke.

36.     For example, in 2001 the British Journal of Nutrition published a 62-week intervention study that examined the "effect of reducing saturated fat in the diet . . . on the serum lipoprotein profile of human subjects."[22] The study had two intervention phases. In Phase 1 (8 weeks), "the total fat subjects consumed was reduced from 31 to 25 % energy . . . by reducing the quantity of coconut fat (CF) in the diet from 17.8 to 9.3 % energy intake."[23]

---

[18] *Id.*

[19] *Id.* Part D, Chapter 6, at 12.

[20] *Id.* (emphasis added).

[21] *See* Mendis, Coconut fat, *supra* n.12, at 583.

[22] *Id.*

[23] *Id.*

"At the end of Phase 1, there was a 7.7 % reduction in cholesterol and 10.8 % reduction in LDL and no significant change in HDL and triacylglycerol."[24]

37.    In Phase 2 (52 weeks), the total fat consumed by subjects was reduced from 25 to 20 % energy by reducing the coconut fat consumption from 9.3 to 4.7 % energy intake.[25] At the end of phase 2, these subjects exhibited a 4.2% mean reduction of total cholesterol and an 11% mean reduction in LDL cholesterol.[26]

38.    The authors of the study noted that "[a] sustained reduction in blood cholesterol concentration of 1 % is associated with a 2-3 % reduction of the incidence of CHD (Law et al. 1994)." Further, "[i]n primary prevention, a reduction of cholesterol by 20% has produced a 31% reduction in recurrent coronary morbidity, a 33% reduction in coronary mortality, and 22% less total mortality (Grundy, 1997)."[27]

39.    Based on these relationships, the researchers estimated that "the reduction in coronary morbidity and mortality brought about by the current dietary intervention would be of the order of about 6-8 %."[28]

40.    Simply put, the results of the yearlong study showed that reducing coconut oil consumption "results in a lipid profile that is associated with a low cardiovascular risk."[29]

41.    The detrimental health effects of consuming coconut oil are not limited to long-term consumption. To the contrary, a 2006 study published in the Journal of the American College of Cardiology found that consuming a single high-fat meal containing fat from

---

[24] *Id.*

[25] *Id.*

[26] *Id.* at 586.

[27] *Id.* at 588.

[28] *Id.*

[29] *Id.* at 587.

coconut oil "reduces the anti-inflammatory potential of HDL and impairs arterial endothelial function."[30] In the study, researchers examined the effect of consuming a single isocaloric meal that contained "1 g of fat/kg of body weight," with "coconut oil (fatty acid composition: 89.6% saturated fat, 5.8% monounsaturated, and 1.9% polyunsaturated fat)" as the source of fat.[31] They found that consuming the coconut oil meal significantly "reduces the anti-inflammatory potential of HDL and impairs arterial endothelial function."[32] In contrast, when the fat from the same isocaloric meal came from "safflower oil (fatty acid composition: 75% polyunsaturated, 13.6% monounsaturated, and 8.8% saturated fat)," "the anti-inflammatory activity of HDL improve[d]."[33]

42.    Other studies have similarly demonstrated that coconut oil consumption negatively affects blood plasma markers when compared to other fats.

43.    A 2011 study published in the American Journal of Clinical Nutrition found that consuming coconut oil, unlike consuming palm olein and virgin olive oil, decreased postprandial lipoprotein(a), which is associated with an increased the risk of cardiovascular disease.[34]

44.    Similarly, a study comparing the effects of consuming coconut oil, beef fat, and safflower oil found that coconut oil consumption had the worst effect on subjects' blood lipid

---

[30] Stephen J. Nicholls et al., *Consumption of Saturated Fat Impairs the Anti-Inflammatory Properties of High-Density Lipoproteins and Endothelial Function*, 48 J. Am. Coll. Cardio. 715 (2006).

[31] *Id.*

[32] *Id.*

[33] *Id.* at 715.

[34] P.T. Voon et al., *Diets high in palmitic acid (16:0), lauric and myristic acids (12:0 + 14:0), or oleic acid (18:1) do not alter postprandial or fasting plasma homocysteine and inflammatory markers in healthy Malaysian adults*, 94 Am. J. Clin. Nutr. 1451 (2011).

profiles.[35] The authors noted that "[o]f these fats, only CO [coconut oil] appears to consistently elevate plasma cholesterol when compared with other fats."[36]

45.     Finally, in another study, researchers found that that subjects who consumed 30 percent of energy from fat, with 66.7% coming from coconut oil, had "increased serum cholesterol, LDL, and apo B."[37] (Apo B is a protein involved in the metabolism of lipids and is the main protein constituent of VLDL (very low-density lipoproteins) and LDL. Concentrations of apo B tend to mirror those of LDL, so the higher the level of apo B, the greater the risk of heart disease.) In sum, the study found that consuming coconut oil increased all three cholesterol markers, signifying an increased risk of cardiovascular disease.[38]

## III.    Nutiva's Manufacture, Marketing, and Sale of Coconut Oil

### A.    Nutiva's History and Sale of Coconut Oil

46.     Nutiva was founded in 1999 as a seller of hempseed-based food products.

47.     In approximately early 2004, Nutiva began selling coconut oil, and has distributed, marketed, and sold various coconut oil products on a nationwide, and indeed international basis for at least the past several years. According to Nutiva's website, its products are sold in 20,000 retail stores, and are the "#1 selling Coconut Oil in North America."

---

[35] Raymond Reiser et al., *Plasma lipid and lipoprotein response of humans to beef fat, coconut oil and safflower oil*, 42 Am. J Clin. Nutr. 190, 190 (1985).

[36] *Id.*

[37] V. Ganji & C.V. Kies, *Psyllium husk fiber supplementation to the diets rich in soybean or coconut oil: hypercholesterolemic effect in healthy humans*, 47 Int. J. Food Sci. Nutr. 103 (Mar. 1996).

[38] *Id.*

48.    Nutiva coconut oil products challenged in this lawsuit include at least the following, which are depicted below: (a) Organic Extra Virgin Coconut Oil, (b) Organic Virgin Coconut Oil, and (c) Refined Coconut Oil.



49.    Nutiva "Extra Virgin" and "Virgin" Coconut Oil are in fact the identical product. Nutiva previously sold the product labeled as "Extra Virgin," but later revised the name to simply "Virgin Coconut Oil" in order to comply with certain regulations.

50.    As partially depicted below with respect to Nutiva Virgin Coconut Oil, Nutiva's coconut oil products are available in multiple sizes, ranging from 14 fluid ounces to 1 gallon, and sell for between approximately $10 and $73.



15oz        15oz Glass        23oz Glass        29oz        54oz        1 Gallon

**B.    The Composition of Nutiva's Virgin Coconut Oil**

51.    The Nutrition Facts box and Ingredients list on Nutiva Virgin Coconut Oil, and Nutiva Extra Virgin Coconut Oil, respectively, are pictured below. Each 1 tablespoon (or 15mL) serving of Nutiva coconut oil (whether "Extra Virgin," "Virgin," or "Refined")

11

1  contains 130 calories, all of which come from fat: in each 14-gram serving there are 14 grams

2  of fat. Further, each 14-gram serving contains 13 grams of saturated fat. In other words,

3  Nutiva's Coconut Oil is 100 percent fat, 93 percent of which is saturated fat.




### C.   Nutiva Markets its Coconut Oil Products with Misleading Health and Wellness Claims

52.   Consumers are generally willing to pay more for foods they perceive as being healthy, or healthier than other alternatives. For instance, Nielsen's 2015 Global Health & Wellness Survey found that "88% of those polled are willing to pay more for healthier foods."[39]

53.   Nutiva is well aware of consumer preference for healthful foods, and therefore employs and has employed a strategic marketing campaign intended to convince consumers that its coconut oil products are "healthy," despite that they are almost entirely composed of saturated fat.

---

[39] Nancy Gagliardi, Forbes, Consumers Want Healthy Foods--And Will Pay More For Them (Feb. 18, 2015) (citing Neilson, 2015 Global Health & Wellness Survey, at 11 (Jan. 2015)).

54.     More specifically, Nutiva's health marketing strategy focuses on highlighting that the coconut oil products are "cholesterol-free" and contain some medium chain triglycerides.

### 1.     The Nutiva Coconut Oil Labels Contain Misleading Health & Wellness Claims

55.     Through statements placed directly on the labels of its coconut oil products, Nutiva markets and advertises the products as both inherently healthy, and as healthy alternatives to butter, even though the products' total and saturated fat content render them both inherently unhealthy, and less healthy alternatives to butter. Moreover, Nutiva's labeling claims are designed to conceal or distract consumers from noticing that its coconut oils are pure fat, almost all of which is unhealthy saturated fat.

56.     For example, Nutiva prominently labels its coconut oil products with the phrases "NOURISHING PEOPLE & PLANET" and/or "NURTURE VITALITY," and describes them as the "World's Best Cooking Oil," or "SUPERFOOD[S]," which is a marketing term for "food[s] considered to be especially beneficial for health and well-being."[40] These statements, which appear directly on the front of the products' labels, taken individually and in context of the labels as a whole, are false and misleading because the products are actually unhealthy due to their high saturated fat content.

57.     Nutiva further misleadingly labels the products as "Nature's Ideal All-Purpose Oil" and/or "one of the world's most nourishing foods." These claims, taken individually and in context of the labels as a whole, are false and misleading because the products are unhealthy due to their high saturated fat content.

58.     Nutiva further claims, on the front of the products' labels, that the products have "100% less cholesterol than butter." This claim, taken individually and in context of the label as a whole, while perhaps literally true, misleadingly implies that the products are healthy,

---

[40]     Oxford   Online   American   English   Dictionary,   *available   at* http://www.oxforddictionaries.com/us/definition/american_english/superfood.

when they are not, and that the products are substantially healthier or more nutritious than butter, which they are not, because while the high amount of saturated fat in the Nutiva coconut oils has a pernicious effect on blood total and LDL cholesterol levels, the consumption of the dietary cholesterol in butter has little or no such effect. This claim thus plays on the common misconception that dietary cholesterol negatively affects blood cholesterol levels.

59.    Nutiva also labels the coconut oil products as "better than butter," "a 'better-than-butter' replacement," and/or "a nutritious substitute in baking." These claims misleadingly suggest that replacing butter with the Nutiva coconut oils is a healthy choice, when in reality, doing so would increase consumption of saturated fat and decrease consumption unsaturated fat,[41] resulting in increased total and LDL blood cholesterol levels, and despite that "[s]trong and consistent evidence from RCTs and statistical modeling in prospective cohort studies shows that replacing SFA [saturated fatty acids] with PUFA [polyunsaturated fatty acids] reduces the risk of CVD events and coronary mortality."[42]

60.    These claims, taken individually and in context of the label as a whole, misleadingly imply the Nutiva coconut oil products are healthy, when they are not, and that the products are substantially healthier or more nutritious than butter, which they are not.

61.    In an attempt to reinforce these misleading health claims, Nutiva highlights the products medium chain triglyceride content with the representations such as  "62% MCTs," "Contains 62% medium chain triglycerides and 50% lauric acid," and/or "contains 62% medium chain triglycerides (MCTs) along with lauric and caprylic acids." These claims,

---

[41] The USDA's National Nutrient Database for Standard Reference lists a 14 gram serving of butter as being composed of 12 grams of fat, 7 grams of which are saturated, 3 of which are monounsaturated, and 0.5 of which are polyunsaturated. *See* USDA Agricultural Research Service, *National Nutrient Database for Standard Reference Release 28*, NDB No. 01001, Butter, salted, *available at* http://ndb.nal.usda.gov/ndb/foods.

[42] USDA & DHHS, Dietary Guidelines, *supra* n.17, Part D, Chapter 6, at 12.

taken individually and in context of the label as a whole, misleadingly imply that the Nutiva coconut oil products are healthy, when in fact they are not.

62.     Nutiva further represents that its products are "non-hydrogenated," contain "zero trans fats" and/or "0g trans fats." These claims, taken individually and in context of the label as a whole, are false and misleading because highlighting the absence of trans fat creates the impression the products does not contain harmful fats and are healthy, when in fact the products are unhealthy due their high saturated fat content.

63.     In addition, Nutiva makes material and misleading omissions, especially in light of the affirmative representations made on the product's label. For example, Nutiva highlights that the product is a "superfood" giving the impression that it will only make positive contributions to health without revealing that the products consumption will increase risk of serious illnesses. In addition, Nutiva highlights that the product has "100% less cholesterol than butter" suggesting that the product will not negatively affect blood cholesterol or will do so substantially less than butter. Nutiva, however, fails to disclose or warn of the harmful effects of consuming its coconut oils, that the products has more saturate fat than butter, which has a greater negative effect on blood cholesterol levels than cholesterol.

64.     In sum, the totality of the Nutiva coconut oil product labels and packaging convey the concrete message to a reasonable consumer that the products are healthy, and a more healthful alternative to butter. Nutiva intended consumers to rely upon this message, which is false and misleading for the reasons stated herein.

## 2.     The Nutiva Website Contains Misleading Health & Wellness Claims

65.     The labels of Nutiva's coconut oil products direct consumers to Nutiva's website (www.nutiva.com), which Nutiva uses as a platform for its health marketing campaign.

66.     When Nutiva first began selling coconut oil in approximately early 2004, as depicted below, its website claimed that its coconut oil is a "healthy fat," "one of the most healthy super foods in the world," and "a healthy substitute for shortening in baking, and a 'better than butter' replacement on bread and veggies."

**Organic Extra-Virgin Coconut Oil**

Enjoy this healthy fat with the creamy taste of the tropics. Why is it that baby formulas often include coconut oil as an ingredient? Because coconut is one of the most healthy super foods in the world. Ideal as a high-heat cooking oil, a healthy substitute for shortening in baking, and a "better-than-butter" replacement on bread and veggies.

Not all saturated fat is bad! Coconut oil is cholesterol- and trans fat free, and rich in medium-chain "good fats" that doctors recommend.   We suggest three tablespoons of extra-virgin coconut oil a day. To learn more about coconut oil myths, nutrition, and more visit coconut info.

67.    This version of the Nutiva website contained a variety of additional pages claiming that coconut oil is healthy, and disparaging health concerns about its consumption as "myths."

68.    Today, Nutiva's website claims that "Nutiva's Organic Virgin Coconut Oil is quite beneficial to your body's health and well-being," and "is cholesterol-free and contains medium-chain good fats."[43]

69.    Nutiva further encourages consumers to consume extremely unhealthy amounts of its coconut oil products, claiming that "[h]ealth practitioners suggest three tablespoons of organic, extra-virgin coconut oil per day," which would result in the consumption of 42 grams of total fat, and 36 grams of saturated fat per day from the Nutiva coconut oil products alone.

70.    Nutiva further claims that "[c]oconut oil makes a great replacement for less healthy alternatives like vegetable oils and shortening," despite that most vegetable oils are composed primarily of healthier unsaturated fats.

71.    A "Frequently Asked Questions" portion of Nutiva's website answers the question, "I have heard that coconut oil is not good for you. Is this true?," with the statement "This is commonly heard but not true. Nutiva's Organic Virgin Coconut Oil is quite beneficial to your body's health and well-being. It is cholesterol-free and contains medium-chain good fats and 50-55% Lauric Acid."

---

[43] http://nutiva.com/company/faq/coconut-faq (last visited Dec. 12, 2015).

16

*Jones et al. v. Nutiva, Inc.*
FIRST AMENDED CLASS ACTION COMPLAINT

72.     Nutiva even suggests that consumers can "lose weight by using coconut oil" by referring consumers to an industry funded website that claiming that coconut oil "[p]romotes loss of excess weight by increasing metabolic rate" and "[h]elps prevent obesity and overweight problems."

73.     These and similar statements on the Nutiva website, the URL of which is expressly set forth on the Nutiva coconut oil product labels, are false and misleading because the Nutiva coconut oils are in fact unhealthy, contributing to increased risk of CHD and other mortality, due to their high saturated fat content.

## IV.   The Labeling of Nutiva's Virgin Coconut Oil Violates California and Federal Law

### A.     Any Violation of Federal Food Labeling Statutes or Regulations is a Violation of California Law

74.     Pursuant to the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et. seq.* (the "Sherman Law"), California has adopted the federal food labeling requirements as its own, *see id.* § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulation adopted pursuant thereto.").

75.     The Federal Food Federal Food, Drug, and Cosmetic Act expressly authorizes state regulations, such as the Sherman Law, that are "identical to the requirement[s]" of the FDCA and federal regulations. *See* 21 U.S.C. § 343-1.

76.     Because the Sherman Law's requirements are identical to the requirements of the Federal Food, Drug, and Cosmetic Act and FDA regulations the Sherman law is explicitly authorized by the FDCA.

### B.     The Nutiva Coconut Oil Products' False and Misleading Labeling Claims Render the Products Misbranded Under California and Federal Law

77.     Nutiva's deceptive statements described herein violate Cal. Health & Safety Code § 109875, and 21 U.S.C. § 343(a), which deem a food misbranded if its labeling is "false or misleading in any particular."

78.   In addition, the labeling is misleading, and thus misbranded, because "it fails to reveal facts that are material in light of other representations." 21 C.F.R § 1.21.

**C.   The Nutiva Coconut Oils are Misbranded Because They Make Unauthorized Nutrient Content Claims**

79.   The Nutiva coconut oils are misbranded because their labels bear nutrient content claims even though the products do not meet the requirements to make such claims.

80.   Under 21 U.S.C. § 343(r)(1)(A), a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (or, by delegation, FDA) authorizing the use of such a claim. *See also* Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims" set by federal law.).

81.   Characterizing the level of a nutrient on food labels and labeling of a product without complying with the specific requirements pertaining to nutrient content claims for that nutrient renders the product misbranded under 21 U.S.C. § 343(r)(1)(A).

82.   The Nutiva coconut oils (other than Nutiva's Refined Coconut Oil) are misbranded because they bear the claim "100% less cholesterol than butter," but do not meet the requirements for making this claim.

83.   Under 21 C.F.R. § 101.62(d)(4)(ii), to bear the nutrient content claim "less cholesterol," a food must, among other things, contain less than 2 grams of saturated fat per Reference Amount Customarily Consumed (RACC), *id.* § 101.62(d)(4)(ii)(C), and must disclose the level of total fat in a serving immediate proximity to such to the claim, *id.* § 101.62(d)(4)(ii)(D).

84.   The RACC for oils, including the Nutiva coconut oils, is 1 tablespoon, or 15ml. 21 C.F.R. § 101.12(b) (Reference Amount Customarily Consumed for specific foods, "Fats and Oils: Butter, margarine, oil, shortening).

85.   According to the products' labels, they contain 14 grams of total fat and 13 grams of saturated fat per 1 tablespoon serving.

18

86.    Further, the required disclosure statement regarding total fat is not present anywhere on the products' labels.

87.    Accordingly, the Nutiva coconut oil products do not meet the saturated fat requirement, instead containing a disqualifying amount of saturated fat, and do not make the mandatory total fat disclosure, making the products ineligible for a "less cholesterol" claim under 21 C.F.R. § 101.62(d)(4)(ii), and rendering them misbranded. 21 U.S.C. § 343(r)(1)(A). *See also* 21 C.F.R. § 101.62(f) ("Any label or labeling containing any statement concerning fat, fatty acids, or cholesterol that is not in conformity with this section shall be deemed to be misbranded.").

88.    In addition, the Nutiva coconut oil products are misbranded because their labels bear the "less cholesterol" nutrient content claim, but fails to bear the disclosure statement required by 21 C.F.R. § 101.13(h).

89.    Like the less cholesterol claim, the phrases "zero trans fats," "0g Trans Fat," "non-hydrogenated," "62% MCTs," "Contains 62% medium chain triglycerides and 50% lauric acid" and "Contains 62% medium chain triglycerides (MCTs) along with lauric and caprylic acids" meet the definition of a nutrient content claim because they characterize the products' level of fatty acids, which is a nutrient of the type required to be in nutrition labeling. *See* 21 C.F.R. § 101.13(b)(1).

90.    In addition, the products' labels bear additional "implied" nutrient content claims because they displays statements suggesting the products may be useful in maintaining healthy dietary practices, and those statements are made in connection with claims or statements about nutrients. 21 C.F.R. § 101.13(b)(2).

91.    Specifically, the Nutiva coconut oil labels bear the claims, among others that the products are "one of the world's most nourishing foods," "a 'better-than-butter' replacement," "better than butter" and "a nutritious substitute in baking." These statements are made in connection with the statements "100% less cholesterol than butter," "0g Trans Fat," "non-hydrogenated," "62% MCTs," "Contains 62% medium chain triglycerides and

50% lauric acid" or "Contains 62% medium chain triglycerides (MCTs) along with lauric and caprylic acids."

92.     Under 21 C.F.R. § 101.13(h), a food that bears a nutrient content claim, express or implied, that contains more than 13 grams of total fat or 4 grams of saturated fat per serving, must also bear a disclosure statement on the label, immediately adjacent to the claim, referring the consumer to nutrition information for that nutrient, *e.g.*, "See nutrition information for total fat and saturated fat content." 21 C.F.R. § 101.13(h)(1).

93.     Despite that the Nutiva coconut oils contain 14 grams of total fat and 13 grams of saturated fat, the products fail to bear these mandatory disclosure statements which provide consumers with material nutrition information. Therefore, the products are misbranded.

## V.     Plaintiffs' Purchase, Reliance and Injury

### A.     Preston Jones

94.     Plaintiff Preston Jones has purchased Nutiva coconut oil products approximately two times. To the best of his recollection, plaintiff purchased Nutiva Virgin Coconut Oil in or around January 2013, from Heritage Natural Market located at 984 Laskin Road, in Virginia Beach, Virginia. Plaintiff believes he paid approximately $13 to $15 for a 15 ounce jar. Plaintiff believes he also purchased a 15 ounce jar of Nutiva Virgin Coconut Oil in or around February 2014 from the same Heritage Natural Market for approximately $15.

95.     When deciding to purchase Nutiva Virgin Coconut Oil, plaintiff read and relied on the following claims contained on Nutiva Virgin Coconut Oil's label:

    a.     "Nurture Vitality"

    b.     "Organic Superfood"

    c.     "100% less cholesterol than butter"

    d.      "Coconut is one of the world's most nourishing foods"

    e.     "Contains 62% medium chain triglycerides (MCTs) along with lauric and caprylic acids"

    f.     "is 'better than butter'"

    g.     "A nutritious substitute in baking"

20

h.   "0g trans fat" and "non-hydrogenated."

96.   Based on these representations, plaintiff believed Nutiva Virgin Coconut Oil was healthy, healthier than butter and other oils, and would only make positive contributions to health and would not detriment his health. Plaintiff understood the label's health claims to be directed to the product's purported nutritional health benefits, rather than, or at least in addition to relating to other potential uses, such as on skin.

97.   When purchasing Nutiva Virgin Coconut Oil, plaintiff was seeking a product that had the qualities described on the product's label, namely, a nourishing, nutritious superfood that would only positively affect his health, that was better than butter, and the consumption of which would not increase his risk of CHD, stroke, and other morbidity.

98.   These representations, however, were false and misleading, and had the capacity, tendency, and likelihood to confuse or confound plaintiff and other consumers acting reasonably (including the putative Class members) because, as described in detail herein, the Nutiva coconut oils are not healthy, but instead their consumption increases the risk of CHD, stroke, and other morbidity.

99.   By consuming Nutiva's Virgin Coconut Oil, plaintiff Jones and other members of the class suffered impaired arterial endothelial function.

100.   By consuming Nutiva Virgin Coconut Oil, plaintiff Jones' and other class members' risk of CHD and other morbidity has increased.

101.   Plaintiff is not a nutritionist, food expert, or food scientist, but rather a lay consumer who did not have the specialized knowledge that Nutiva had regarding the nutrients present in its coconut oils.

102.   Plaintiff acted reasonably in relying on the health and wellness claims that Nutiva intentionally placed on the Virgin Coconut Oil's packaging with the intent to induce average consumers into purchasing the product.

103.   Nutiva coconut oils cost more than similar products without misleading labeling, and/or would have cost less in the marketplace (i.e., would have demanded a lower price) absent the false and misleading statements complained of herein.

104.   Plaintiff paid more for Nutiva Virgin Coconut Oil, and would only have been willing to pay less, or unwilling to purchase the product at all, absent the false and misleading labeling complained of herein.

105.   For these reasons, Nutiva Virgin Coconut Oil was worth less than what plaintiff paid for it.

106.   Instead of receiving a product that had actual healthful qualities, the products that plaintiff and the Class received were not healthy, but rather when plaintiff and the class consumed the product, their risk of CHD, stroke, and other morbidity increased.

107.   Plaintiff would not have purchased Nutiva Virgin Coconut Oil if he knew the product was misbranded pursuant to California and FDA regulations, or that its claims were false and misleading.

108.   Plaintiff lost money as a result of Nutiva's deceptive claims and practices in that he did not receive what he paid for when purchasing Nutiva Virgin Coconut Oil.

109.   Plaintiff detrimentally altered his position and suffered damages in an amount equal to the amount he paid for the product.

**B.    Shirin Delalat**

110.   Plaintiff Shirin Delalat purchased Nutiva's Extra Virgin Coconut Oil and Virgin Coconut Oil on multiple occasions over the past several years, from both the Costco located at 2345 Fenton Parkway, in San Diego California, or the Costco located at 4605 Morena Boulevard, in San Diego, California.

111.    In purchasing Nutiva Extra Virgin and Virgin Coconut Oils, Ms. Delalat read and relied on labeling claims that made the products seem healthy, including, *inter alia*, "World's Best Cooking Oil," and "100% Less Cholesterol than Butter."

112.   Ms. Delalat regularly consumed the Nutiva Extra Virgin and Virgin Coconut Oil, usually several tablespoons per day, including at certain times directly eating at least one tablespoon per day, adding it to her coffee, as well as cooking foods, like eggs and chicken, with the oil.

113. Based on these representations, Ms. Delalat believed Nutiva Extra Virgin and Virgin Coconut Oils were healthy, healthier than butter and other oils, and would only make positive contributions to health and would not detriment her health. Plaintiff understood the label's health claims to be directed to the products' purported nutritional health benefits, rather than, or at least in addition to relating to other potential uses, such as on skin.

114. When purchasing Nutiva Extra Virgin and Virgin Coconut Oils, plaintiff was seeking products that had the qualities described on the products' labels, namely, a nourishing, nutritious, superfood that would only positively affect her health, was better than butter, and the consumption of which would not increase her risk of CHD, stroke, and other morbidity.

115. By consuming Nutiva's Virgin Coconut Oil, plaintiff Delalat and other members of the class suffered impaired arterial endothelial function.

116. By consuming Nutiva Virgin Coconut Oil, plaintiff Delalat's and other class members' risk of CHD and other morbidity has increased.

117. Nutiva's representations, however, were false and misleading, and had the capacity, tendency, and likelihood to confuse or confound plaintiff and other consumers acting reasonably (including the putative Class members) because, as described in detail herein, the Nutiva coconut oils are not healthy, but instead their consumption increases the risk of CHD, stroke, and other morbidity.

118. Plaintiff is not a nutritionist, food expert, or food scientist, but rather a lay consumer who did not have the specialized knowledge that Nutiva had regarding the nutrients present in its coconut oils.

119. Plaintiff acted reasonably in relying on the health and wellness claims that Nutiva intentionally placed on the Extra Virgin and Refined Coconut Oils' packaging with the intent to induce average consumers into purchasing the products.

120. Nutiva's coconut oils cost more than similar products without misleading labeling, and/or would have cost less in the marketplace (i.e., would have demanded a lower price) absent the false and misleading statements complained of herein.

121.   Plaintiff paid more for the Nutiva Extra Virgin and Refined Coconut Oils, and would only have been willing to pay less, or unwilling to purchase the products at all, absent the false and misleading labeling complained of herein.

122.   For these reasons, the Nutiva Extra Virgin and Refined Coconut Oils were worth less than what plaintiff paid for them.

123.   Instead of receiving products that had actual healthful qualities, the products that plaintiff and the Class received were not healthy, but rather when plaintiff and the class consumed the products, their risk of CHD, stroke, and other morbidity increased.

124.   Plaintiff would not have purchased Nutiva Extra Virgin and Refined Coconut Oils if she knew the product were misbranded pursuant to California and FDA regulations, or that their claims were false and misleading.

125.   Plaintiff lost money as a result of Nutiva's deceptive claims and practices in that she did not receive what they paid for when purchasing Nutiva Extra Virgin and Refined Coconut Oil.

126.   Plaintiff detrimentally altered her position and suffered damages in an amount equal to the amount she paid for the product.

127.   The senior officers and directors of Nutiva allowed the Nutiva coconut oil products to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## CLASS ACTION ALLEGATIONS

128.   While reserving the right to redefine or amend the class definition prior to or as part of plaintiffs' seeking class certification, plaintiffs bring this suit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and a Class of all persons in the United States who, on or after January 8, 2012 (the "Class Period"), purchased, for personal or household use, and not for resale or distribution purposes, Nutiva Extra Virgin Coconut Oil, Nutiva Virgin Coconut Oil, or Nutiva Refined Coconut Oil (the "Class").

129.   The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

130.   Questions of law and fact common to plaintiff and the Class include:

a.   whether Nutiva communicated a message regarding healthfulness of the products through their packaging and advertising;

b.   whether that message was material, or likely to be material to reasonable consumers;

c.   whether the challenged claims discussed above are false, misleading, or reasonably likely to deceive reasonable consumers, because of the high saturated fat content of the Nutiva coconut oils;

d.   whether Nutiva's conduct violates public policy;

e.   whether Nutiva's conduct violates state or federal food statutes or regulations;

f.   the proper amount of damages, including punitive damages;

g.   the proper amount of restitution;

h.   the proper injunctive relief, including a corrective advertising campaign; and

i.   the proper amount of attorneys' fees.

131.   These common questions of law and fact predominate over questions that affect only individual Class Members.

132.   Plaintiffs' claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Nutiva's conduct. Specifically, all Class Members, including plaintiffs, were subjected to the same misleading and deceptive conduct when they purchased the challenged products, and suffered economic injury because the products were and are misrepresented. Absent Nutiva's business practice of deceptively and unlawfully labeling its coconut oil products, plaintiffs and Class Members would not have purchased the Nutiva coconut oil products.

133.   Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action litigation, including in litigation involving the false and misleading advertising of foods, and specifically including litigation involving the false and misleading advertising of coconut oils.

134.   Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

135.   Defendant has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

136.   As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

137.   In addition, it may be appropriate, pursuant to Fed. R. Civ. P. 23(c)(4), to maintain this action as a class action with respect to particular issues.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

138.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

139.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

140.   The acts, omissions, misrepresentations, practices, and non-disclosures of Nutiva as alleged herein constitute business acts and practices.

### Fraudulent

141.   A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test.

142.   As set forth herein, Nutiva's claims relating to its coconut oil products are likely to deceive reasonable consumers and the public.

### Unlawful

143.   The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;
- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;
- The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and
- The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et seq.*

### Unfair

144.   Nutiva's conduct with respect to the labeling, advertising, and sale of its coconut oil products was and is unfair because Nutiva's conduct was and is immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

145.   Nutiva's conduct with respect to the labeling, advertising, and sale of the coconut oil products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

146.   Nutiva's conduct with respect to the labeling, advertising, and sale of the coconut oil products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

147.   Nutiva profited from its sales of the falsely, deceptively, and unlawfully advertised products to unwary consumers.

148.   Plaintiffs and Class Members are likely to continue to be damaged by Nutiva's deceptive trade practices because Nutiva continues to disseminate misleading information. Thus, injunctive relief enjoining Nutiva's deceptive practices is proper.

149.   Nutiva's conduct caused and continues to cause substantial injury to plaintiffs and the other Class Members. Plaintiffs have suffered injury in fact as a result of Nutiva's unlawful conduct.

150.   In accordance with Bus. & Prof. Code § 17203, plaintiffs seek an order enjoining Nutiva from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

151.   Plaintiffs, on behalf of themselves and the Class, also seek an order for restitution of all monies from the sale of Nutiva's coconut oils, which were unjustly acquired through acts of unlawful competition.

## SECOND CAUSE OF ACTION

### Violations of the False Advertising Law,

### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

152.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

153.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

154.   As alleged herein, the advertisements, labeling, policies, acts, and practices of Nutiva relating to its coconut oils misled consumers acting reasonably as to the healthfulness of the products.

155.   Plaintiffs suffered injury in fact as a result of Nutiva's actions as set forth herein because plaintiffs purchased the Nutiva coconut oils in reliance on Nutiva's false and

misleading marketing claims that the products, among other things, are healthy, healthier than butter, and do not negatively affect blood cholesterol levels.

156.   Nutiva's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Nutiva has advertised its products in a manner that is untrue and misleading, which Nutiva knew or reasonably should have known, and omitted material information from its advertising.

157.   Nutiva profited from its sales of the falsely and deceptively advertised coconut oil products to unwary consumers.

158.   As a result, plaintiffs, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Nutiva was unjustly enriched.

159.   Pursuant to Cal. Bus. & Prof. Code § 17535, plaintiffs, on behalf of themsleves and the Class, seeks an order enjoining Nutiva from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

### THIRD CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act,

### Cal. Civ. Code §§ 1750 *et seq.*

160.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

161.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

162.   Nutiva's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of its products for personal, family, or household purposes by plaintiffs and other members of the Class, and thereby violated and continue to violate at least the following sections of the CLRA:

a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

163.   Nutiva profited from its sales of the falsely, deceptively and unlawfully advertised coconut oil products to unwary consumers.

164.   As a result, plaintiffs and the Class have suffered harm, and therefore seek (a) actual damages in the amount of the total retail sales price of the Nutiva coconut oils sold throughout the Class Period to all Class Members, (b) punitive damages in an amount sufficient to deter and punish, (c) injunctive relief in the form of modified advertising and a corrective advertising plan, and (d) restitution.

165.   Nutiva's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

166.   Pursuant to California Civil Code § 1782, on October 22, 2015, plaintiff Preston Jones sent written notice to Nutiva of his claims, but Nutiva failed to remedy the violations within 30 days thereafter. Because Nutiva failed to implement remedial measures, plaintiff Jones, on behalf of himself and the Class, seeks injunctive relief under Civil Code § 1782(d), as well as statutory, actual, and punitive damages, including attorneys' fees.

167.   Pursuant to California Civil Code § 1782, on October 13, 2016, plaintiff Shirin Delalat sent written notice to Nutiva of her claims, but Nutiva failed to remedy the violations within 30 days thereafter. Because Nutiva failed to implement remedial measures, plaintiff Delalat, on behalf of herself and the Class, seeks injunctive relief under Civil Code § 1782(d), as well as statutory, actual, and punitive damages, including attorneys' fees.

**FOURTH CAUSE OF ACTION**

**Breach of Express Warranties,**

**Cal. Com. Code § 2313(1)**

168.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

169.   Through the Nutiva coconut oil product labels, Nutiva made affirmations of fact or promises, and made descriptions of goods, that formed part of the basis of the bargain, in that plaintiffs and the Class purchased the products in reasonable reliance on those statements. Cal. Com. Code § 2313(1). These affirmations include, *inter alia*, "Superfood," "Coconut is one of the world's most nourishing foods," "is 'better than butter,'" and "A nutritious substitute in baking."

170.   Nutiva breached its express warranties by selling products that are not healthy, not healthier than butter, and that negatively affects cholesterol levels increasing risk of CHD and stroke.

171.   That breach actually and proximately caused injury in the form of the lost purchase price that plaintiffs and Class members paid for the Nutiva coconut oil products.

**FIFTH CAUSE OF ACTION**

**Breach of Implied Warranty of Merchantability,**

**Cal. Com. Code § 2314**

172.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

173.   Nutiva, through its acts and omissions set forth herein, in the sale, marketing and promotion of the Nutiva coconut oil products, made representations to plaintiffs and the Class that, among other things, the products are healthy. Plaintiffs and the Class bought the Nutiva coconut oils manufactured, advertised, and sold by Nutiva, as described herein.

174.   Nutiva is a merchant with respect to the goods of this kind which were sold to plaintiffs and the Class, and there was, in the sale to plaintiffs and other consumers, an implied warranty that those goods were merchantable.

1    175.   However, Nutiva breached that implied warranty in that the Nutiva coconut oil

2    products are not healthy, as set forth in detail herein.

3    176.   As an actual and proximate result of Nutiva's conduct, plaintiffs and the Class

4    did not receive goods as impliedly warranted by Nutiva to be merchantable in that they did

5    not conform to promises and affirmations made on the containers or labels of the goods.

6    177.   Plaintiffs and Class have sustained damages as a proximate result of the

7    foregoing breach of implied warranty in the amount of the products' purchase price.

8                                **PRAYER FOR RELIEF**

9    178.   Wherefore, plaintiffs, on behalf of themselves, all others similarly situated, and

10   the general public, pray for judgment against Nutiva as to each and every cause of action, and

11   the following remedies:

12          A.    An Order declaring this action to be a proper class action, appointing

13   plaintiffs as class representatives, and appointing undersigned counsel as class counsel;

14          B.    An Order requiring Nutiva to bear the cost of class notice;

15          C.    An Order compelling Nutiva to conduct a corrective advertising

16   campaign;

17          D.    An Order compelling Nutiva to destroy all misleading and deceptive

18   advertising materials and product labels;

19          E.    An Order requiring Nutiva to disgorge all monies, revenues, and profits

20   obtained by means of any wrongful act or practice;

21          F.    An Order requiring Nutiva to pay restitution to restore all funds acquired

22   by means of any act or practice declared by this Court to be an unlawful, unfair, or

23   fraudulent business act or practice, untrue or misleading advertising, plus pre-and post-

24   judgment interest thereon;

25          G.    An Order requiring Nutiva to pay actual and punitive damages where

26   permitted under law;

27          H.    An award of attorneys' fees and costs; and

28          I.    Any other and further relief that Court deems necessary, just, or proper.

1

## **JURY DEMAND**

2     Plaintiffs hereby demand a trial by jury on all issues so triable.

3

4  Dated: December 5, 2016          /s/ Jack Fitzgerald

5          **THE LAW OFFICE OF JACK FITZGERALD, PC**
          JACK FITZGERALD
6          *jack@jackfitzgeraldlaw.com*
          TREVOR M. FLYNN
7          *trevor@jackfitzgeraldlaw.com*
          MELANIE PERSINGER
8          *melanie@jackfitzgeraldlaw.com*
9          Hillcrest Professional Building
          3636 Fourth Avenue, Suite 202
10         San Diego, California 92103
          Phone: (619) 692-3840
11         Fax: (619) 362-9555
12

13         **THE LAW OFFICE OF PAUL K. JOSEPH, PC**
          PAUL K. JOSEPH
14         *paul@pauljosephlaw.com*
          4125 W. Point Loma Blvd. No. 206
15         San Diego, CA 92110
          Phone: (619) 767-0356
16         Fax: (619) 331-2943
17

18         ***Attorneys for Plaintiffs and the Proposed Class***

19

20

21

22

23

24

25

26

27

28

*Jones et al. v. Nutiva, Inc.*
FIRST AMENDED CLASS ACTION COMPLAINT