**THE LAW OFFICE OF
JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**THE LAW OFFICE OF
PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 206
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON JONES and SHIRIN DELALAT, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>NUTIVA, INC.,<br><br>Defendant. | Case No: 3:16-cv-00711-HSG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT IN PART**<br><br>Date:   March 9, 2017<br>Time:   2:00 p.m.<br>Place:  Courtroom 10<br>Judge:  Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 1

MEMORANDUM OF POINTS & AUTHORITIES .............................................................. 2

    I.    INTRODUCTION ..................................................................................... 2

    II.    FACTS AND PROCEDURAL HISTORY ............................................... 3

        A.    The FAC's Factual Allegations ..................................................... 3

        B.    The Court's Relevant Holdings ..................................................... 5

    III.    LEGAL STANDARD ............................................................................... 6

    IV.    ARGUMENT ............................................................................................. 7

        A.    Plaintiff Delalat Identifies the Misleading Label, which Nutiva Itself Attaches an Exemplar of, Demonstrating Nutiva Knows What Misconduct is Challenged ......................................................... 7

        B.    Plaintiffs Plausibly Allege Nutiva's Extra Virgin Coconut Oil Labeling Claims are Possibly Misleading to Reasonable Consumers ........................................................................................ 9

        C.    The Claim, "WORLD'S BEST COOKING OIL," Does Not Warrant Dismissal as Mere Puffery, When Properly Analyzed in Context of the Label as a Whole ..................................................... 13

    V.    CONCLUSION ........................................................................................ 15

CERTIFICATE OF SERVICE ........................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Nestle Purina Petcare Co.*,
  973 F. Supp. 2d 905 (N.D. Ill. 2013) ................................................................................12

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 ......................................................................................................................6

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  2011 U.S. Dist. LEXIS 57348 (N.D. Cal. May 26, 2011) ....................................................9

*Boswell v. Costco Wholesale Corp.*,
  2016 U.S. Dist. LEXIS 73926 (C.D. Cal. June 6, 2016) .............................................12, 13

*Chacanaca v. Quaker Oats Co.*,
  752 F. Supp. 2d 1111 (N.D. Cal. 2010) ................................................................................8

*Delacruz v. Cytosport, Inc.*,
  2012 U.S. Dist. LEXIS 51094 (N.D. Cal. Apr. 11, 2012) ..................................................13

*Doyle v. Ill. Cent. R.R. Co.*,
  2009 U.S. Dist. LEXIS 8852 (E.D. Cal. Jan. 29, 2009) ................................................6, 11

*Figy v. Frito-Lay*,
  67 F. Supp. 3d 1075 (N.D. Cal. 2014) ................................................................................12

*Franklin Fueling Sys. v. Veeder-Root Co.*,
  2009 U.S. Dist. LEXIS 72953 (E.D. Cal. 2009) ................................................................14

*Germain v. J.C. Penney Co.*,
  2009 U.S. Dist. LEXIS 60936 (C.D. Cal. July 6, 2009) ......................................................8

*Gilligan v. Jamco Dev. Corp.*,
  108 F.3d 246 (9th Cir. 1997) ................................................................................................6

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ............................................................................................10

*In re ConAgra Foods, Inc.*,
  908 F. Supp. 2d 1090 (C.D. Cal. 2012) ................................................................................8

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011) .......................................................................... 12, 14

*In re Milo's Kitchen Dog Treats*,
   9 F. Supp. 3d 523 (W.D. Pa. 2014) ..................................................................................... 14

*Mohamed v. Jeppesen Dataplan, Inc.*,
   579 F.3d 943 (9th Cir. 2009) ................................................................................................ 6

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
   642 F. Supp. 2d 1112 (C.D. Cal. 2009) ................................................................................ 9

*Ries v. Hornell Brewing Co.*,
   2011 U.S. Dist. LEXIS 36845 (N.D. Cal. Apr. 4, 2011) ..................................................... 7

*Siracusano v. Matrixx Initiatives, Inc.*,
   585 F.3d 1167 (9th Cir. 2009) .............................................................................................. 6

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................................................ 7, 8

*United States v. Redwood City*,
   640 F.2d 963 (9th Cir. 1981) ................................................................................................ 6

*Von Koenig v. Snapple Bev. Corp.*,
   13 F. Supp. 2d 1066 (E.D. Cal. 2010) .............................................................................. 7, 9

*Wilson v. Frito-Lay N. Am., Inc.*,
   2013 U.S. Dist. LEXIS 47126 (N.D. Cal. Apr. 1, 2014) ................................................... 10

*Yeksigian v. Nappi*,
   900 F.2d 101 (7th Cir. 1990) ................................................................................................ 6

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010 ........................................................................... 5, 10

# STATEMENT OF ISSUES TO BE DECIDED

1. ***False or Misleading Product Claims.*** Plaintiffs allege that consuming Nutiva's coconut oil increases the risk of coronary heart disease, stroke, and other serious illnesses, and therefore Nutiva's claims that its Extra Virgin Coconut Oil, *inter alia*, is "nutritious," "nourishing," and has "100% less cholesterol than butter," and "zero trans fats," are misleading to reasonable consumers. Do plaintiffs plausibly allege that Nutiva's Extra Virgin Coconut Oil claims are possibly misleading to a reasonable consumer?

2. ***Particularity.*** Plaintiff Delalat alleges that Nutiva misleadingly markets its Extra Virgin Coconut Oil, identifying the challenged claims and labeling particularly enough that Nutiva attached exemplars of the challenged labeling. Has Ms. Delalat identified the fraudulent conduct with sufficient particularity for Nutiva to defend?

3. ***Puffery.*** The claim, "WORLD'S BEST COOKING OIL," is placed directly above the claim "100% less cholesterol than butter." Does the claim "WORLD'S BEST COOKING OIL" contribute to the deceptive context of the package as a whole and therefore preclude dismissal as puffery?

**MEMORANDUM OF POINTS & AUTHORITIES**

I. INTRODUCTION

The challenged claims on Nutiva's Virgin Coconut Oil—which the Court has already held are plausibly misleading—and on Nutiva's Extra Virgin Coconut Oil are nearly identical:

| **Virgin Coconut Oil Claims** | **Extra Virgin Coconut Oil Claims** |
|---|---|
| "100% less cholesterol than butter" | "100% less cholesterol than butter" |
| "0g trans fat" | "Zero Trans Fats" |
| "non-hydrogenated" | "non-hydrogenated" |
| "'better than butter'" & "A nutritious substitute in baking" | "'better than butter'" & "A nutritious substitute in baking" |
| "Coconut is one of the world's most nourishing foods" | "Coconut is one of the world's most nourishing foods" |
| "Nurture Vitality" | "Nourishing People and Planet" |
| 'Contains 62% medium chain triglycerides (MCTs) along with lauric and caprylic acids' | "Nature's Ideal All-Purpose Oil" |
| "Organic Superfood" | "World's Best Cooking Oil" |

Despite that the Court has already held that Nutiva's Virgin Coconut Oil labeling is plausibly misleading, and that the Extra Virgin claims are largely overlapping and convey the same misleading message, Nutiva now asserts that no reasonable consumer could be deceived. But these claims are plausibly (indeed, plainly) misleading in light of the scientific evidence demonstrating that coconut oil consumption has a pronounced, negative impact on blood cholesterol levels, increasing risk of cardiovascular disease, stroke, and other morbidity. Not only that, but the FDA prohibits several of these claims since they are misleading, a determination to which the Court must defer. Therefore, Court should reject Nutiva's semantic-based argument and hold Nutiva's Extra Virgin Coconut Oil claims are plausibly misleading.

Likewise, Nutiva's assertion that the First Amended Complaint ("FAC") lacks particularity sufficient to give it notice of the particular misconduct that is alleged to constitute the fraud is belied by the fact that Nutiva itself attached exemplars of the challenged labeling, thereby affirmatively demonstrating it knows exactly what misconduct is challenged (*see* Dkt. No. 76-1). Thus, Nutiva cannot honestly claim confusion as to what conduct is being challenged and therefore has sufficient notice to defend Ms. Delalat's claims.

Finally, as this Court has already recognized, a claim that contributes to the deceptive nature of the label as a whole cannot be dismissed as mere puffery. Thus, Nutiva's assertion that the claim "World's Best Coconut Oil," which sits directly above the claim "100% less cholesterol than butter," should not be dismissed.[1]

## II. FACTS AND PROCEDURAL HISTORY

### A. The FAC's Factual Allegations

Nutiva's Virgin and Extra Virgin products are identical in composition (FAC ¶ 49), and each 14-gram serving "of Nutiva coconut oil (whether 'Extra Virgin,' 'Virgin,' or 'Refined') contains . . . 14 grams of fat . . . [and] 13 grams of saturated fat" (*id.* ¶ 51 (each coconut oil is "93 percent" saturated fat)).

Studies show that "saturated fat consumption causes coronary heart disease by, among other things, 'increas[ing] total cholesterol and low density lipoprotein (LDL) cholesterol.'" (FAC ¶ 19.) The "relationship between saturated fat intake and risk of coronary heart disease is well established and accepted in the scientific community." (*Id.* ¶ 21.) In fact, there is "no safe level" of saturated fat intake because "any incremental increase in saturated fatty acid

---

[1] While preserving all rights for appeal, Plaintiffs recognize that the Court has already held that Mr. Jones lacks standing to challenge products he did not purchase "on the basis that they are likely to mislead a reasonable consumer" because the products are not similar enough (Dkt. No. 55, Order at 8-9), and that he lacks standing to seek injunctive relief since he does not allege an intent to purchase the products in the future (*id.* at 16). Accordingly, because neither plaintiff has not purchased the Refined product or allege an intent to purchase the products in the future, they do not ask the Court to reconsider its prior holding.

intake increases CHD [coronary heart disease] risk." (*Id.* ¶ 24.) "[S]everal studies have specifically shown that consuming coconut oil . . . increases the risk of CHD and stroke" (*id.* ¶ 35), and "the USDA and DHHS specifically recommend replacing "tropical oils (e.g., palm, palm kernel, *and coconut oils*)" with "vegetable oils that are high in unsaturated fats and relatively low in SFA [saturated fatty acids] (e.g., soybean, corn, olive, and canola oils)" (*id.* ¶ 34). Further, "[t]here is no evidence to indicate that saturated fatty acids are essential in the diet or have a beneficial role in the prevention of chronic diseases." (*Id.* ¶ 26.) Thus, plaintiffs allege that scientific evidence demonstrates that coconut oil is the antithesis of a healthy, nutritious, nourishing, superfood, and instead "increases the risk of CHD, stroke, and other morbidity." (*See id.* ¶¶ 10-45, 97, 114.)

Despite this scientific evidence, Nutiva employs a "strategic marketing campaign intended to convince consumers that its coconut oil products are 'healthy.'" (*Id.* ¶ 53.)

For example, Nutiva labels its Virgin Coconut Oil and labeled its Extra Virgin Coconut Oil with the following claims.

| **Virgin Coconut Oil Claims** | **Extra Virgin Coconut Oil Claims** |
|---|---|
| "100% less cholesterol than butter" | "100% less cholesterol than butter" |
| "0g trans fat" | "Zero Trans Fats" |
| "non-hydrogenated" | "non-hydrogenated" |
| "better than butter" & "A nutritious substitute in baking" | "better than butter" & "A nutritious substitute in baking" |
| "Coconut is one of the world's most nourishing foods" | "Coconut is one of the world's most nourishing foods" |
| "Nurture Vitality" | "Nourishing People and Planet" |
| 'Contains 62% medium chain triglycerides (MCTs) along with lauric and caprylic acids' | "Nature's Ideal All-Purpose Oil" |
| "Organic Superfood" | "World's Best Cooking Oil" |

(*See* FAC ¶¶ 55-64; Dkt. No. 76-1, Karnik Decl. Attachment "1".)

Ms. Delalat alleges that when she purchased the Extra Virgin and Virgin Coconut

Oils, she "read and relied on labeling claims that made the products seem healthy, including, *inter alia*, 'World's Best Cooking Oil,' and '100% Less Cholesterol than Butter.'" (*Id.* ¶ 111.) "Based on these representations, Ms. Delalat believed Nutiva Extra Virgin and Virgin Coconut Oils were healthy, healthier than butter and other oils, and would only make positive contributions to health and would not detriment her health." (*Id.* ¶ 113.) However, Nutiva's carefully-crafted message is false and misleading, and Ms. Delalat lost money as a result, because she purchased products that she would not otherwise have purchased. (*Id.* ¶¶ 111-124.)

### B. The Court's Relevant Holdings

After removing this action from state Court, Nutiva moved for judgment on the pleadings against Mr. Jones' claims on the same grounds it now seeks to dismiss Ms. Delalat's claims. (*See* Dkt. No. 18.)

In its motion for judgement on the pleadings, Nutiva asserted that the labeling claims on its Virgin Coconut Oil could not deceive a reasonable consumer. (*See id.* 11-15.) The Court rejected this argument noting:

> This case does not present that "rare situation." Plaintiff alleges that the statements (1) "Nurture Vitality"; (2) "Organic Superfood"; (3) "100% less cholesterol than butter"; (4) "Coconut is one of the world's most nourishing foods"; (5) "Contains 62% medium chain triglycerides (MCTs) along with lauric and caprylic acids"; (6) "is 'better than butter'"; (7) "A nutritious substitute in baking"; (8) "0g trans fat"; and (9) "non-hydrogenated," . . . the Court cannot conclude as a matter of law that no reasonable consumer would interpret Defendant's statements to mean that Defendant's Virgin Coconut Oil does not increase LDL blood cholesterol levels. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010). It is plausible that a reasonable consumer could interpret statements such as "0g trans fat" and "100% less cholesterol than butter" to indicate that Defendant's Virgin Coconut Oil is healthy, healthier than butter, or at least does not negatively impact one's cholesterol levels.

(Order at 10-11).

The Court likewise rejected Nutiva's arguments that certain claims should be dismissed as mere puffery, explaining:

> considered in the context of Defendant's entire Virgin Coconut Oil label, this

5

*Jones v. Nutiva, Inc.*, No. 16-cv-711-HSG
OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

statement ["is 'better than butter'"] could "certainly contribute[] . . . to the deceptive context of the package as a whole." *Id.*; *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115-16 (S.D. Cal. 2011). The same is true of each statement Defendant purports to isolate and analyze on a stand-alone basis without considering the context of the label as a whole. Accordingly, the Court declines to dismiss Plaintiff's UCL, FAL, and CLRA claims as based on non-actionable puffery.

(Dkt. No. 55 at 11-12.)

### III.  LEGAL STANDARD

Dismissal is proper under Rule 12(b)(6) only in "extraordinary" cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). Federal pleading requirements are "extremely liberal," requiring only "a short and plain statement of the claim," so as to "minimize disputes over pleading technicalities." *Doyle v. Ill. Cent. R.R. Co.*, 2009 U.S. Dist. LEXIS 8852, at *9-10 (E.D. Cal. Jan. 29, 2009). Courts hear such motions with "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997).

"[D]efendants have the burden on a motion to dismiss to establish the legal insufficiency of the complaint." *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990). A claim should not be dismissed where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Moreover, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In deciding a motion to dismiss, courts should draw "all reasonable inferences from the complaint in [Plaintiffs'] favor," *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009), and "accept the plaintiffs' allegations as true and construe them in the light most favorable to the plaintiffs." *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009).

## IV. ARGUMENT

### A. Plaintiff Delalat Identifies the Misleading Label, which Nutiva Itself Attaches an Exemplar of, Demonstrating Nutiva Knows What Misconduct is Challenged

Rule 9(b) is satisfied where allegations are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Further, "where alleged misrepresentations occur in printed form, the particularity requirement of Rule 9(b) may be satisfied by 'identifying or attaching representative samples of [misleading materials].'" *Ries v. Hornell Brewing Co.*, 2011 U.S. Dist. LEXIS 36845, at *12 (N.D. Cal. Apr. 4, 2011) (alterations in original) (quoting *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1306 n.19 (S.D. Cal. 2003)).

Considering that this case has been proceeding for over a year and both parties are intimately familiarly with the products and claims at issue, Nutiva's assertion that the FAC lacks sufficient particularity to identify the challenged conduct deserves short shrift. Not only does the FAC identify each misleading claim and the reasons for which they are misleading and include pictures of the challenged labeling (FAC ¶¶ 48, 51), *Nutiva itself attached exemplars of the challenged labeling thereby affirmatively demonstrating it knows exactly what conduct is challenged* (*see* Dkt. No. 76-1). Thus, the FAC identifies the conduct with sufficient particularity for Nutiva to "defend against the charge and not just deny that they have done anything wrong." *Swartz*, 476 F.3d at 764. *See Von Koenig v. Snapple Bev. Corp.*, 713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010) (plaintiffs satisfied particularity requirement where plaintiffs alleged that "defendant used terms such as 'All Natural' and other similar terms in labeling its drink products" and "Plaintiffs have submitted examples of the labels").

Nutiva's feigned ignorance as to whether Ms. Delalat purchased the Extra Virgin Coconut Oil in the yellow or red label (Mot. at 11:19-20) is belied by the fact that (1) she alleges that she relied upon the phrase "World's Best Cooking Oil" (FAC ¶ 111)—a phrase

that only appears on the yellow label as can be seen on the exemplars attached by Nutiva, (*see* Dkt. No. 76-1). Further, Ms. Delalat alleges all her purchases occurred at Costco (FAC ¶ 110), which, as Costco well knows, only sold Nutiva's Extra Virgin Coconut Oil bearing the yellow label. Thus, it is clear Ms. Delalat only purchased the yellow labeled Extra Virgin Coconut Oil.

Nutiva also complains that Ms. Delalat "does not identify *what statements* she relied upon (Mot. at 11:17 (emphasis in original)), but Ms. Delalat specifically alleges she "read and relied on labeling claims that made the products seem healthy, including, *inter alia*, 'World's Best Cooking Oil,' and '100% Less Cholesterol than Butter'" (FAC ¶ 111). Given that there is no ambiguity as to which color label Ms. Delalat purchased and Nutiva itself attached exemplars of the challenged labeling, Nutiva cannot reasonably assert it lacks "notice of the particular misconduct which is alleged to constitute the fraud," *Swartz*, 476 F.3d at 764. *See also Germain v. J.C. Penney Co.*, 2009 U.S. Dist. LEXIS 60936, at *12 (C.D. Cal. July 6, 2009) (holding that the plaintiffs pled false advertising claims with particularity where the complaint identified who was responsible for the conduct alleged and the defendants could "prepare an adequate answer from the allegations"); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1126 (N.D. Cal. 2010) (consumers of granola bars satisfied Rule 9(b) by identifying in their complaint "the particular statements they allege are misleading, the basis for that contention, where those statements appear on the product packaging, and the relevant time period in which the statements were used").

Finally, Nutiva also asserts that Ms. Delalat should have alleged exactly when she made her purchases (Mot. at 11-12). But courts have rejected such arguments when, as here, the challenged label is attached to the complaint: "the court does not believe that requiring that plaintiffs allege specific dates on which they saw the representations is necessary or realistic." *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1100 (C.D. Cal. 2012). This is because "the relevant 'when' is either when the allegedly misleading statement was made or when it was viewed or heard by the plaintiff, not when it resulted in a purchase." *Id.* Nutiva is well aware the "when" is from the beginning of the class period until they discontinued

8

use of the "Extra Virgin" moniker and changed it to simply "Virgin" (FAC ¶ 128, 49). There simply is no ambiguity as Nutiva asserts; it knows perfectly well when it used challenged Extra Virgin label, thus plaintiffs' allegations are sufficiently particularized. *See*, *e.g.*, *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 U.S. Dist. LEXIS 57348, at *15 (N.D. Cal. May 26, 2011) (holding plaintiffs satisfied the "when," which was alleged "as 'since at least 2006,' and 'throughout the class period'"); *Von Koenig*, 713 F. Supp. 2d at 1077 (holding "when" was satisfied where plaintiff alleged that "between March 4, 2005 and March 4, 2009," defendant's product label contained alleged misrepresentations); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1124 (C.D. Cal. 2009) (holding that Rule 9(b) was satisfied when "Plaintiff allege[d] that in April 2007, Defendant introduced its Beverage for the first time under the title 'Cranberry and Pomegranate,' which misrepresented the product's ingredients").

In short, Nutiva knows exactly what conduct is challenged and it is fully capable of defending based on the allegations in the FAC.

**B.    Plaintiffs Plausibly Allege Nutiva's Extra Virgin Coconut Oil Labeling Claims are Possibly Misleading to Reasonable Consumers**

The Court has already held that it is plausibly misleading for Nutiva to label its Virgin Coconut Oil with claims such as "(1) 'Nurture Vitality'; (2) 'Organic Superfood'; (3) '100% less cholesterol than butter'; (4) 'Coconut is one of the world's most nourishing foods'; (5) 'Contains 62% medium chain triglycerides (MCTs) along with lauric and caprylic acids'; (6) 'is "better than butter"'; (7) 'A nutritious substitute in baking'; (8) '0g trans fat'; and (9) 'non-hydrogenated,'" (*see* Order at 10-11 ("It is plausible that a reasonable consumer could interpret statements such as "0g trans fat" and "100% less cholesterol than butter" to indicate that Defendant's Virgin Coconut Oil is healthy, healthier than butter, or at least does not negatively impact one's cholesterol levels.")).

Now Ms. Delalat alleges that it is misleading for Nutiva to label its compositionally-identical[2] Extra Virgin Coconut Oil with many of the same claims, such as (1) "Nourishing People and Planet," (2) "World's Best Cooking Oil," (3) "100% less cholesterol than butter," (4) "Coconut is one of the world's most nourishing foods"; (5) "Nature's Ideal All-Purpose Oil" (6) "'better than butter'"; (7) "A nutritious substitute in baking"; (8) "Zero Trans Fats"; and (9) 'non-hydrogenated'" (FAC ¶¶ 56-63).

Not only are the Extra Virgin claims largely overlapping with the Virgin claims, the core underlying message of both labels are the same: the products are healthy and will not harm one's health when consumed. Moreover, several of the claims such as "100% less cholesterol than butter," and "Zero Trans Fats" are prohibited nutrient content claims (FAC ¶¶ 79-93), which are misleading as a matter of law, *see Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination"). *See also Wilson v. Frito-Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS 47126, at *38 (N.D. Cal. Apr. 1, 2014) ("the Court cannot conclude as a matter of law that Plaintiffs' '0 Grams Trans Fat' claims would not be misleading or deceptive to a reasonable consumer"); *Yumul*, 733 F. Supp. 2d at 1129 n.13 (Plaintiff could "show that a reasonable consumer would have read the reference to 'cholesterol free' . . . and have concluded that the product would not raise cholesterol levels. The court cannot conclude based on the packaging alone that the latter reading is so unreasonable that the case can be resolved on a motion to dismiss.").

In spite of this, Nutiva now asks the Court to find that this is one of those rare circumstances that it can hold—as a matter of law—that these claims could not deceive a reasonable consumer. (Mot. at 8-11.) It should not; especially given that Nutiva's argument is based on semantics, which runs against the "extremely liberal" federal pleading standard

---

[2] As Nutiva admits and the FAC alleges "Nutiva's 'Extra Virgin' and 'Virgin' Coconut Oil are in fact the identical product." (*See* FAC ¶ 49.)

which is intended to "minimize disputes over pleading technicalities." *Doyle*, 2009 U.S. Dist. LEXIS 8852, at *9-10. The original complaint alleged, and the Court found plausible, that Nutiva's labeling claims were misleading because they "indicate that Defendant's Virgin Coconut Oil is healthy, healthier than butter, or at least does not negative impact one's cholesterol levels." (Order at 11 ("[T]he Court cannot conclude as a matter of law that no reasonable consumer would interpret Defendant's statements to mean that Defendant's Virgin Coconut Oil does not increase LDL blood cholesterol levels.").) And while parts of FAC allege the labels are misleading for the same reason (using this same language),[3] Nutiva contends that plaintiffs' claims are now wholly implausible because elsewhere in the FAC they allege, in slightly different verbiage, that the labels misleadingly indicate the products are "healthy, healthier than butter and other oils, and would only make positive contributions to health and would not detriment [] health." (FAC ¶ 113.) This nuanced change in language does not change the fact that the labels are plausibly misleading.

Indeed, Nutiva offers no explanation why reasonable consumers could not reasonably believe that a product described as, *inter alia*, "one of the world's most nourishing foods," "a nutritious substitute," "100% less cholesterol than butter," and "Zero Trans Fats," would not detriment their health. The term "nutritious" means "promoting good health and growth,"[4] and the term "nourishing" means "providing the things that are needed for health."[5] Combined with claims like "100% less cholesterol than butter," and "Zero Trans Fats," which emphasize the absence of harmful substances, it is not implausible that consumers would take these representations at face value and conclude that consuming the

---

[3] (*See* FAC ¶ 155 (alleging plaintiffs suffered injury do to Nutiva's "misleading marketing claims that the products, among other things, are healthy, healthier than butter, and do not negatively affect blood cholesterol levels").)

[4] Merriam Webster Online Dictionary, Nutritious, *available at* https://www.merriam-webster.com/dictionary/nutritious

[5] Merriam Webster Online Dictionary, Nourishing, *available at* https://www.merriam-webster.com/dictionary/nourishing

products "would only make positive contributions to health and would not detriment [] health." (FAC ¶ 113.)

Nutiva asserts that "In *In re Ferrero Litigation*, the plaintiffs did not claim to believe that Nutella would only positively affect children's' health," (Mot. at 10), but in fact the court found plaintiffs' stated false advertising claims where "Plaintiffs allege[d] that Ferrero misleadingly promotes its Nutella® spread as healthy and beneficial to children when in fact it contains dangerous levels of fat and sugar." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1110 (S.D. Cal. 2011). Further, in *Figy v. Frito-Lay*, the products at issue did not bear claims such as "nourishing" or "nutritious," but rather only the claims "All Natural," "FAT FREE," and "LOW FAT." 67 F. Supp. 3d 1075, 1089-91 (N.D. Cal. 2014). Thus the court held that "it is implausible that a reasonable consumer would interpret an objectively true statement like "FAT FREE" as also communicating that the product contains low amounts of sodium or is otherwise healthful." *Id.* at 1091. While the logical jump was too great in *Figy*, no such leap is required here when Nutiva claims the product is both nutritious and nourishing, *i.e.*, "promoting good health." *See Adkins v. Nestle Purina Petcare Co.*, 973 F. Supp. 2d 905, 919 (N.D. Ill. 2013) ("Plaintiffs are correct that 'wholesome' at the very least conveys the safety of the treats to the consumer. . . .").

Finally, Nutiva argues "[g]iven that, in this motion, all allegations are presumed true, all reasonable consumers then must [] believe that saturated fat at least tends to be bad. If all reasonable consumers believe that saturated fat tends to be bad, then no reasonable consumer would purchase coconut oil believing that it only makes 'only positive contributions to health.'" (Mot. at 10:24-27.) This argument suffers from several logical flaws.

First, although unstated, this argument assumes that consumers are aware that coconut oil contains saturated fat, despite that the FAC alleges that "Nutiva's labeling claims are designed to conceal or distract consumers from noticing that its coconut oils are pure fat, almost all of which is unhealthy saturated fat." (FAC ¶ 55.) *See Boswell v. Costco Wholesale Corp.*, 2016 U.S. Dist. LEXIS 73926, at *22 (C.D. Cal. June 6, 2016) ("These arguments are

1  all premised on the notion that disclosure of the saturated fat content on the label necessarily
2  means a reasonable consumer could not have been deceived. The Court disagrees.").

3  Second, even if consumers knew coconut oil contained saturated fat, the allegations in the FAC do not establish that "all reasonable consumers believe that saturated fat tends to be bad." While the complaint firmly establishes that saturated fat and coconut oil are unhealthy (FAC ¶¶ 10-45), it says nothing of what ordinary consumers understand about the health effects of consuming saturated fat (*see generally id.*). *See Boswell*, 2016 U.S. Dist. LEXIS 73926 at *23 ("Costco does not clearly explain why, at this stage, Plaintiffs would be required to *dispute* they knew there might be health consequences associated with saturated fats."). Thus, there is no basis for assuming that all consumers know the product contains saturated fat or that all saturated fat is unhealthy.

Finally, even putting these flawed assumptions aside, the Court cannot, as Nutiva requests, hold as a matter of law that a reasonable consumer must disbelieve the claims like "one of the world's most nourishing foods," and "a nutritious substitute" based on its saturated fat content. *See id.* ("And finally, as Plaintiffs explain, they are not arguing the label deceived them of the true saturated fat content; rather, 'they allege Kirkland Coconut Oil's labeling claims mislead [sic] them into believing the product was healthy notwithstanding its saturated fat content.'"); *Delacruz v. Cytosport, Inc.*, 2012 U.S. Dist. LEXIS 51094, at *19 (N.D. Cal. Apr. 11, 2012) ("healthy fat" representation was actionable because it could deceive reasonable consumer into believing product had unsaturated, rather than saturated fat).

Accordingly, it is plausible that the labeling of the Extra Virgin Coconut Oil is misleading to a reasonable consumer.

### C. The Claim, "WORLD'S BEST COOKING OIL," Does Not Warrant Dismissal as Mere Puffery, When Properly Analyzed in Context of the Label as a Whole

This Court previously held that:

considered in the context of Defendant's entire Virgin Coconut Oil label, this

13

statement ["is 'better than butter'"] could "certainly contribute[] . . . to the deceptive context of the package as a whole." *Id.*; *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115-16 (S.D. Cal. 2011). The same is true of each statement Defendant purports to isolate and analyze on a stand-alone basis without considering the context of the label as a whole. Accordingly, the Court declines to dismiss Plaintiff's UCL, FAL, and CLRA claims as based on non-actionable puffery.

(Dkt. No. 55 at 11-12.)

Nevertheless, Nutiva retries this same argument on the purported basis that "Delalat fails to provide any context into what labeling statements she relied upon, there is no entire label to review as it pertains to her claims" (Mot. at 12-13). But the front of the yellow Extra Virgin Coconut Oil label bears the claim "World's Best Cooking Oil" directly above the phrase "100% less cholesterol than butter." (*See* Dkt. No. 76-1. *See also* FAC ¶ 111 (alleging Delalat relied upon, "*inter alia*, 'World's Best Cooking Oil,' and '100% Less Cholesterol than Butter.'"). Thus, the Court is not constrained from analyzing the claim "World's Best Cooking Oil," in isolation but should analyze whether the claim "contribute[s] 'to the deceptive context of the packaging as a whole,'" *In re Ferrero Litig.*, 794 F. Supp. 2d at 1116; *see also Franklin Fueling Sys. v. Veeder-Root Co.*, 2009 U.S. Dist. LEXIS 72953, at *22 (E.D. Cal. 2009) ("[W]here at least some actionable statements have been pled, a claim cannot be dismissed on the ground that some statements constitute mere puffery.").

Accordingly, properly analyzed in context the claim "World's Best Cooking Oil" adds to the deceptive nature of the label as a whole and cannot be dismissed as mere puffery. *See In re Milo's Kitchen Dog Treats*, 9 F. Supp. 3d 523, 541 (W.D. Pa. 2014) ("even if Defendants' statements that the jerky treats are made with love and care constitute puffery standing alone, those statements contribute 'to the deceptive context of the packaging as a whole'"); *In re Ferrero Litig.*, 794 F. Supp. 2d at 1116; *Franklin Fueling Sys.*, 2009 U.S. Dist. LEXIS 72953, at *22 ("even if some of the statements relied on by Plaintiff standing on their own may constitute puffery, those statements contribute 'to the deceptive context of the packaging as a whole,'" and the court should "decline to dismiss these statements as well.").

## V. CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny Nutiva's Motion to Dismiss.

Dated: February 7, 2017

Respectfully submitted,

/s/ Paul K. Joseph

**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd. No. 206
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Attorneys for Plaintiffs and the Proposed Class***

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2017, I served the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT IN PART** on counsel of record for all parties in this action, by notice of electronic filing, which was automatically generated by the Court's CM/ECF system at the time the document was filed with the Court.

Dated: February 7, 2017                                /s/ Paul K. Joseph
                                                                        Paul K. Joseph