**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd. No. 206
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON JONES and SHIRIN DELALAT, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>NUTIVA, INC.,<br><br>Defendant. | Case No: 3:16-cv-00711-HSG<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>[Cal. Civ. Code § 1780(d); Cal. Code Civ. P. § 1021.5]<br><br>Date: July 13, 2017<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 4th Floor<br>Judge: Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

NOTICE OF MOTION ...................................................................................................1

RELIEF SOUGHT .......................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ............................................................1

MEMORANDUM OF POINTS & AUTHORITIES ....................................................2

    I.     INTRODUCTION .............................................................................................2

    II.    FACTS ..............................................................................................................2

         A.    Plaintiff Alleges Nutiva Labels its Coconut Oils with Unlawful,
               False, and Misleading Claims, and Demands Nutiva Modify its
               Labels ....................................................................................................2

         B.    The Complaint Largely Survives Nutiva's Rule 12 Challenge,
               While Plaintiff Presses to Keep His Injunctive Relief Claims
               Alive .....................................................................................................3

         C.    Plaintiff Conducts Discovery, Developing a Strong Liability Case ..............4

         D.    Plaintiff Files a Motion for Partial Summary Judgment to
               Establish Nutiva's Misbranding Liability .........................................5

         E.    The Parties Mediate ..............................................................................5

         F.    Nearly 18 Months After Plaintiff's Demand, Nutiva Revises its
               Coconut Oil Labels to Remove or Bring Into Legal Compliance
               the Challenged Claims..........................................................................6

    III.   LEGAL STANDARDS .....................................................................................10

         A.    California Law Provides for Fee Awards to Prevailing Plaintiffs,
               which are Essential to Promoting Fundamental Public Consumer
               Protection Policies ...............................................................................11

         B.    Whether Plaintiff is a "Prevailing" or "Successful" Party Depends
               Upon the Impact of the Action, not the Manner of its Resolution..............12

i

IV.     ARGUMENT .......................................................................................... 14

        A.     Plaintiff is a "Prevailing" and "Successful" Party ...................... 14

               1.     The Lawsuit was a Catalyst Motivating Defendant to
                      Provide a Primary Relief Sought ..................................... 14

               2.     The Lawsuit Had Merit and Achieved its Catalytic Effect
                      by Threat of Victory ......................................................... 15

               3.     Plaintiff Reasonably Attempted to Settle the Litigation
                      Prior to Filing .................................................................. 15

        B.     The Remaining Elements of Section 1021.5 are Satisfied ........... 16

               1.     The Action Resulted in the Enforcement of an Important
                      Right Affecting the Public Interest .................................. 16

               2.     A Significant Benefit Has Been Conferred on the General
                      Public ............................................................................... 17

               3.     The Necessity and Financial Burden of Private
                      Enforcement Makes a Fee Award Appropriate ............... 17

        C.     The Court Should Award Fees of $450,058 ................................ 19

               1.     Legal Standards ................................................................ 19

               2.     Counsel's Rates are Reasonable ...................................... 20

               3.     Counsel's Hours Reasonable ........................................... 22

               4.     The Court Should Award Fees in the Amount of Counsel's
                      "Presumptively Reasonable" Lodestar ............................. 24

        D.     The Court Should Award Costs of $27,773.97 ........................... 25

V.      CONCLUSION ...................................................................................... 25

*Jones et al. v. Nutiva, Inc.*, No. 16-cv-711-HSG
MOTION FOR ATTORNEYS' FEES AND COSTS

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aarons v. BMW of North America, LLC*,
   2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) ...............................................................18

*Adams v. Compton Unified Sch. Dist.*,
   2015 WL 12748005 (C.D. Cal. July 16, 2015)..............................................................21

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
   49 F. Supp. 3d 710 (S.D. Cal. 2014)............................................................................22

*Baxter v. Salutary Sportsclubs, Inc.*,
   122 Cal. App. 4th 941 (2004) ......................................................................................17

*Beasley v. Wells Fargo Bank*,
   235 Cal. App. 3d 1407 (1991) .....................................................................................24

*Bernardi v. County of Monterey*,
   167 Cal. App. 4th 1379 (2008) ....................................................................................19

*Bradford v. City of Seattle*,
   2008 WL 2856647 (W.D. Wash. July 16, 2008) .........................................................20

*Brazil v. Dell Inc.*,
   585 F. Supp. 2d 1158 (N.D. Cal. 2008) .......................................................................16

*Broughton v. Cigna Healthplans*,
   21 Cal. 4th 1066 (1999) ...............................................................................................11

*Californians for Responsible Toxic Mgmt. v. Kizer*,
   211 Cal. App. 3d 961 (1989) .......................................................................................14

*Champion Produce, Inc. v. Ruby Robinson Co.*,
   342 F.3d 1016 (9th Cir. 2003) .....................................................................................10

*Charlebois v. Angels Baseball LP*,
   993 F. Supp. 2d 1109 (C.D. Cal. 2012) .......................................................................18

*Colgan v. Leatherman Tool Group, Inc.*,
   135 Cal. App. 4th 663 (2006) ...................................................................17

*Collado v. Toyota Motor Sales, U.S.A., Inc.*,
   2011 WL 5506080 (C.D. Cal. Oct. 17, 2011)............................................21

*Delalat v. Syndicated Office Sys., Inc.*,
   2014 WL 930162 (S.D. Cal. Jan. 28, 2014)................................................23

*Ebbetts Pass Forest Watch v. Cal. Dep't of Forestry & Fire Prot.*,
   187 Cal. App. 4th 376 (2010) ...................................................................13

*Edwards v. Ford Motor Co.*,
   2016 WL 1665793 (S.D. Cal. Jan. 22, 2016)...................................passim

*Envtl. Prot. Info Ctr. v. Cal. Dep't of Forestry & Fire Prot.*,
   190 Cal. App. 4th 217 (2010) ...................................................................20

*Fadhl v. City and County of San Francisco*,
   859 F.2d 649 (9th Cir. 1988) ....................................................................24

*Farmers Ins. Exch. v. Sayas*,
   250 F.3d 1234 (9th Cir. 2001) ..................................................................10

*Fitzgerald v. City of Los Angeles*,
   2009 WL 960825 (C.D. Cal. Apr. 7, 2009) ...............................................11

*Folsom v. Butte County Ass'n. of Gov'ts*,
   32 Cal. 3d 668 (1982) ...............................................................................13

*Graciano v. Robinson Ford Sales, Inc.*,
   144 Cal. App. 4th 140 (2006) ...................................................................12

*Graham v. DaimlerChrysler Corp.*,
   34 Cal. 4th 553 (2004) ..........................................................12, 13, 15, 16

*Grant v. Martinez*,
   973 F.2d 96 (2d Cir. 1992)........................................................................20

*Greene v. Dillingham Constr. N.A., Inc.*,
   101 Cal. App. 4th 418 (2002) ...................................................................24

*Grodensky v. Artichoke Joe's Casino*,
    171 Cal. App. 4th 1399 (2009) ...................................................................12

*Hayward v. Ventura Volvo*,
    108 Cal. App. 4th 509 (2003) ....................................................................11

*Henderson v. J.M. Smucker Co.*,
    2013 WL 3146774 (C.D. Cal. June 19, 2013) ...........................................passim

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...................................................................................20

*Herb Hallman Chevrolet, Inc. v. Nash–Holmes*,
    169 F.3d 636 (9th Cir.1999) ....................................................................15

*Hogar Dulce Hogar v. Cmty. Dev. Comm'n of the City of Escondido*,
    157 Cal. App. 4th 1358 (2007) .................................................................13

*In re Conservatorship of Whitley*,
    50 Cal. 4th 1206 (2010) ...........................................................................18

*Ingram v. Oroudjian*,
    647 F.3d 925 (9th Cir. 2011) ...................................................................21

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001) ...........................................................................19

*Kim v. Euromotors West/The Auto Gallery*,
    149 Cal. App. 4th 170 (2007) ..................................................................11

*Kissel v. Code 42 Software, Inc.*,
    2016 WL 7647691 (C.D. Cal. Apr. 14, 2016) ...........................................16

*Lam v. Gen. Mills, Inc.*,
    859 F. Supp. 2d 1097 (N.D. Cal. 2012) ...................................................15

*Lavie v. P&G Co.*,
    105 Cal. App. 4th 496 (2003) ..................................................................17

*Long v. United States IRS*,
    932 F.2d 1309 (9th Cir. 1991) .................................................................24

*Lyons v. Chinese Hosp. Ass'n*,
136 Cal. App. 4th 1331 (2006) ........................................................................11

*MacDonald v. Ford Motor Co.*,
142 F. Supp. 3d 884 (N.D. Cal. 2015) ......................................................passim

*Machlan v. Proctor & Gamble Co.*,
77 F. Supp. 3d 954 (N.D. Cal. Jan. 7, 2015)....................................................3

*Mashburn v. Nat'l Healthcare, Inc.*,
684 F. Supp. 679 (M.D. Ala. 1988) ...............................................................19

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) .......................................................................20

*Nestande v. Watson*,
111 Cal. App. 4th 232 (2003) ........................................................................12

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
2016 WL 1573319 (S.D. Cal. Apr. 18, 2016)................................................22

*Our Children's Earth Found. v. Nat'l. Marine Fisheries Serv.*,
2017 WL 783490 (N.D. Cal. Mar. 1, 2017)...................................................19

*Parks v. Eastwood Ins. Servs., Inc.*,
2005 WL 6007833 (C.D. Cal. June 28, 2005) ...............................................25

*Passantino v. Johnson & Johnson Consumer Products, Inc.*,
212 F.3d 493 (9th Cir. 2000) ....................................................................20, 23

*Paulson v. City of San Diego*,
2007 WL 1756030 (S.D. Cal. June 15, 2007)................................................16

*Perez v. Safety-Kleen Sys.*,
448 Fed. Appx. 707 (9th Cir. 2011)...............................................................20

*Robinson v. City of Chowcilla*,
202 Cal. App. 4th 382 (2011) ........................................................................17

*SAS v. Sawabeh Inf. Servs. Co.*,
2015 WL 12763541 (C.D. Cal. June 22, 2015)..............................................23

*Jones et al. v. Nutiva, Inc.*, No. 16-cv-711-HSG
MOTION FOR ATTORNEYS' FEES AND COSTS

*Schwarz v. Sec'y of Health & Human Servs.*,
  73 F.3d 895 (9th Cir. 1995) ................................................................21

*Serrano v. Stefan Merli Plastering Co., Inc.*,
  52 Cal. 4th 1018 (2011) ..............................................................10, 11

*Serrano v. Unruh*,
  32 Cal. 3d 621 (1982) ......................................................................19

*Tipton-Whittingham v. City of Los Angeles*,
  34 Cal. 4th 604 (2004) .....................................................................13

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
  896 F.2d 403 (9th Cir. 1990) ...........................................................21

*Vasquez v. Super. Ct.*,
  4 Cal. 3d 800 (1971) ........................................................................16

*Vega v. Tradesmen Intern., Inc.*,
  2011 WL 1157683 (S.D. Cal. Mar. 29, 2011) .................................21

*Wiles v. Dept. of Educ.*,
  2009 WL 196197 (D. Haw. Jan. 23, 2009)......................................15

*Woodland Hills Residents Assn., Inc. v. City Council*,
  23 Cal. 3d 917 (1979) ......................................................................12

*Yamada v. Nobel Biocare Holding AG*,
  852 F.3d 536 (9th Cir. 2016) ...........................................................24


**STATUTES**

Cal. Bus. & Prof. Code § 17200 ..............................................................3

Cal. Bus. & Prof. Code § 17500 ..............................................................3

Cal. Civ. Code §§ 1750 *et seq.*..............................................................2

Cal. Civ. Code § 1760 ...........................................................................11

Cal. Civ. Code § 1780 ..............................................................................................11

Cal. Civ. Code § 1780(e) ....................................................................................2, 10

Cal. Civ. Code § 1033.5 ......................................................................................2, 25

Cal. Code Civ. P. § 1021.5 ..................................................................................2, 10

**RULES**

Fed. R. Civ. P. 30(b)(6) ............................................................................................6

**OTHER AUTHORITIES**

Federal Judicial Center, Manual for Complex Litigation (Fourth) (2004) ............................19

*Jones et al. v. Nutiva, Inc.*, No. 16-cv-711-HSG
MOTION FOR ATTORNEYS' FEES AND COSTS

1

2

## NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

3

4

5

6

7

8

9

10

11

12

PLEASE TAKE NOTICE, that on July 13, 2017, at 2:00 p.m., or as soon thereafter as may be heard, in the Courtroom of the Honorable Haywood S. Gilliam, Jr., United States District Judge, Northern District of California, located at the Ronald V. Dellums Federal Building, 1301 Clay Street, Oakland, CA 94162, Courtroom 2, plaintiff Preston Jones and his counsel will, and hereby do, move for attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5 and Cal. Civ. Code §§ 1033.5, and 1780(e). This Motion is based upon this Notice of Motion, the below Memorandum of Points and Authorities, the concurrently-filed Declarations of Melanie Persinger ("Persinger Decl."), Jack Fitzgerald ("Fitzgerald Decl."), and Paul Joseph ("Joseph Decl."), and all exhibits thereto, all prior pleadings and proceedings in the action, and all written and oral argument and evidence offered in support of the Motion.

13

## RELIEF SOUGHT

14

15

16

17

18

After more than a year of litigation, Nutiva revised its coconut oil labels to remove or modify the statements plaintiffs allege are unlawful, false, and misleading. Plaintiff Preston Jones and his counsel now seek an interim award of attorneys' fees and costs since he is a "successful" and "prevailing" party because the lawsuit catalyzed Nutiva to cease the challenged conduct.[1]

19

## STATEMENT OF ISSUES TO BE DECIDED

20

21

A.      Whether this lawsuit was the catalyst for Nutiva revising the labels of the accused coconut oils to remove the claims plaintiffs allege are unlawful, false, or misleading.

22

23

B.      Whether, in light of Nutiva removing the challenged claims from its coconut oil labels, plaintiff's counsel is entitled to an interim award of attorneys' fees and costs because

24

25

26

27

28

---

[1] Mr. Jones was joined by a second plaintiff, Shirin Delalat, in a December 2016 First Amended Complaint. (Dkt. No. 73.) Before filing, Ms. Delalat also served Nutiva with a CLRA demand letter. (Persinger Decl. Ex. 1.) Because Ms. Delalat joined only a few months before Nutiva changed its labels, and for ease and consistent reference throughout the brief, we use "plaintiff" in the singular.

plaintiff is a "prevailing" and "successful" party pursuant to the fee-shifting provisions of California's Private Attorney General Statute and Consumers Legal Remedies Act.

       C.      The appropriate amount of fees and costs to be awarded.

<u>**MEMORANDUM OF POINTS & AUTHORITIES**</u>

## I.    INTRODUCTION

In October 2015, plaintiff Preston Jones advised Nutiva its coconut oil labels bore unlawful, false, and misleading representations, and demanded Nutiva revise them. Nutiva responded and expressly refused. But after plaintiff brought suit, survived Nutiva's Rule 12 challenge, developed key admissions in discovery, filed a motion for partial summary judgment to establish Nutiva's misbranding liability, and previewed his case to Nutiva in great detail before a January 2017 mediation, Nutiva finally relented and earlier this year changed its labels in virtually every way plaintiff demanded.

Because plaintiff's lawsuit was a catalyst to obtaining this changed practice, which was one of his primary objectives, he is a "prevailing" and "successful" party pursuant to the fee-shifting statutes of California's Private Attorney General Statute, Cal. Code Civ. P. § 1021.5, and Consumers Legal Remedies Act, Cal. Civ. Code § 1780(e) (formerly § 1780(d)), and is entitled to an interim award of fees (as well as costs, pursuant to Cal. Civ. Code § 1033.5).

## II.    FACTS

### A.    Plaintiff Alleges Nutiva Labels its Coconut Oils with Unlawful, False, and Misleading Claims, and Demands Nutiva Modify its Labels

On October 22, 2015, prior to filing the lawsuit, plaintiff served Nutiva with a pre-litigation demand letter pursuant to the CLRA. (Persinger Decl. Ex. 2.) The letter outlined plaintiff's complaints and "demand[ed] that Nutiva correct, repair, replace, or otherwise rectify the Products' advertising and labeling," including by "discontinu[ing] representing though [sic] any words or phrases that the Product is healthy" (*id.* at 2). Nutiva responded on November 23, that "the removal and modification of claims identified in your letter from the Products' label [ ] are respectfully declined." (Persinger Decl. Ex. 3 at 4.)

On January 8, 2016, plaintiff filed in State court on behalf of a nationwide class,

alleging violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), and False Advertising Law, *id.* §§ 17500 *et seq.* ("FAL"), as well as breaches of express and implied warranties. (*See* Dkt. No. 2-1, Compl.) Plaintiff sought, first and foremost, "an order . . . compelling Nutiva to (a) cease marketing its coconut oil products using the misleading and unlawful tactics complained of" (*id.* ¶ 3; *see also id.* at ¶¶ 128, 130, 139-40, 145).

Specifically, plaintiff alleged that a number of labeling claims for Nutiva's Extra Virgin, Virgin, and Refined Coconut Oils were unlawful because they violated federal and California labeling regulations, and were false and misleading in suggesting Nutiva's coconut oil is healthy, and a healthy replacement for butter, when coconut oil consumption actually increases risk of heart disease and other morbidity. (*See id.* ¶¶ 1, 36-46, 56-63, 78-92.) The statements plaintiff challenged included: (1) "Nurture Vitality," (2) "Superfood," (3) "100% Less Cholesterol Than Butter," (4) "Coconut is one of the world's most nourishing foods," (5) "Contains 62% medium chain triglycerides (MCTs) along with lauric and caprylic acids," (6) "is 'better than butter,'" (7) "a nutritious substitute in baking," (8) "0g trans fat," and (9) "non-hydrogenated." (*Id.* ¶¶ 56-63, 78-92.)

**B.    The Complaint Largely Survives Nutiva's Rule 12 Challenge, While Plaintiff Presses to Keep His Injunctive Relief Claims Alive**

Nutiva answered the Complaint on February 11, 2016 (Dkt. No. 2-3), then removed to this Court (Dkt. No. 1). On March 8, Nutiva moved for judgment on the pleadings, arguing, among other things, that plaintiff lacked standing to seek injunctive relief. (Dkt. No. 18 at 10-11.) Plaintiff responded with a motion requesting that, "[i]f the Court agrees with Nutiva," it "remand plaintiff's injunctive relief claims to state court" (Dkt. No. 19 at 1), as "[i]njunctive relief is an important remedy under California's consumer protection laws" (*id.* at 2 (quoting *Machlan v. Proctor & Gamble Co.*, 77 F. Supp. 3d 954, 961 (N.D. Cal. Jan. 7, 2015)). Plaintiff further, "[w]hile recognizing the Court's position on the matter" of Article III standing in consumer fraud cases, advised the Court he would "likely oppose this portion of Nutiva's motion . . . to preserve his appellate rights on this undecided issue of law." (*Id.* at 2 n.2.)

On September 22, 2016, the Court issued its decision regarding both parties' motions. (Dkt. No. 55.) It granted Nutiva's motion to the extent that plaintiff's claims for its Extra Virgin and Refined Coconut Oils—which he did not purchase—were limited to the theory that the items were misbranded; and plaintiff lacked standing to seek injunctive relief. The Court otherwise denied Nutiva's motion. But it also denied plaintiff's motion to remand the injunctive relief claims. (*See id.* at 19.)

On September 30, 2016, the parties filed a supplemental Rule 26(f) Report in which plaintiff noted his intention to add one or more class representatives with standing to challenge as misleading claims on Nutiva's Extra Virgin and Refined products. (Dkt. No. 60 at 6-7.) On December 5, plaintiff amended the Complaint adding Shirin Delalat, who purchased the Extra Virgin product. (Dkt. No. 73, First Am. Compl. ("FAC").) Plaintiff also conformed the allegations to the Court's Order, with one exception: since Ms. Delalat's claims had not been dismissed, "plaintiffs respectfully maintain[ed] allegations regarding injunctive relief to ensure they both properly preserve[d] their appeal rights" (*id.* ¶ 3 n.1).

### C.     Plaintiff Conducts Discovery, Developing a Strong Liability Case

While Nutiva's Rule 12 motion was pending, plaintiff began taking discovery. On March 21, 2016, he served Nutiva with first sets of interrogatories, document requests, and requests for admission. Nutiva responded on May 5, including producing its first approximately 1,300 pages of documents. (Persinger Decl. ¶ 5.)

On May 18, 2016, plaintiff noticed the depositions of Neil Blomquist, a Board Member and former Senior Advisor of Nutiva's, and Liz Kaplan, Nutiva's former Marketing Manager. (*Id.* ¶ 6.) Nutiva resisted, asserting that depositions were premature. (*Id.* ¶ 7 & Ex. 4.) But plaintiff pressed and eventually secured Nutiva's agreement to produce the witnesses for deposition on July 21 and 22. In doing so, plaintiff developed key evidence in his favor. For example, Mr. Blomquist admitted that several challenged claims convey a health message, and that Nutiva "tries to convey a message that its coconut oils are healthier than butter" (Persinger Decl. Ex. 5, Blomquist Dep. Tr. 153:25-154:3; *see also id.* at 135:25-136:3). He also admitted health and wellness labeling claims influence consumer purchasing decisions,

and justify a price premium. (*See id.* at 141:21-142:3, 144:1-11.)

During the same time period, plaintiff served 12 non-parties with document subpoenas, including retailers like Vitamin Shoppe and Whole Foods, Nutiva's key distributors, and Nutiva's marketing vendors. Plaintiff thereby obtained key consumer research, and important damages information. In November and December 2016, plaintiff served six more document subpoenas on additional key third parties. (Persinger Decl. ¶ 9.)

**D.    Plaintiff Files a Motion for Partial Summary Judgment to Establish Nutiva's Misbranding Liability**

On October 18, 2016, plaintiff filed a motion for partial summary judgment, seeking a ruling that Nutiva was liable for violating the UCL's "unlawful" prong because the labels of its Coconut Oils bore statements that violated state and federal food labeling regulations. (Dkt. No. 68.) Plaintiff specifically argued that "100% Less Cholesterol Than Butter," and "Zero Trans Fat" statements were categorically prohibited (*id.* at 14-18), while "Non-Hydrogenated," and "0g Trans Fat" were prohibited absent an adjacent disclosure directing the consumer to the nutrition information for total and saturated fat content (*id.* at 18-19). Given Nutiva's regulatory violations, plaintiff asserted he was entitled to summary judgment on Nutiva's liability under the UCL's "unlawful" prong. (*Id.* at 19-20.) Plaintiff argued this finding would further "fix[] . . . key conclusions in [his] favor" (*id.* at 20 (quoting *Brown v. Hain Celestial Group, Inc.*, 2015 WL 3398415, at *5 (N.D. Cal. May 26, 2015)), so that he was also entitled to summary judgment on Nutiva's liability under the UCL's "fraudulent" prong, the FAL, and the CLRA; and entitled to summary judgment that the labeling claims were material, such that a classwide presumption of reliance arises with respect to plaintiff's CLRA claims. (*Id.* at 20-23.) After Nutiva brought to plaintiff's attention the one-way intervention rule, he withdrew the motion (Dkt. No. 70). (Persinger Decl. ¶ 10.)

**E.    The Parties Mediate**

On January 31, 2017, the parties attended a mediation session in San Francisco, before the Hon. Edward A. Infante (Ret.). In advance of the session, plaintiff provided Nutiva with a copy of the mediation brief containing limited redactions of a few items, but setting forth

5

in great detail plaintiff's case. Plaintiff had, by that time, nearly completed working with his scientific expert, Dr. Michael Greger, on a draft report, and was able to borrow liberally from it for the mediation brief. The brief also noted that:

> despite its clear violations, Nutiva has inexplicably failed to revise its labeling. Its failure is inexplicable because this is one of eight similar cases against coconut oil manufacturers in which we either filed a lawsuit or at least served a demand letter, and *every single other manufacturer* has already, or is in the process of revising its label. Due to Nutiva's obstinacy, however, the damages keep growing.

Nutiva did not contest plaintiff's assertion, indicating that as of the end of January 2017, Nutiva had not yet revised its labels. Nor had Nutiva supplemented its earlier production, as would be required under Rule 26(e) had Nutiva already revised them. (*Id.* ¶ 11.)

### F. Nearly 18 Months After Plaintiff's Demand, Nutiva Revises its Coconut Oil Labels to Remove or Bring Into Legal Compliance the Challenged Claims

Following the mediation, which did not resolve the action (*id.* ¶ 12), plaintiff noticed Nutiva's deposition, and Nutiva designated, pursuant to Fed. R. Civ. P. 30(b)(6), its founder and Chief Executive Officer, John Roulac, as its corporate witness. During the deposition, Mr. Roulac disclosed for the first time that Nutiva had finally decided to revise its labels "earlier this year" (*see* Persinger Decl. ¶ 13 & Ex. 6, Roulac Dep. Tr. at 49:9-23). Specifically, Nutiva revised its Virgin and Refined Coconut Oil labels to remove entirely the following challenged labeling claims: (1) "100% less cholesterol than butter," (2) "one of the world's most nourishing foods," (3) Contains 62% medium chain triglycerides (MCTs) along with lauric and caprylic acids," (4) "62% MCT's," (5) "is 'better than butter,'" and (6) "a nutritious substitute in baking." (*See generally* Persinger Decl. Exs. 7-10; Roulac Dep. Tr. at 49:9-58:12, 166:24-172:12, 338:5-340:3.) Nutiva also added the required disclosure statement, "See nutrition information for fat content," to its otherwise non-complaint "non-hydrogenated," and "0g Trans Fat" claims. (*See generally* Persinger Decl. Exs. 7-10; Roulac Dep. Tr., at 338:11-339:5; *compare* FAC ¶ 92.) These changes are depicted below, with the labels broken into panels reflecting the changes.

6

1

**Virgin Coconut Oil (14 oz. shown)**

2 *Left Panel*




*Center Panel*



*Right Panel*

*Jones et al. v. Nutiva, Inc.*, No. 16-cv-711-HSG
MOTION FOR ATTORNEYS' FEES AND COSTS

**Refined Coconut Oil (23 oz. shown)**

*Left Panel*



*Right Panel*



Thus, Nutiva removed or corrected all of the claims plaintiff alleged rendered its coconut oils misbranded, and all of the claims plaintiff challenged as misleading, except "Superfood" and "Nurture Vitality." These two claims, however—one of which is Nutiva's company moniker—are insufficient on their own to warrant further challenge since they do not, absent the context presented by the removed claims, convey the message that the products

8

1    are inherently healthy, and healthier than butter.

2         Mr. Roulac first revealed these changes in response to being asked whether "the label

3    of the Nutiva coconut oil . . . today, [is] in compliance with all FDA regulations," stating that

4    Nutiva has "made some changes recently to the labels and . . . those are now flowing out to

5    the . . . market." (Roulac Dep. Tr., at 49:9-49:17.) When pressed, Mr. Roulac clarified that

6    the labeling changes were made "earlier this year," and although he "d[idn't] have the exact"

7    changes in front of him, he recalled that Nutiva removed "the percentage of . . . MCTs, the

8    '62% MCTs,' and the '100% Less Cholesterol Than Butter'" claims. (*Id.* at 49:21-50:6.)

9    When asked whether Nutiva made those specific changes "to comply with the regulations,"

10   Mr. Roulac responded that Nutiva "w[as] advised by . . . counsel, given that . . . we should,

11   you know, make . . . a few of those changes, and so we did." (*Id.* at 50:10-51:16.)

12        When Mr. Roulac continued to avoid answering directly whether Nutiva made the

13   changes to comply with FDA regulations (*see also id.* at 51:17-52:11), counsel changed tack,

14   asking Mr. Roulac "[b]efore changing the labels earlier this year, did the old label comply

15   with all FDA regulations?" (*id.* at 53:17-54:6). Mr. Roulac evaded again, stating that "[t]he

16   FDA regulations are very intricate, and . . . . [w]e followed to the best that we could, and then

17   we chose, recently, to . . . make some . . . adjustments." (*Id.* at 54:7-11; *see also id.* at 57:17-

18   58:12.) When asked why Nutiva "wait[ed] . . . a year . . . [until] after the lawsuit was filed to

19   change the label," Mr. Roulac stated that, "it took a while to . . . review the label . . . and make

20   some of the . . . changes that [Nutiva] did." (*Id.* at 57:9-57:16.) Later, Mr. Roulac clarified

21   the "review" process "start[ed]" "[o]ver the past year" (*id.* at 166:14-167:18), but would not

22   say precisely when it began (*id.* at 167:19-170:20). Plaintiff's counsel asked Mr. Roulac yet

23   again whether Nutiva "ma[d]e the change as a result of this lawsuit," and whether Nutiva

24   "would . . . have made the change if [plaintiff] hadn't filed the lawsuit," and was met with

25   the same response as before: Nutiva "made changes based on . . . advice from . . . [its]

26   counsel." (*Id.* at 170:21-171:5.) Mr. Roulac did eventually concede it was "fair" to say that

27   "previous versions of the label did violate some FDA regulations":

28

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Q. . . . But you recognize . . . after getting advice of your counsel, that the previous . . . versions of the label did violate some regulations; is that fair? . . . .
>
> [ . . . ]
>
> A.    Yes.

(*Id.* at 172:5-172:12.) After reviewing an exemplar of the new Virgin Coconut Oil label, Mr. Roulac also testified that the required "disclosure statement" was added, and "Nutritious Substitute" removed, as a result of the same label review process. (*See id.* at 338:5-340:3.)

## III.    LEGAL STANDARDS

California law governs the award of attorneys' fees. *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003). The Court's task in this "diversity action is to approximate state law [regarding attorneys' fee awards] as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Farmers Ins. Exch. v. Sayas*, 250 F.3d 1234, 1236 (9th Cir. 2001).

Under Cal. Civ. Code § 1780(e) and Cal. Code Civ. P. § 1021.5, for entitlement to fees, plaintiff must establish he is "prevailing" or "successful," meaning he "succeed[ed] on *any* significant issue in the litigation that achieves *some* of the benefit [he] sought in bringing suit," *see MacDonald v. Ford Motor Co.*, 142 F. Supp. 3d 884, 891 (N.D. Cal. 2015). Under § 1780(e), an award of fees is mandatory if plaintiff is found to be prevailing, while under § 1021.5, a "successful party" is entitled to fees where the action (1) enforces an important right "affecting the public interest" and (2) confers "a significant benefit, whether pecuniary or nonpecuniary," on "a large class of persons," if (3) "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate . . . ." *Serrano v. Stefan Merli Plastering Co., Inc.*, 52 Cal. 4th 1018, 1026 (2011) (quotation and citation omitted).

Once a plaintiff establishes he is entitled to fees, the Court "must then determine how much fee to award." *Henderson v. J.M. Smucker Co.*, 2013 WL 3146774, at *13 (C.D. Cal. June 19, 2013).

A.  **California Law Provides for Fee Awards to Prevailing Plaintiffs, which are Essential to Promoting Fundamental Public Consumer Protection Policies**

1.  **The Consumers Legal Remedies Act Mandates that a "Prevailing Plaintiff" be Awarded Attorneys' Fees**

Pursuant to the CLRA, the "court *shall* award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section." Cal. Civ. Code § 1780(e) (emphasis added). This provision is "integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute," *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1086 (1999) (citation omitted). It must therefore "be liberally construed and applied to promote [the statute's] underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *See* Cal. Civ. Code § 1760; *accord Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509, 512-13 (2003) ("section 1760 expressly directs [courts] to liberally construe section 1780 to protect consumers and provide economical procedures to secure such protection"). A fee award to a prevailing plaintiff in a CLRA action is "mandatory," even when resolved before trial. *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178-79, 181 (2007).

2.  **The Private Attorney General Statute Entitles a "Successful" Party to Fees in a Public Interest Case**

"[S]ection 1021.5 authorizes an award of attorney fees to a 'private attorney general,' that is, a party who secures a significant benefit for many people by enforcing an important right affecting the public interest." *Serrano*, 52 Cal. 4th at 1020. "Although the section 'is phrased in permissive terms . . . , the discretion to deny fees to a party that meets its terms is quite limited,' and generally requires a full fee award unless special circumstances would render such an award unjust." *Fitzgerald v. City of Los Angeles*, 2009 WL 960825, at *3 (C.D. Cal. Apr. 7, 2009) (quoting *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331, 1344 (2006)). Fees are awarded pursuant to this section "to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important

11

right affecting the public interest," Cal. Code Civ. P. § 1021.5, where:

> (1) the action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuiary, has been conferred on the general public or a large class of persons . . . , and (3) "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate . . . ."[2]

*Serrano*, 52 Cal. 4th at 1026 (citing Cal. Code Civ. P. § 1021.5; *Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d 917, 935 (1979)). This statute "recogni[zes] that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." *Woodland Hills*, 23 Cal. 3d at 933.

## B.   Whether Plaintiff is a "Prevailing" or "Successful" Party Depends Upon the Impact of the Action, not the Manner of its Resolution

"In order to effectuate" the policy underlying section 1021.5, the California Supreme Court has "taken a broad, pragmatic view of what constitutes a 'successful party.'"[3] *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (2004) (quotation omitted). "[A] party need not prevail on every claim to be considered a successful party within the meaning of this statute." *Grodensky v. Artichoke Joe's Casino*, 171 Cal. App. 4th 1399, 1437 (2009) (citation

---

[2] Section 1021.5 includes a fourth requirement, that "fees should not in the interest of justice, be paid out of the recovery, if any," but the requirement is inapplicable (or satisfied) here. *See Nestande v. Watson*, 111 Cal. App. 4th 232, 239 (2003) (fees under § 1021.5 are proper "[i]n cases in which the prevailing party has not obtained a monetary recovery").

[3] "The term 'prevailing plaintiff' as used in the CLRA is synonymous with 'successful party' pursuant to California's Private Attorney General Statute." *Edwards v. Ford Motor Co.*, 2016 WL 1665793, at *11 (S.D. Cal. Jan. 22, 2016). As with section 1021.5, "[i]t is settled that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes [under the CLRA] if they succeed on *any significant issue* in litigation which achieves *some of the benefit* the parties sought in bringing the suit." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 153 (2006).

omitted). Rather, "[p]laintiffs may be considered successful if they succeed on *any* significant issue in the litigation that achieves *some* of the benefit they sought in bringing suit." *MacDonald*, 142 F. Supp. 3d at 891 (emphasis added) (quoting *Ebbetts Pass Forest Watch v. Cal. Dep't of Forestry & Fire Prot.,* 187 Cal. App. 4th 376, 382 (2010)).

"Under this broad, pragmatic view of what constitutes a successful party within the meaning of section 1021.5, a plaintiff need not obtain a judgment," *Henderson*, 2013 WL 3146774, at *4 (quoting *Hogar Dulce Hogar v. Cmty. Dev. Comm'n of the City of Escondido*, 157 Cal. App. 4th 1358, 1364 (2007)). "The critical fact is the impact of the action, not the manner of its resolution." *Graham*, 34 Cal. 4th at 566 (quoting *Folsom v. Butte County Ass'n. of Gov'ts*, 32 Cal. 3d 668, 685 (1982)). California law therefore "recognize[s] the catalyst theory and does not require 'a judicially recognized change in the legal relationship between the parties' as a prerequisite for obtaining attorney fees under . . . section 1021.5." *Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604, 608 (2004). Rather, "the relief sought may be obtained from 'a voluntary change in the defendant's conduct.'" *MacDonald*, 142 F. Supp. 3d at 891 (quoting *Graham*, 34 Cal. 4th at 567); *accord Henderson*, 2013 WL 3146774, at *4 (party is successful "whenever it obtains the relief sought in its lawsuit," including "through a voluntary change in the defendant's conduct"); *Graham*, 34 Cal. 4th at 567 (A plaintiff is successful "where an important right is vindicated 'by activating defendants to modify their behavior.'").

"Plaintiff is a 'successful party' under this pragmatic approach if '(1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) [ ] the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense . . . and, (3) [ ] the plaintiff[] reasonably attempted to settle the litigation prior to filing the lawsuit." *Henderson*, 2013 WL 3146774, at *4 (quoting *Tipton–Whittingham*, 34 Cal. 4th at 608); *accord MacDonald*, 142 F. Supp. 3d at 890-91.

## IV.   ARGUMENT

### A.   Plaintiff is a "Prevailing" and "Successful" Party

#### 1.   The Lawsuit was a Catalyst Motivating Defendant to Provide a Primary Relief Sought

"To be a catalyst, the lawsuit must have been 'a substantial causal factor' contributing to Defendant's conduct, though the lawsuit need not be the only cause of Defendant's conduct." *MacDonald*, 142 F. Supp. 3d at 891 (quoting *Henderson*, 2013 WL 3146774, at *4); *see also Hogar*, 157 Cal. App. 4th at 1365. "If plaintiff's lawsuit 'induced' defendant's response or was a 'material factor' or 'contributed in a significant way' to the result achieved then plaintiff has shown the necessary causal connection." *Californians for Responsible Toxic Mgmt. v. Kizer*, 211 Cal. App. 3d 961, 967 (1989) (citations omitted) ["*Kizer*"].

"Because it can be difficult to prove causation when a plaintiff seeks to recover under this theory and 'action is taken by the defendant after plaintiff's lawsuit is filed,' the chronology of events can give rise the inference that the two events are causally related." *MacDonald*, 142 F. Supp. 3d at 890 (quoting *Kizer*, 211 Cal. App. 3d at 968). "Once the inference has been raised, defendants can present evidence to rebut it." *Id.* at 891 (citation omitted). "At that point, the court weighs the credibility of the evidence, although remaining 'mindful that "defendants, on the whole, are usually rather reluctant to concede that the litigation prompted them to mend their ways."'" *Id.* (quotation omitted)).

That this lawsuit was a substantial factor causing Nutiva to change its label could not be more clear. When Mr. Jones first notified Nutiva of his claims, it responded that it believed "no false or misleading statements have been made," and "respectfully declined" to revise its labels. Only after more than a year of litigation, including plaintiff's filing a summary judgment motion that *laid out Nutiva's regulatory violations in great detail*, did Nutiva finally remove or modify its labeling to comply with the law. Nutiva admitted it did so following a label review process that began after plaintiff initiated this lawsuit: on "recommendation of counsel," Nutiva "made the change" to the label "earlier this year" because "the previous version of the label – or previous versions of the label did violate some

14

1    FDA regulations . . . ." (*See* Roulac Dep. Tr. at 49:9-58:12, 166:14-172:12, 338:5-340:3.)

2        Thus, as a result of this lawsuit, Nutiva removed or corrected all claims plaintiff

3 alleges render Nutiva misbranded. And Nutiva removed all claims plaintiff challenged as

4 misleading, except "Superfood" and "Nurture Vitality" (s*ee* Persinger Decl. Exs. 7-10),

5 which, absent the context created by the removed claims, no longer convey the message that

6 the products are inherently healthy, and a healthy replacement for butter. *C.f. Lam v. Gen.*

7 *Mills, Inc.*, 859 F. Supp. 2d 1097, 1103-104 (N.D. Cal. 2012) (after dismissing as preempted

8 claims that fruit snacks were "naturally flavored" and "fruit flavored," finding reasonable

9 consumers would not interpret a remaining claim that fruit snacks were "'gluten free' to

10 mean that the Fruit Snacks . . . are otherwise healthful"). In sum, Mr. Roulac's testimony,

11 and the chronology, establish that this lawsuit was the driving factor in Nutiva's making the

12 labeling changes plaintiff sought.

13        **2.**      **The Lawsuit Had Merit and Achieved its Catalytic Effect by Threat**

14            **of Victory**

15        "Under the catalyst theory, a lawsuit has merit if it is not 'frivolous, unreasonable or

16 groundless . . . .'" *MacDonald*, 142 F. Supp. 3d at 894 (quoting *Graham,* 34 Cal. 4th at 575).

17 There can be no question this element is satisfied because the Court has already held plaintiff

18 states UCL, FAL, CLRA, and breach of warranty claims (Dkt. No. 55, at 4-16). *See Wiles v.*

19 *Dept. of Educ.*, 2009 WL 196197, at *3 (D. Haw. Jan. 23, 2009) ("surviving dispositive

20 motions is 'evidence that the claim is not without merit'" (quoting *Herb Hallman Chevrolet,*

21 *Inc. v. Nash–Holmes,* 169 F.3d 636, 645 (9th Cir.1999))). Further, Nutiva has admitted the

22 challenged labels violated FDA regulations as plaintiff alleges, conceding this lawsuit has

23 merit (indeed, conceding its own liability). (*See* Roulac Dep. Tr. at 49:21-50:6, 170:21-

24 172:12, 338:11-339:10.) *See also Edwards*, 2016 WL 1665793, at *7 (element met where

25 "Defendant d[id] not dispute that Plaintiff's lawsuit had merit").

26        **3.**      **Plaintiff Reasonably Attempted to Settle the Litigation Prior to Filing**

27        Although "[a] plaintiff seeking attorneys' fees under a catalyst theory must first

28 reasonably attempt to settle the matter short of litigation. . . . [l]engthy prelitigation

1  negotiations are not required," *MacDonald*, 142 F. Supp. 3d at 894 (quoting *Graham*, 34 Cal.

2  4th at 577). Instead, plaintiff need only "notify the defendant of its grievances and proposed

3  remedies and give the defendant the opportunity to meet its demands within a reasonable time

4  period." *Id.* (quoting *Graham*, 34 Cal. 4th at 577). Plaintiff satisfied this requirement by

5  sending a pre-litigation letter demanding Nutiva remove the offending labeling claims before

6  filing suit. (Persinger Decl. Ex. 2.) This element is also satisfied because plaintiff "has been

7  diligent in trying to secure a settlement rather than prolong the litigation," *see Paulson v. City*

8  *of San Diego*, 2007 WL 1756030, at *3 (S.D. Cal. June 15, 2007), including by attending

9  private mediation.

### B.   The Remaining Elements of Section 1021.5 are Satisfied

10  Although entitlement to fees under the CLRA requires nothing more than being a

11  "prevailing plaintiff," section 1021.5 imposes three other conditions. Each is satisfied here.

### 1.   The Action Resulted in the Enforcement of an Important Right Affecting the Public Interest

15  "As California courts have found, the '[p]rotection of unwary consumers from being

16  duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society,'"

17  *Kissel v. Code 42 Software, Inc.*, 2016 WL 7647691, at *4 (C.D. Cal. Apr. 14, 2016) (quoting

18  *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1166 (N.D. Cal. 2008) (quoting *Vasquez v. Super.*

19  *Ct.*, 4 Cal. 3d 800, 808 (1971))). Therefore, "[t]he 'enforcement of the California consumer

20  protection laws' qualifies as 'an important right affecting the public interest.'" *MacDonald*,

21  142 F. Supp. 3d at 895 (citing *Henderson*, 2013 WL 3146774, at *10); *see also Edwards*,

22  2016 WL 1665793, at *7 ("courts have found that rights protected by the California consumer

23  protection laws such as the CLRA and the UCL affect the public interest").

24  Here, plaintiff's lawsuit caused Nutiva to remove labeling claims that violated federal

25  and California food labeling laws and misled consumers into believing Nutiva's coconut oils

26  were healthy, and a healthy alternative to butter when, in reality, "coconut oil consumption

27  adversely impacts cardiovascular risk by raising blood cholesterol levels," "has been shown

28  to have a pro-inflammatory effect in humans," and has been shown "to impair artery function

16

within hours of consumption, and to worsen insulin resistance, a pathological condition considered a precursor to type 2 diabetes." (Persinger Decl. Ex. 11, Greger Report at 18.)

Further, the labeling statements Nutiva removed as a result of this lawsuit violated the FDA's nutrient content claims provisions which were expressly enacted to prevent consumer deception and confusion. *See*, *e.g.*, 21 U.S.C. § 343(r)(2)(A) (nutrient content claims "may not be made if the Secretary by regulation prohibits the claim because the claim is misleading in light of the level of another nutrient in the food").

Thus, the misleading and unlawful advertising has stopped, vindicating the State of California's important interest in protecting consumers. *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 703 (2006) ("evaluating whether an advertisement is deceptive under the unfair competition law 'has important public policy implications for California consumers and businesses'" (quoting *Lavie v. P&G Co.*, 105 Cal. App. 4th 496, 503 (2003))).

### 2.    A Significant Benefit Has Been Conferred on the General Public

"[I]n deciding whether to award attorney fees under the statute, a trial court should determine realistically the significance of the benefit, and the size of the class receiving the benefit . . . ." *Henderson*, 2013 WL 3146774, at *11 (quoting *Baxter v. Salutary Sportsclubs, Inc.*, 122 Cal. App. 4th 941, 945 (2004)). A class action "may confer a significant benefit on a large class of persons if it 'caus[es] [the defendant] to change its labeling and advertising practices . . . .'" *Id.* (quoting *Colgan.*, 135 Cal. App. 4th at 703). Here, Nutiva sold millions of units, and there are likely millions of class members. (Persinger Decl. ¶ 22.) While these consumers certainly benefit, so too does the general public, and future potential purchasers. This satisfies § 1021.5. *See Henderson*, 2013 WL 3146774, at *11-12; *c.f. Robinson v. City of Chowcilla*, 202 Cal. App. 4th 382, 397-401 (2011).

### 3.    The Necessity and Financial Burden of Private Enforcement Makes a Fee Award Appropriate

The necessity and financial burden requirement "seeks economic equalization of representation in cases where private enforcement is necessary." *In re Conservatorship of*

17

1  *Whitley*, 50 Cal. 4th 1206, 1215 (2010) ["*Whitley*"]). "This requirement asks the court to

2  examine: (1) the 'adequacy of public enforcement' (necessity prong); and (2) the financial

3  disincentives and incentives of private action (financial burden prong)." *Charlebois v. Angels*

4  *Baseball LP*, 993 F. Supp. 2d 1109, 1114 (C.D. Cal. 2012) (quoting *Whitley*, 50 Cal. 4th at

5  1214).

6  "[T]he California Supreme Court [has] indicated that the necessity of private

7  enforcement [prong] require[s] courts to consider only one fact—the availability of public

8  enforcement." *Robinson*, 202 Cal. App. 4th at 401 (citing *Whitley*, 50 Cal. 4th at 1217). "In

9  this case, no government action was being taken to vindicate [Plaintiff's] rights," and

10  "[t]herefore, private enforcement was [Plaintiff's] only realistic way to enforce his [ ] rights."

11  *See id; see also MacDonald*, 142 F. Supp. 3d at 897 (N.D. Cal. 2015) (necessity prong

12  satisfied where "[a]t the time Plaintiffs commenced this lawsuit . . . NHTSA had not

13  commenced a parallel action and 'no government action was being taken to vindicate'

14  Plaintiffs' rights" (citations omitted)).

15  The financial burden prong is met where "the cost of the claimant's legal victory

16  transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a

17  burden on the plaintiff out of proportion to his individual stake in the matter." *Charlebois*,

18  993 F. Supp. 2d at 1114 (quoting *Whitley*, 50 Cal. 4th at 1215)). That is the case here: plaintiff

19  stood to gain, at most, a modest refund of what he paid for the Nutiva Coconut Oils by means

20  of this relatively costly lawsuit litigated over sixteen months. *See Charlebois*, 993 F. Supp.

21  2d at 1115 ("[T]he financial burden prong is satisfied because the $18,000 that Plaintiff seeks

22  . . . is not sufficient incentive to take on this litigation, which spanned more than two years.");

23  *Parkinson*, 796 F. Supp. 2d at 1171 ("an individual plaintiff seeking to vindicate a $1,000-

24  $2,000 repair could not be expected to litigate against Hyundai's demonstrably robust and

25  resourceful defenses"); *Aarons v. BMW of North America, LLC*, 2014 WL 4090564, at *14

26  (C.D. Cal. Apr. 29, 2014) ("as an individual seeking compensation for a $6,000–$9,000 repair

27  could not reasonably be expected to litigate against BMW's substantial resources and

28  defenses"). "Given California courts' specific recognition of the significance of private

18

enforcement in the area of consumer protection and the absence of any showing of parallel government action," the Court should "conclude that Plaintiff's action was necessary, and the financial burden makes the award appropriate." *See Henderson*, 2013 WL 3146774, at *13.

### C.     The Court Should Award Fees of $450,058

#### 1.     Legal Standards

"[O]nce the court has determined that the plaintiff is both eligible for and entitled to recover fees, the award *must* be given and the only room for discretion concerns the reasonableness of the amount requested." *Our Children's Earth Found. v. Nat'l. Marine Fisheries Serv.*, 2017 WL 783490, at *10 (N.D. Cal. Mar. 1, 2017) (emphasis added); *see also Henderson*, 2013 WL 3146774, at *13.

Where "Plaintiff pursued claims under statutes with fee-shifting provisions, such as the CLRA and section 1021.5, and the litigation did not result in a common fund, the lodestar method of evaluating and calculating fees is appropriate." *Edwards*, 2016 WL 1665793, at *9; *see also Bernardi v. County of Monterey*, 167 Cal. App. 4th 1379, 1393 (2008) ("In determining the amount of reasonable attorney fees to be awarded under a statutory attorney fees provision, the trial court begins by calculating the 'lodestar' amount." (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001))). The lodestar is "the number of hours reasonably expended multiplied by the reasonable hourly rate." *Henderson*, 2013 WL 3146774, at *13.

"Shifting fees in a statutory-fee case serves the public policy of encouraging private enforcement of statutory or constitutional rights," Federal Judicial Center, Manual for Complex Litigation (Fourth) § 14.13 (2004), by way of "a financial incentive . . . to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988). Accordingly, the California "Supreme Court [has] indicated 'that absent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for *all* hours reasonably spent." *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1077 (N.D. Cal. 2010) (emphasis added) (quoting *Serrano v. Unruh*, 32 Cal. 3d 621, 639 (1982)); *accord Hensley*

19

1  *v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his

2  attorney should recover a fully compensatory fee. Normally this will encompass all hours

3  reasonably expended on the litigation. . . .").

4       Moreover, "the fee award should not be reduced simply because the plaintiff failed to

5  prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. "For example, a

6  plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may

7  recover a fee award based on all hours reasonably expended if the relief obtained justified

8  that expenditure of attorney time." *Id.* n.11.[4] In making this determination, "[b]y and large,

9  the court should defer to the winning lawyer's professional judgment as to how much time

10 he was required to spend on the case; after all, he won, and might not have, had he been more

11 of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *c.f. Grant*

12 *v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (Courts should avoid engaging in an "ex post

13 facto determination of whether attorney hours were necessary to the relief obtained.");

14 *Bradford v. City of Seattle*, 2008 WL 2856647, at *9 (W.D. Wash. July 16, 2008).

15       California "follow[s] the rule announced in *Hensley*[], which does not require the

16 detailed parsing of attorney labor" in cases where some claims were successful and others

17 unsuccessful. *Perez v. Safety-Kleen Sys.*, 448 Fed. Appx. 707, 708 (9th Cir. 2011) (Mem.)

18 (citing *Envtl. Prot. Info Ctr. v. Cal. Dep't of Forestry & Fire Prot.*, 190 Cal. App. 4th 217

19 (2010)). Where issues are "inextricably intertwined," a reduction in attorneys' fees is not

20 warranted just because the plaintiff succeeds on some, but not all claims. *See Passantino v.*

21 *Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 518 (9th Cir. 2000).

                    **2.     Counsel's Rates are Reasonable**

23       To assist courts in calculating the lodestar, a plaintiff must submit "satisfactory

24 evidence . . . that the requested rates are in line with those prevailing in the community for

25 similar services by lawyers of reasonably comparable skill, experience and reputation."

26 _____

27 [4] Here, while plaintiff seeks an interim award of fess because he has obtained injunctive
relief entitling him to those fees, he has not "failed to recover damages." That is just an open

28 question, and the litigation continues.

*Jones et al. v. Nutiva, Inc.*, No. 16-cv-711-HSG
MOTION FOR ATTORNEYS' FEES AND COSTS

*Blum*, 465 U.S. at 896 n.11; *see also Ketchum*, 24 Cal. 4th at 1133; *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). Nevertheless, "courts are allowed to rely on their own familiarity with the legal market and subject matter of the lawsuit when awarding attorneys' fees," *Collado v. Toyota Motor Sales, U.S.A., Inc.*, 2011 WL 5506080, at *5 (C.D. Cal. Oct. 17, 2011) (citing *Ingram v. Oroudjian*, 647 F.3d 925 (9th Cir. 2011)). "[R]ate determinations in other cases, particularly those settling a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, plaintiff's counsel's rates on this matter are as follows.

| Timekeeper | Position | Graduation Year | Hourly Rate |
|---|---|---|---|
| Thomas A. Canova | Partner | 1985 | $750 |
| Jack Fitzgerald | Partner | 2004 | $650 |
| Trevor Flynn | Associate | 2007 | $500 |
| Melanie Persinger | Associate | 2010 | $440 |
| Paul K. Joseph | Principal | 2012 | $400 |

(Fitzgerald Decl. ¶ 4; Joseph Decl. ¶ 4.) These rates are reasonable because they are in line with the prevailing rates for other attorneys of comparable experience, reputation, and skill practicing in the Northern District of California. (*See generally* Fitzgerald Decl. Ex. A; Joseph Decl. Ex. A.) The requested rates for Messrs. Canova, Fitzgerald, Flynn, and Joseph were approved this past February in San Diego, in *Cumming v. BetterBody Foods & Nutrition, LLC*, No. 37-2016-00019510-CU-BT-CTL (San Diego County Super. Ct.), an analogous class action against another coconut oil manufacturer. (*See* Fitzgerald Decl. ¶ 5 & Ex. B at 2; *see also generally id.* ¶ 8 (setting forth history of rate approvals for each attorney).) San Diego rates are typically lower than San Francisco rates. *See Vega v. Tradesmen Intern., Inc.*, 2011 WL 1157683, at *2 (S.D. Cal. Mar. 29, 2011) ("Vega's cited surveys are not particular to th[e] [Southern] District, but instead sweep in areas such as Los Angeles and San Francisco where fees are typically higher."); *c.f. Adams v. Compton Unified Sch. Dist.*, 2015 WL 12748005, at *10 n.9 (C.D. Cal. July 16, 2015) ("[T]he Northern District of California

21

encompasses the market of San Francisco, where attorney hourly rates are often higher than in Los Angeles."). Likewise, Ms. Persinger's rate of $440 is reasonable because a Southern District of California Court approved her for a rate of $400 more than a year ago. *See Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 2016 WL 1573319, at *2 (S.D. Cal. Apr. 18, 2016).[5] Given the higher hourly rates in San Francisco and, and the time that has passed, a modest 10% increase is reasonable.

That counsel's rates are in line with prevailing rates in the community for attorneys with similar experience, skill, and reputation is also reflected in some recent Northern District of California decisions. (*See* Fitzgerald Decl. ¶¶ 9-12; Joseph Decl. ¶¶ 6-11.)

### 3.    Counsel's Hours Reasonable

In cases where a plaintiff has sought fees for changed business practices under a catalyst theory, work is reasonably undertaken up until the time the plaintiff learns of the changed practice. *See Antoninetti v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 710, 724-26 (S.D. Cal. 2014), *aff'd sub nom. Goldkorn v. Chipotle Mexican Grill, Inc.*, 669 Fed. Appx. 920 (9th Cir. 2016) (Mem.) (court "credit[ed] reasonable time spent pursuing class certification, declaratory relief, and injunctive relief through January 18, 2011," when "Defendant had confirmed relief"); *Edwards*, 2016 WL 1665793, at *9 (compensating counsel for work performed through December 2012 because "defendant . . . notified all vehicle owners of the [relief] in mid-December, giving Plaintiff at least constructive notice" that she had obtained the relief sought).

Here, plaintiff learned of the revised labels on March 20, 2017. Most, but not all of the work plaintiff's counsel undertook up to this time was relevant to plaintiff's claims for both monetary and injunctive relief. Thus while plaintiff has so far obtained only injunctive relief, most of the work bringing about that relief is "inextricably intertwined" with work relating to

---

[5] The same court approved rates of $725 for Mr. Canova and $625 for Mr. Fitzgerald, which was the same rate the Honorable Joan M. Lewis approved about a year and a half ago in a class action pending in San Diego Superior Court, in which Mr. Flynn was also approved for a rate of $475. (*See* Fitzgerald Decl. ¶¶ 6-7 & Ex. C.)

plaintiff's damages case, and should be fully compensated. *See Passantino*, 212 F.3d at 518.

Accordingly, following the *Hensley* rule, plaintiff's counsel seeks compensation for all work performed through March 20, 2017, other than work that was performed exclusively for the purposes of seeking damages, such as consultations with plaintiff's damages experts, and counsel's work subpoenaing retailers for sales information. (Fitzgerald Decl. ¶ 13.) To further ensure the requested compensation is reasonable, before calculating its lodestar, plaintiff's counsel carefully reviewed its hours and cut additional time that appeared erroneous, excessive, duplicative, or administrative. (*Id.*) *See Delalat v. Syndicated Office Sys., Inc.*, 2014 WL 930162, at *3 (S.D. Cal. Jan. 28, 2014) ("additional adjustment unnecessary" where plaintiff's counsel voluntarily reduced requested hours); *see also SAS v. Sawabeh Inf. Servs. Co.*, 2015 WL 12763541, at *24 n.185 (C.D. Cal. June 22, 2015) ("in calculating the lodestar, courts should consider whether counsel have already exercised billing discretion to reduce the hours sought").

Counsel's raw time records reflect 906.6 total hours. From this, counsel cut 13.3 hours for work exclusively related to plaintiff's damages case, and an additional 48.5 hours in the exercise of billing discretion.[6] (Fitzgerald Decl. ¶ 14.) As a result, through March 20, 2017, counsel reasonably expended a total of **844.8 attorney hours** on work related to obtaining Nutiva's changed labels. (Fitzgerald Decl. Exs. D-E (detailed time records, organized by timekeeper and task).[7])  This corresponds to a **lodestar of $450,058**, as follows.

---

[6] The 61.8 hours cut represents approximately 6.8% of the raw time records. Counsel's raw time records, however, did not reflect time that could be allotted to this case during regular status conferences between Messrs. Fitzgerald and Joseph during which they discussed the status of several different coconut oil cases. If that time were allotted among the various actions typically discussed, counsel estimate that this would add approximately 40 hours (approximately 20 hours for each attorney). (*See* Fitzgerald Decl. ¶ 14 n.2.) Counting this time, the 101.8 hours for which counsel does not seek compensation would represent a discount of approximately 10.8% of a total of 946.6 hours.

[7] Comparing the average monthly hours billed here to averages approved in other consumer protection actions demonstrates reasonableness. (*See* Fitzgerald Decl. ¶¶ 16-17.)

| Timekeeper | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Thomas A. Canova | $750 | 33.0 | $24,750 |
| Jack Fitzgerald | $650 | 368.2 | $239,330 |
| Trevor Flynn | $500 | 64.3 | $32,150 |
| Melanie Persinger | $440 | 52.7 | $23,188 |
| Paul K. Joseph | $400 | 326.6 | $130,640 |
| | | *Totals =* | *844.8* | *$450,058* |

### 4.    The Court Should Award Fees in the Amount of Counsel's "Presumptively Reasonable" Lodestar

If the hours expended and hourly rates "are reasonable, then there is a strong presumption that their product, the lodestar figure, represents a reasonable award." *Our Children's Earth Found.*, 2017 WL 783490, at *10 (quoting *Long v. United States IRS*, 932 F.2d 1309, 1314 (9th Cir. 1991)); *see also Yamada v. Nobel Biocare Holding AG*, 852 F.3d 536, 546 (9th Cir. 2016). "Nevertheless, a court 'may authorize an upward or downward adjustment from the lodestar figure if certain factors relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary.'" *Our Children's Earth Found.*, 2017 WL 783490, at *10 (quoting *Long*, 932 F.2d at 1314).

"[T]he unadorned lodestar reflects the general local hourly rate for a *fee-bearing case*; it does not include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider," *Ketchum*, 24 Cal. 4th at 1133. "One of the most common fee enhancers . . . is for contingency risk." *Graham*, 34 Cal. 4th at 579. In contingency litigation, a fee limited to what would have been paid by a fee-paying client, win or lose, is not reasonable by market standards. *Ketchum*, 24 Cal. 4th at 1132-33; *see also Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1419 (1991) (purpose of contingency enhancement "is to compensate for the *risk* of loss generally in contingency cases *as a class*" (citing *Fadhl v. City and County of San Francisco*, 859 F.2d 649, 650 (9th Cir. 1988))); *Greene v. Dillingham Constr.*, 101 Cal. App. 4th 418, 428-29 (2002).

Although plaintiff's counsel took this case on a contingency basis, bearing significant

24

expense and risking nonpayment, plaintiff does not seek any upward adjustment to counsel's lodestar, further underscoring the reasonableness of his fee request. *Compare MacDonald*, 2016 WL 3055643, at *9-10 (awarding 2.0 multiplier in catalyst fee case). In addition, devoting nearly 900 hours here (more before cuts) necessarily precluded counsel's other employment. *See Parks v. Eastwood Ins. Servs., Inc.*, 2005 WL 6007833, at *8 (C.D. Cal. June 28, 2005) (Where "counsel was heavily committed to this case" and this "precluded taking a certain amount of other work," "[t]his weighs in favor of an enhancement."), *aff'd in substantive part, and rev'd on other grounds*, 240 Fed. Appx. 172, 175 (9th Cir. 2007) (Mem.). But again, plaintiff seeks no enhancement to the base lodestar. Given these and other factors that support a multiplier, plaintiff's request for his counsel's unadjusted lodestar is reasonable.

### D.   The Court Should Award Costs of $27,773.97

Under Cal. Code Civ. P. § 1033.5(a)(1), (3), and (4), the Court must award a successful party costs for court fees; deposition costs for recording, transcribing, and travel; and service of process fees. In addition, § 1033.5(c) allows reimbursement of costs "reasonably necessary to the conduct of the litigation, rather than merely convenient or beneficial to its preparation." *See Parkinson*, 796 F. Supp. 2d at 1176 (quotation omitted). Plaintiff's counsel has incurred, and now seeks reimbursement for $17,751.65 in costs recoverable under § 1033.5(a), and $10,022.32 in costs recoverable under § 1033.5(c) because they were "reasonably necessary to conduct the litigation" (*see* Fitzgerald Decl. Ex. F (summary of costs)).

## V.   CONCLUSION

For the foregoing reasons, the Court should grant the motion and award plaintiff's counsel $450,058 in fees and $25,528.97 in expenses, to be paid by Nutiva within 21 days.


Dated: May 22, 2017         Respectfully submitted,

                            /s/ Jack Fitzgerald

                            **THE LAW OFFICE OF JACK FITZGERALD, PC**
                            JACK FITZGERALD

*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840

**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd. No. 206
San Diego, California 92110
Phone: (619) 767-0356

***Attorneys for Plaintiffs and the Proposed Class***

*Jones et al. v. Nutiva, Inc.*, No. 16-cv-711-HSG
MOTION FOR ATTORNEYS' FEES AND COSTS