# Exhibit 3



Rakesh M. Amin, LL.M., R.Ph.
Rakesh@AminTalati.com

312.327.3382 Tel
312.884.7352 Fax

November 23, 2015

Jack Fitzgerald
The Law Office of Jack Fitzgerald, PC
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103

Dear Mr. Fitzgerald,

Please be advised that we have been retained by Nutiva, Inc. ("Nutiva") to respond to allegations made by your clients, Alan Ducorsky and Preston Jones, who allegedly purchased and were misled by Nutiva's Virgin Coconut Oil (the "Product") label bearing the statements: "[Coconut is] one of the world's most nourishing foods," "better than butter," "a nutritious substitute in baking," "100% less cholesterol than butter," "organic superfood," and "contains 62% medium chain triglycerides (MTCs) along with lauric and caprylic acids." It is alleged Nutiva violated the California Consumer Legal Remedies Act (Civil Code §1750 et seq.) ("CLRA").

As a preliminary matter, Nutiva denies any violation of the CLRA, and denies any intent to mislead or deceive consumers in any way. Your threat to bring a class action for the alleged violations is not well-taken, and the claims made in your letter dated October 22, 2015 provide no factual basis for any of the threatened causes of action against Nutiva.

## California's Consumer Legal Remedies Act

As you know, a plaintiff claiming false advertising under the CLRA "bears the burden of proving that the defendant's advertising claim is false or misleading." *National Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1342, 133 Cal. Rptr. 2d 207 (Cal. Ct. App. 2003). More so, the plaintiff bears the burden of proof to show that the defendant's conduct is likely to deceive a "reasonable consumer." *Parent v. MillerCoors LLC*, 2015 U.S. Dist. LEXIS 145071 (S.D. Cal. Oct. 26, 2015); see also *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (claims under CLRA are governed by the "reasonable consumer" test which requires plaintiffs to prove that members of the public are likely to be deceived.) "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Instead, likelihood of deception exists when "the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

A plaintiff's allegations about being personally deceived by a label are not legally sufficient to establish the likelihood that a reasonable consumer would be deceived. *Hill v. Roll Int'l Corp*, 195 Cal. App. 4th 1295 (2011). Furthermore, the reasonable consumer is not the "least sophisticated consumer" or an "unwary consumer," and instead is an "ordinary consumer within the larger population." *Id.* 1304. Nutrition information

November 23, 2015
Page 2

labels "have long been required on food products and are familiar to a reasonable consumer." McKinnis v. Kellogg USA, 2007 WL 476606 (C.D. Cal., Sept. 19, 2007).

In the presently alleged matter, no reasonable consumer is likely to be misled by the examples in your letter. First and foremost, the Product's label is devoid of the term "healthy" or any of its variations. Additionally, the referenced claims are truthful and non-misleading statements substantiated by competent and reliable scientific evidence. You contend that the Product's claims taken individually and in context of the label as a whole are false and misleading because coconut oil contains dangerous amounts of saturated fat. However, your allegation contains incorrect assumptions on the dietary significance of the different forms of fat, and is contrary to a building body of scientific evidence on medium-chain triglycerides ("MCTs"). Your contentions have also failed to recognize the way in which the product is suggested and intended to be used.

**Fat is an Important Nutrient and Not All Fats are Created Equal**

Fat is an important nutrient and part of the diet. However the public has generally limited knowledge about fats and products containing fats. Fat is often demonized as fattening and a bogeyman, but perception is not always reality. Consequently, the fat quality of the diet of many people is deviating significantly from what is recommended, which may have a negative impact on health. The qualification of fats into "good" and "bad" is mainly based on their effect on blood cholesterol levels, which reveals that not all fats are created equal.[1] Medium-chain triglycerides ("MCTs") are an edible oil that consists of C8 and C10 saturated fatty acids. MCTs are metabolized differently than long-chain triglycerides ("LCTs"). Studies have provided evidence that following diets which include MCTs leads to less body fat deposition than diets with LCTs. A study conducted to investigate effects of MCTs on serum lipid levels, liver function, and hepatic fat accumulations in healthy men determined that the long-term effects of dietary MCTs on serum cholesterol were similar to those of unsaturated fatty acids found abundantly in vegetable oil.[2] The study also found that consumption of 40 g/day of MCTs for a month did not cause liver fat accumulation or liver dysfunction. The study ultimately suggested that the replacement of MCTs for LCTs in regular items such as cooking oil may result in lowering cholesterol.

Therefore, claims describing the Product as "nutritious" and "nourishing" accurately convey the nutrition and nourishing aspects of this fat in the diet. The Zevenbergen study and other science discusses that by making small changes to the amount of LDL cholesterol consumers take in, as little as 4-5% has been estimated to have a significant effect on a much greater population scale.[3] Additionally, "62%" is an accurate statement, simply describing the truthful and non-misleading characteristics of Nutiva's Coconut Oil composition.

Further, no reasonable consumer purchases an oil product with the intention of consuming it at the "dangerous" levels implied in your letter. Nothing on the label communicates that limited substitution has miraculous health benefits or encourages excessive consumption. In fact, the Product contains an intended use statement communicating moderation. The Product's label indicates its limited application with language such as "great for sautéing and baking." No reasonable consumer would interpret such content to mean that the Product is intended to be consumed excessively. Rather, a reasonable consumer would appreciate this language on the label to indicate that the Product should be used as an oil alternative in limited situations such as sautéing or baking.

---

[1] H. Zevenbergen, et al., *Foods with a High Fat Quality Are Essential for Healthy Diets*, ANN NUTR METAB, 54 (Supp. 1):15-24 (2009).
[2] N. Nosaka, et al. *Effects of Dietary Medium-Chain Triacylglycerols in Healthy Men*, BIOSCI. BIOTECHNOL.BIOCHEM. 66(8):1713-1718 (2002).
[3] *Supra* fn. 1.

### Advertisers Can Communicate Emerging Scientific Benefits of Their Products

The Federal Trade Commission ("FTC") has customarily required that claims be substantiated by competent and reliable scientific evidence. *Novartis Corp.*, 127 F.T.C. 580, 725 (1999). Competent and reliable scientific evidence is defined as, "tests, analyses, research studies or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results." *Id.* FTC has also permitted claims to be supported by lab testing and/or medical literature.

The National Advertising Division ("NAD") routinely monitors food advertising to ensure that consumers receive clear and accurate information concerning the health benefits that can be achieved by eating certain foods. Ensuring the truthfulness and accuracy of nutrition and health claims made in food advertising has been a heightened priority for the self-regulatory forum in light of the obesity epidemic in America. In the past, the NAD has permitted advertisers to make health claims in relation to oil low in MCTs.[4] In the review of claims made by ADM KAO, LLC for its Enova Oil product, NAD examined three types of support: 1) chemical studies contrasting the advertiser's oil with the alternative oil and accounting for a mechanism of action with respect to the metabolism of cooking oil, 2) clinical studies conducted on animals, and 3) clinical studies conducted on humans. NAD determined that the support, when viewed as a collective body, support the notion that fewer grams of fat may be stored in the body when the advertiser's oil was substituted for the conventional oil. NAD recognized that these findings constituted "emerging science" and though the results were not yet fully understood or universally established, they represented a valid and potentially significant finding that an advertiser should be permitted to communicate in its advertising to prospective purchasers of cooking oil.

### "[B]etter than butter" and "a nutritious substitute in baking" Claims are Truthful and Non-misleading Statements Substantiated with Competent and Reliable Scientific Evidence

Nutiva's truthful and non-misleading "better than butter" and "a nutritious substitute in baking" advertising claims are substantiated by competent and reliable scientific evidence. A published in the Journal of Lipid Research compared the effects of coconut oil, butter, and safflower oil on lipids and lipoproteins in order to clarify the physiological effects of these common fat sources on lipids and lipoproteins, and to facilitate more precise recommendations regarding dietary fat intake.[5] The findings concerning total LDL cholesterol were astounding. The levels of total cholesterol and LDL were *significantly* lower in the coconut oil diet than on the butter diet. When compared, the coconut oil diet had approximately half of the total LDL-cholesterol-raising-potential of the butter diet. Most oils consist entirely of LCTs, but coconut oil contains roughly forty-percent LCTs and *sixty-percent* MCTs. This balance is important and beneficial because our bodies metabolize MCTs differently than LCTs. MCTs are transported directly from the intestinal tract to the liver, where they are likely to be directly burned off as fuel and slightly raise the metabolic rate. Therefore, less is available to be circulated throughout the body and deposited in fat tissues, making it better to consume than butter. Additionally, it is a mathematical fact that coconut oil has 100% less cholesterol than butter. Consumers of varying ages who are concerned about their cholesterol levels are eager to find ways to manage their cholesterol through dietary modifications, which include using alternative cooking oils.[6]

---

[4] ADM KAO, LLC (Enova Oil), Report #4513, *NAD/CARU Case Reports* (June 2006).
[5] Cox, et al., *Effects of coconut oil, butter, and safflower oil on lipids and lipoproteins in persons with moderately elevated cholesterol levels*, J LIPID RES, 36:1787-1795 (1995).
[6] ACH Food Companies, Inc. (Mazola Corn Oil), Report #4713, *NAD/CARU Case Reports* (August, 2007).

November 23, 2015
Page 4

As noted above, NAD has recognized that "emerging science" findings, despite not being fully understood or universally established, still represent valid and potentially significant findings that an advertiser should be able to communicate in its advertising to prospective purchasers.[7] In this alleged matter, there is reliable scientific evidence concerning the nourishing and beneficial effects of MCTs and coconut oil. Being that these scientific studies are just a sampling of many indicating the same conclusions about this coconut oil phenomenon, Nutiva's claims are supported by competent and reliable scientific evidence which conforms to FTC and NAD substantiation standards.

**Conclusion**

Notwithstanding Nutiva's belief that no false or misleading statements have been made, to the extent any misstatements about the Product are discovered, Nutiva will take the appropriate action to modify or remove any such language. The other requests made – i.e., the removal and modification of claims identified in your letter from the Product's label – are respectfully declined.

To the extent you represent any aggrieved customers who purchased the Product, Nutiva stands by its product and will be happy to refund the purchase price to any consumer who presents evidence of purchase. If either Alan Ducorsky or Preston Jones choose to send us their receipts, we will return the purchase price to them, which in any event is the most they would be entitled to under any of the causes of action alleged (i.e., restitution).

Please note Nutiva does not waive and hereby reserves any and all rights, remedies, and defenses it has in connection with this matter. Should you wish to discuss the matter further, please call me at 312.327.3382 at your convenience.

Sincerely,

Rakesh M. Amin, LL.M., R.Ph.

---

[7] *Supra* fn. 4.