UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON JONES, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>NUTIVA, INC.,<br><br>    Defendant. | Case No. 16-cv-00711-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 74 |

Pending before the Court is Defendant Nutiva, Inc.'s motion to dismiss the first amended complaint. Dkt. No. 74. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court GRANTS the motion IN PART.

**I.  BACKGROUND**

**A.  Factual Background**

According to the amended complaint, in January 2013 and again in February 2014, Plaintiff Preston Jones purchased several jars of Defendant's Virgin Coconut Oil. Dkt. No. 73 ("FAC") ¶ 94. He was seeking "a nourishing, nutritious superfood that would only positively affect his health, that was better than butter, and the consumption of which would not increase his risk of CHD, stroke, and other morbidity." *Id.* ¶ 97. When purchasing Defendant's Virgin Coconut Oil, Plaintiff Jones read the product's label and relied upon the following statements: (1) "Nurture Vitality"; (2) "Organic Superfood"; (3) "100% less cholesterol than butter"; (4) "Coconut is one of the world's most nourishing foods"; (5) "Contains 62% medium chain triglycerides (MCTs) along with lauric and caprylic acids"; (6) "is 'better than butter'"; (7) "A nutritious substitute in baking"; (8) "0g trans fat"; and (9) "non-hydrogenated." *Id.* ¶ 95. Based

on those statements, Plaintiff Jones "believed Nutiva Virgin Coconut Oil was healthy, healthier than butter and other oils, would only make positive contributions to health and would not detriment his health." *Id.* ¶ 96.

Plaintiff Shirin Delalat purchased Defendant's Extra Virgin Coconut Oil and Virgin Coconut Oil on multiple occasions over the past several years. *Id.* ¶ 110. Like Plaintiff Preston, Plaintiff Delalat was seeking "a nourishing, nutritious superfood that would only positively affect her health, that was better than butter, and the consumption of which would not increase her risk of CHD, stroke, and other morbidity." *Id.* ¶ 114. When purchasing these products, she relied on the claims on the products' labels, including "world's best cooking oil" and "100% less cholesterol than butter." *Id.* ¶ 111. Based on these statements, Plaintiff Delalat "believed Nutiva Extra Virgin and Virgin Coconut Oils were healthy, healthier than butter and other oils, and would only make positive contributions to health and would not detriment her health." *Id.* ¶ 113.

However, Plaintiffs allege that:

> Each 1 tablespoon (or 15mL) serving of Nutiva coconut oil (whether "Extra Virgin," "Virgin," or "Refined") contains 130 calories, all of which come from fat: in each 14-gram serving there are 14 grams of fat. Further, each 14-gram serving contains 13 grams of saturated fat. In other words, Nutiva's Coconut Oil is 100 percent fat, 93 percent of which is saturated fat.

*Id.* ¶ 51. According to Plaintiffs, this amount of total and saturated fat renders Defendant's products "both inherently unhealthy" and "less healthy" than butter. *Id.* ¶ 55.

Plaintiffs consequently seek to bring a nationwide class action "on behalf of themselves and a Class of all persons in the United States who, on or after January 8, 2012 (the 'Class Period'), purchased, for personal or household use, and not for resale or distribution purposes, Nutiva Extra Virgin Coconut Oil, Nutiva Virgin Coconut Oil, or Nutiva Refined Coconut Oil (the 'Class')." *Id.* ¶ 128. Plaintiffs assert five causes of action on behalf of the putative class: (1) violation of California's Unfair Competition Law; (2) violation of California's False Advertising Law; (3) violation of California's Consumer Legal Remedies Act; (4) breach of express warranty; and (5) breach of implied warranty of merchantability. *See id.* ¶¶ 138–77.

2

**B. Procedural Posture**

This is Defendant's second motion to dismiss. On September 22, 2016, the Court granted in part and denied in part Defendant's earlier motion. *See* Dkt. No. 55. Plaintiffs then filed an amended complaint on December 5, 2016, adding Plaintiff Delalat and allegations that both Plaintiffs believed Defendant's products "would only make positive contributions to health and would not detriment [their] health." *See* Dkt. No. 73.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Id.* However, a plaintiff must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The Court does not credit allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.4 (9th Cir. 2012) (quotation omitted).

## III. ANALYSIS

### A. UCL, FAL, and CLRA Claims

Defendant challenges Plaintiffs UCL, FAL, and CLRA claims in two ways. First, Defendant contends that Plaintiffs' allegations no longer pass the reasonable consumer test because they do not plausibly allege that Defendant's products' labels would deceive a reasonable consumer. Second, and more narrowly, Defendant argues that the allegations regarding Plaintiff Delalat lack sufficient particularity. The Court addresses each argument in turn.

#### i. Reasonable Consumer Test

As detailed in the Court's previous order, to state a claim under the UCL, FAL, and CLRA, a plaintiff must plead that "members of the public are likely to be deceived" by a

3

1  defendant's advertisements. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *see also* Dkt. No. 55 at 10. "Likely to deceive" means "it is probable that a significant portion of the general consuming public or targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003). Although reasonableness can, in "rare situation[s]," be decided as a question of law, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a] motion to dismiss]." *Williams*, 553 F.3d at 938.

Defendant argues that Plaintiffs' amended complaint no longer passes this "reasonable consumer test" as no reasonable consumer would believe that any product would "only make positive contributions to health and would not detriment" their health. *See* FAC ¶¶ 96, 113. The Court is not persuaded by Defendant's narrow reading of the amended complaint. Plaintiffs detail myriad alleged detrimental health effects of consuming saturated fats generally, and coconut oil more specifically. *See id.* ¶¶ 19–45. Despite the high saturated fat content in Defendant's products, however, Plaintiffs allege that Defendant "markets and advertises [its] products as inherently healthy, and as healthy alternatives to butter." *Id.* ¶ 55. Plaintiffs list examples of such marketing practices on labels that describe Defendant's products as "nourishing," a "superfood," "cholesterol free," and containing "zero trans fats." *Id.* ¶¶ 56–57, 62–63, 95. Plaintiffs further allege that Defendant falsely equates dietary cholesterol with saturated fat and low density lipoprotein cholesterol on its labels by stating that its products contain "100% less cholesterol than butter" and are "better than butter." *Id.* ¶¶ 19–34, 58–59, 63, 95, 111. Viewing the facts alleged in the light most favorable to Plaintiffs, as it must at this stage, the Court cannot conclude as a matter of law that no reasonable consumer could be misled into thinking Defendant's products were "healthy," "healthier than butter," or, therefore, would "only make positive contributions to health." *See id.* ¶¶ 96, 113.

Despite Defendant's urging, a consumer's belief that a product is "healthy" or otherwise "nutritious" is not inherently unreasonable. In *Williams*, for example, the Ninth Circuit acknowledged that "nutritiousness" is "difficult to measure concretely," but because the statement that the product was "nutritious" contributed "to the deceptive context of the packaging as a

4

whole," the court declined to give the defendant "the benefit of the doubt by dismissing the statement as puffery." 553 F.3d 939, n.3; *see also In re Ferrero Litigation*, 794 F. Supp. 2d 1107, 1110, 1115–16 (S.D. Cal. 2011) (denying motion to dismiss on theory that consumers would be deceived by advertisements that Nutella is "healthy and beneficial to children when it in fact contains dangerous levels of fact and sugar"). Defendant's reliance on *Figy v. Frito-Lay N. Am., Inc.*, is misplaced, in that there the court merely found it "implausible" that a reasonable consumer would interpret a true statement, such as "fat free," to communicate further, unstated and unrelated health benefits. 67 F. Supp. 3d 1075, 1091 (N.D. Cal. 2014). Here, however, Defendant's product labels — such as characterizing coconut oil as "nourishing" and a "superfood" — contribute to the impression that the product is healthy. Accordingly, it would be premature to dismiss these claims and the Court DENIES Defendant's motion to dismiss on this basis.

### ii. Reliance

Defendant next claims that Plaintiff Delalat's specific allegations regarding the Virgin and Extra Virgin Coconut Oil products that she purchased fail because she does not adequately plead which statements she relied on in purchasing the products or when she purchased them. Rule 9(b) imposes a heightened pleading standard for claims that "sound in fraud." Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Accordingly, a plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

The Court agrees that, under this standard, Plaintiff Delalat's allegations are insufficient. Rather than list the specific statements upon which she relied, she only identifies two illustrative statements: "Ms. Delalat read and relied on labeling claims that made the products seem healthy, including, ***inter alia***, 'World's Best Cooking Oil' and '100% Less Cholesterol than Butter.'" FAC ¶ 111 (emphasis added). And although the complaint includes different labels for Defendant's Virgin and Extra Virgin Coconut Oil, it does not state that Plaintiff Delalat relied on any of them. Such incomplete allegations do not satisfy Rule 9(b)'s heightened pleading requirement. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (granting motion to dismiss where

5

plaintiff did not specify what the advertisements specifically stated, when the plaintiff was exposed to them, or which ones he found material to his vehicle purchase). The Court similarly finds that Plaintiff Delalat has not sufficiently alleged when she was exposed to Defendant's alleged misrepresentations. Instead, she merely states that she purchased Defendant's products "over the past several years." *See* FAC ¶ 110; *see also* Kearns, 567 F.3d at 1126. The Court, therefore, GRANTS Defendant's motion to dismiss Plaintiff Delalat's allegations asserted against Defendant's Virgin and Extra Virgin Coconut Oil products.[1]

### B. Standing

As the Court previously held, Plaintiffs must have actually purchased the products at issue to have standing to challenge them. *See* Dkt. No. 55 at 8–9 (citing *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *5 (N.D. Cal. Mar. 13, 2014)). Plaintiffs concede that neither Plaintiff purchased Defendant's refined coconut oil and "do not ask the Court to reconsider its prior holding." *See* Dkt. No. 82 at 3, n.1. Accordingly, the Court GRANTS Defendant's motion to dismiss all claims asserted against Defendant's refined coconut oil product.

### C. Injunctive Relief

The Court also previously dismissed Plaintiffs' request for injunctive relief because Plaintiffs failed to allege that they are at risk of future injury. *See* Dkt. No. 55 at 15–16. "[I]t is entirely implausible that Plaintiff[s] risk[] being harmed by Defendant's alleged misrepresentations again" now that they are aware of the health effects of its products. *Id.*; *see also Gershman v. Bayer HealthCare LLC*, No. 14-CV-05332-HSG, 2015 WL 2170214, at *8 (N.D. Cal. May 8, 2015). Plaintiffs concede that they are merely preserving their rights for appeal, and do not ask the Court to reconsider its prior holding. *See* Dkt. No. 82 at 3, n.1. Therefore, the Court GRANTS Defendant's motion to dismiss Plaintiffs' request for injunctive relief.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion to dismiss.

---

[1] Because the Court finds that Plaintiff Delalat's allegations are not alleged with sufficient particularity, it need not reach Defendant's second argument that the alleged statements upon which she relied are non-actionable puffery.

6

Plaintiff may file an amended complaint within 21 days of the date of this Order if it can, pursuant to its Rule 11 requirements, provide additional detail regarding the products Plaintiff Delalat purchased, when she purchased them, and which statements she relied upon when making those purchases. The Court cautions, however, that the amended complaint may not add additional plaintiffs or additional claims.

**IT IS SO ORDERED.**

Dated: 8/23/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge